1   Patrice L. Bishop (182256)
    pbishop@ssbla.com
2   STULL, STULL & BRODY
    9430 W. Olympic Blvd., Suite 400
3   Beverly Hills, CA  90212
    Tel:    310-209-2468
4   Fax:    310-209-2087

5   Local Counsel for Plaintiff

6   *Additional Counsel on Signature Page*

7

8

9                  UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13   GREGORY COFFENG,                      Case No. 17-1825
     individually and on behalf of all others
14   similarly situated,

15                         Plaintiffs,      **COMPLAINT**

16        v.                                **CLASS ACTION**

17                                          **DEMAND FOR JURY TRIAL**

18   VOLKSWAGENWERK
     AKTIENGESELLSCHAFT, AUDI
19   AKTIENGESELLSCHAFT AND
     VOLKSWAGEN GROUP OF AMERICA,
20   INC.,

21                         Defendants.

22

23

24

25

26

27

28

COMPLAINT
Case No.

Plaintiff Gregory Coffeng (hereinafter "Coffeng" or "proposed class representative") through his counsel, on behalf of himself and all others similarly situated, as and for his Complaint alleges as follows:

## INTRODUCTION

1.      Plaintiff alleges on behalf of himself and the proposed classes, defined below, that Defendants withheld material disclosures concerning defective water pump components known to Defendants and used in the following vehicles ("Class Vehicle(s)"): (i) 2008 through and including 2014 model year Audi motor vehicles equipped with the 2.0L TFSI turbocharged engine; and (ii) 2008 through and including 2014 model year Volkswagen motor vehicles equipped with the 2.0L TSI turbocharged engine.  Class Vehicles are equipped with 2.0L EA888 turbocharged four cylinder multi-valve engines including but not limited to engine codes CCTA, CAEB, CAED and CBFA (hereinafter "class engines" or "class engine").[1]  The proposed class representative and members of the proposed classes request injunctive relief, monetary damages, including multiple damages where applicable, court costs and attorney fees against each of the respective Volkswagen and Audi entities based upon their breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices and unjust enrichment under the laws of California, the Magnuson-Moss Warranty Act.[2]

2.      Volkswagenwerk Aktiengesellschaft (hereinafter "VWAG"), Audi Aktiengesellschaft (hereinafter "Audi AG") and Volkswagen Group of America, Inc. (hereinafter "VWGoA") (hereinafter collectively referred to as "defendants") introduced the class engines in the United States market in 2008.  Class engines are predisposed to premature engine water pump system failure.[3]

---

[1] Class Vehicles include the Audi A3, A4, A5 and Q5 together with the Volkswagen CC, Beetle, EOS, Golf/GTI, Jetta, Passat, Sports Wagon and Tiguan, *inter alia*.

[2] With respect to the California CLRA claim, California plaintiffs only assert a claim for injunctive relief herein and intend to amend the complaint to add a claim for monetary relief.

[3] This complaint concerns itself with the primary engine water pump driven off one of the balance shafts and not electric auxiliary water pumps.  Within the context of this complaint, the "water

COMPLAINT
Case No.

3.      Class Vehicles are defective with respect to the water pump that subjects class engines to coolant loss and engine overheating and/or catastrophic engine failure.  Class Vehicles are further defective since the vehicles were accompanied by an owner's manual and USA Warranty and Maintenance pamphlet that did not incorporate water pump inspection, maintenance and/or service intervals.

4.      The water pump circulates engine coolant and, together with the thermostat, is responsible for managing coolant temperature that prevents engine and component overheating including the cylinder head and turbocharger.  The water pump ensures the engine operates within a defined temperature range independent of ambient air temperature, vehicle load, engine RPMs and other conditions.  The water pump is designed to prevent engine overheating.

5.      Depending on the degree of overheating, class engines will operate poorly, resulting in sudden stalling and compromising the ability to accelerate or maintain vehicle speed.  Excessive coolant loss caused by the defective class engine water pump also causes sudden and catastrophic engine self-destruction as overheated parts seize.   Water pump failure and the resulting engine overheating pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning and the loss of power-assisted steering and reduced braking caused by lack of engine vacuum.  In Class Vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering.

6.      The USA Warranty and Maintenance pamphlet does not contain any maintenance recommendations for the water pump in Class Vehicles, through and including the 120,000-mile service.   The water pump is reasonably expected by the defendants, the proposed class representative and proposed class members to last the serviceable life of the vehicle that is in excess of 120,000 miles.[4]  Despite this, the water pumps in Class Vehicles often fail at less than 50% of their reasonably expected useful life.  Moreover, after experiencing a failure of the water

pump" consists of the thermoplastic water pump module that includes the water pump, seals, thermostat and integrated sensors.

[4] USA Warranty and Maintenance booklets for Class Vehicles have maintenance schedules that extend to 120,000 miles.  There is no scheduled maintenance or replacement recommended for class engine water pumps during the entirety of this mileage or time period.

COMPLAINT
Case No.

pump and engine overheating, other engine components such as the head gasket and cylinder head are damaged.  Premature class engine water pump failures cost between $900.00 and $1,200.00 to remedy by installing a new water pump.  Individuals who own or have owned Class Vehicles also sustained diminution of the resale value of their Class Vehicles since knowledge of problems with class engine water pumps eventually became public information.

## JURISDICTIONAL AND VENUE STATEMENT

7.      Diversity jurisdiction exists under 28 U.S.C. § 1332(a), (d) and 28 U.S.C. § 1367. Class jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715, since there are in excess of 100,000 class members and the proposed class representative and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with residency in different states.  The jurisdictional requirements of the state Magnuson–Moss Act claims alleged herein as set out in 15 U.S.C. § 2310(d)(1)(A) are satisfied by CAFA diversity jurisdiction with respect to such state law claims.

8.      The defendants are persons under this jurisdiction's long-arm statute.  In the United States, VWGoA acts as the alter ego and/or agent of VWAG and Audi AG as well as the warrantor with respect to the Class Vehicles.  *In personam* jurisdiction exists over the defendants under this jurisdiction's so-called "long arm statute."  The defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States.  VWGoA also maintains the following offices and/or facilities in California: Test Center California (Oxnard), Design Center California (Santa Monica), a parts distribution center (Ontario) and imports vehicles through the port of San Diego.[5]  The defendants also conduct continuous and systematic economic activities in this jurisdiction and throughout the United States.   The defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States. Subjecting the defendants to *in personam* jurisdiction in this jurisdiction does not violate the defendants' due process rights and comports with requirements of fair play and substantial justice.

---

[5] *See* http://www.volkswagengroupamerica.com/locations.html (last checked February 14, 2017).

COMPLAINT
Case No.

9.      Venue is conferred by 28 U.S.C. § 1391 as the defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

**THE PARTIES**

10.     Plaintiff Coffeng is an adult individual who purchased a new 2011 Audi A4 equipped with a 2.0L TFSI engine from an authorized California Audi dealer.  Coffeng resides in Redwood City, San Mateo County, California.  Despite multiple complaints during the warranty period that he smelled engine coolant on cold starts, the authorized Audi dealer informed Coffeng that everything was fine and there were no leaks.  Coffeng's Class Vehicle required premature replacement of the engine water pump due to engine coolant leaking from the pump.  Coffeng spent more than $1,100.00 replacing the water pump.

11.     Defendant VWAG is a duly organized German corporation with a principal place of business in Wolfsburg, Germany.  VWAG designed, manufactured and tested the class engine and water pump incorporated in Class Vehicles including but not limited to the CC, Beetle, EOS, Golf/GTI, Jetta, Passat, Sports Wagon and Tiguan.  VWAG drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied Class Vehicles.

12.     Defendant Audi AG is a duly organized German corporation with a principal place of business in Ingolstadt, Germany.  Audi AG designed, manufactured and tested the class engine and water pump incorporated in Class Vehicles including but not limited to the A3, A4, A5 and Q5.  Audi AG drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied Class Vehicles.

13.     Defendant VWGoA is a duly organized New Jersey corporation with a principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  VWGoA is the parent of Audi of America, Inc. and Volkswagen of America, Inc.  VWGoA manufactures, imports, distributes and/or sells Volkswagen and Audi motor vehicles including all Class Vehicles and also acts as the authorized representative of VWAG and Audi AG in the United States.  VWGoA drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied Class Vehicles and acted, and continues to act, as the warrantor of vehicles

constructed by all defendants sold in the United States.  At all relevant times, VWGoA acted as an authorized agent, representative, servant, employee and/or alter ego of VWAG and Audi AG performing activities concerning but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Volkswagen and Audi vehicles in the United States, including substantial activities that occurred within this jurisdiction. VWAG is the parent company of VWGoA.

## CLASS ACTION ALLEGATIONS

14.     The proposed class representative brings this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed Class and subclasses (or any other class authorized by the Court) defined as follows:

> **Nationwide Class**: All owners and former owners, lessees and former lessees of Class Vehicles who sustained monetary loss and/or diminution of Class Vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, the defendants' counsel and all respective immediate family members of the excluded persons and entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

> **California Class:** All owners and former owners, lessees and former lessees of Class Vehicles who are (or were) California residents who sustained monetary loss and/or diminution of Class Vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed California subclass members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

### Numerosity of the Class: Fed. R. Civ. P 23(a)(1).

15.     The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20.  It is estimated there are in excess of approximately 250,000 Class Vehicles imported into and/or manufactured in the United States. Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from the defendants.

COMPLAINT
Case No.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

16.     Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class.  These issues include but are not limited to:

(a)     Whether water pumps in class engines were defective in materials, workmanship, manufacture, or design, so as to subject the engine to premature failure of the water pump;

(b)     Whether class engines sustained damage directly or indirectly by premature failure of the water pump;

(c)     Whether Class Vehicles were sold with an owner's manual and/or USA Warranty and Maintenance manual that incorporated incorrect inspection and service intervals for the water pump;

(d)     Whether the defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that Class Vehicles were defective with respect to water pump materials, workmanship, manufacture or design;

(e)     Whether the defendants breached their implied warranties in that Class Vehicles were defective with respect to materials, workmanship, manufacture, or design;

(f)     Whether the defendants intentionally or negligently misrepresented material facts concerning the characteristics of the water pump in class engines;

(g)     Whether the defendants committed unfair and deceptive business act practices by failing to inform owners of Class Vehicles prior to purchase and/or during the post-sale express warranty period that the water pump was defective and would fail shortly after the warranty period expired and cause damage to the engine, and that this defect posed a significant safety hazard;

(h)     Whether the defendants were unjustly enriched by their warranty breaches and deceptive and/or unfair conduct described in this complaint;

(i)     Whether proposed class members are entitled to injunctive relief pursuant to Rule 23(b)(2);

COMPLAINT
Case No.

- 7 -

1    (j)    Whether the Court should establish a constructive trust funded by the

2    benefits conferred upon the defendants by their wrongful and unlawful conduct; and,

3    (k)    Whether proposed class members are able to economically afford individual

4    litigation against the defendants.

5    **Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

6    17.    The proposed class representative's claims and defenses are typical of the claims

7    and defenses of proposed class members.  Class claims arise out of ownership or lease of Class

8    Vehicles as defined in ¶ 1.  The defendants in this proposed action have no claims or defenses

9    unique to or different from the proposed class representative.

10   **Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

11   18.    The proposed class representative currently has no conflicting interests with any

12   other proposed class member.  The proposed class representative will fairly and adequately protect

13   the interests of the proposed subclasses.  The proposed class representative's claims and the

14   proposed class members' claims are so interrelated that the interests of the proposed class

15   members will be fairly and adequately protected in their absence.  Proposed class counsel have, in

16   aggregate, over 60 years of experience concentrating in complex automotive products liability, and

17   both have been appointed class counsel in other proceedings.

18   **Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

19   19.    Maintenance of a class action in one court is the most economical procedural

20   device to litigate the Class Vehicle and class engine claims for Class Vehicle owners and the

21   defendants.  Prosecution of separate actions by individual members of the class could create risk

22   of inconsistent or varying adjudications with respect to individual members of the class which

23   would establish incompatible standards of conduct for the party opposing the class as recognized

24   by Fed. R. Civ. P. 23(b)(1)(A).

25   20.    Prosecution of separate actions by individual members of the class could create risk

26   of adjudications with respect to individual members of the class which would, as a practical

27   matter, be dispositive of the interests of the other members of the class who are not parties to the

28

COMPLAINT
Case No.

adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

21.     There is a substantial likelihood that the defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

22.     Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

## CLASS VEHICLES' WATER PUMP DEFECT

23.     Passenger motor vehicle engine water pumps should last a minimum of 120,000 miles in a modern automobile such as the Class Vehicles.  This is demonstrated by the defendants' USA Warranty and Maintenance pamphlet accompanying Class Vehicles, other engines manufactured by the defendants incorporating a water pump and performance of comparable competitor vehicles.

24.     The water pumps in Class Vehicles have been subject to constant materials and manufacture upgrades since the initial introduction of Class Vehicles for sale in late 2007.  The initial water pumps have been assigned the following part numbers: 06J121026DD, 06H121026CQ, 06H121026BG, 06H121026BA, 06H121026CF and 06H121026AF together with other part numbers.  These water pumps have also been subject to service campaigns for certain vehicle models over a several year period where some defective pumps that were leaking were replaced without charge for a limited time period that has now lapsed.

25.     Prior to manufacturing and then distributing a new part, defendants perform substantial field inspections and quality review of vehicles in service to determine the root cause and diagnosis of a problem, and then prepare draft and final specifications and bid the parts out. All of this takes at least twelve months of lead-time under normal circumstances.  The defendants,

therefore, knew or should have known at least in 2009 or early 2010 that the water pumps in class

engines were defective and would prematurely fail.

## COMPLAINTS TO THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION

26.    The National Highway Traffic Safety Administration ("NHTSA") Office of

Defects Investigation ("ODI") maintains a database of complaints filed by consumers concerning

defects in their respective motor vehicles and vehicle equipment monitored by defendants' quality

control personnel.  The NHTSA-ODI website allows consumers to "identify and report problems

you might be having with your vehicle, tires, equipment or car seats." *See* https://www-

odi.nhtsa.dot.gov/ivoq/ (last accessed December 1, 2016) ("If you think you have a problem, we

want you to tell us about it.").  A sampling of the numerous complaints submitted by owners of

one model of Class Vehicles and reported to the NHTSA demonstrates that the Class Vehicle

water pump defect is widespread and constitutes an unreasonable safety hazard:[6]

(a)    Date Complaint Filed:  November 9, 2014; Date of Incident:  November 6,

2014; NHTSA ID Number: 10653680; Manufacturer:  Volkswagen Group of America,

Inc.; Summary:

> CAME OUTSIDE TO A FAILED WATER PUMP. THIS IS A
> COMMON PROBLEM WITH VARIOUS VOLKSWAGENS.
> MANY SHOP TECHS ARE VERY FAMILIAR WITH THIS
> ISSUE. IT IS UNSAFE FOR THE DRIVER AND OTHER CARS.
> THERE IS A CHANCE THE PUMP COULD FAIL WHILE
> DRIVING OR A PERSON MAY NOT NOTICE THE COOLANT
> ON THE GROUND. THAT CAN LEAD TO THE CAR
> OVERHEATING AND CAUSING EXPENSIVE DAMAGE. YOU
> COULD ALSO BE LEFT STRANDED ON THE SIDE OF THE
> ROAD. ANY INSTANCE WHEN A PERSON OR CAR ARE
> LEFT ON THE SIDE OF THE ROAD IS A ROAD AND HEALTH
> RISK. ALSO WHEN THESE PUMPS FAIL THEY OFTEN LEAK
> COOLANT. THE COOLANT IS NOT SAFE FOR THE
> ENVIRONMENT. WHEN THE PUMPS DO GET REPLACED

---

[6] NHTSA-ODI does not share complainants' personal information with the general public. A
complaint is only added to a public NHTSA database only after it removes all information from
complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by
individuals who must identify themselves, enter detailed contact information and vehicle
information (including an accurate VIN) before the complaints are reviewed and analyzed by
NHTSA.  There are penalties for submitting false statements.

COMPLAINT
Case No.

THE ISSUE OFTEN COMES BACK REPEATEDLY. THIS IS PARTLY DUE TO THE POOR DESIGN OF THE SYSTEM. A REVISION OF THE WATERPUMP SHOULD BE MADE. ALSO AN EXTENSION ON THE WARRANTY OF SAID PART SHOULD BE MADE FOR OWNERS. THIS IS A SIGNIFICANT PROBLEM THAT NEEDS TO BE TAKEN CARE OF. FOR PERSONAL AND ENVIRONMENTAL RISKS. *TR

(b)   Date Complaint Filed:  May 28, 2015; Date of Incident:  May 22, 2015; NHTSA ID Number: 10722036; Manufacturer:  Volkswagen Group of America, Inc.; Summary:

TL* THE CONTACT OWNS A 2011 VOLKSWAGEN GTI. WHILE THE VEHICLE WAS AT THE DEALER FOR ROUTINE MAINTENANCE, THE TECHNICIAN DISCOVERED THAT THE WATER PUMP FAILED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 76,000.

(c)   Date Complaint Filed:  October 16, 2015; Date of Incident: October 10, 2013; NHTSA ID Number: 10782604; Manufacturer:  Volkswagen Group of America, Inc.; Summary:

MY 2013 VW GTI HAS HAD DEFECTIVE WATER (COOLANT) PUMP. I HAVE ALREADY HAD THREE (3!) MAJOR REPAIRS TO REPLACE THE FAULTY WATER PUMP AND FIX THE LEAK OF COOLANT. THE ISSUE FIRST STARTED AT ABOUT 10,000 MILES AND REOCCURED AT 15,000 MILES AND THEN AT 25,000. I ALWAYS MAINTAINED AND REPAIRED MY CAR AT VW DEALERSHIPS. THE ISSUE WITH THE WATER PUMP USUALLY STARTED WHILE THE CAR WAS IN MOTION ON A MAJOR ROAD OR A FREEWAY WITH MY FAMILY (INCLUDING 2 CHILDREN) INSIDE. THE LIGHT WOULD USUALLY TURN ON ON THE DASHBOARD. FORTUNATELY, IN ALL THE INSTANCES, WE'VE BEEN NOT FAR FROM THE HOME OR A SAFE LOCATION TO PARK AND REQUEST ROADSIDE ASSISTANCE. THESE INCIDENTS WITH WATER PUMP, WHILE THE CAR IS IN MOTION CAN LEAD TO CRASH OR OTHER SERIOUS CONSEQUENCES.

(d)   Date Complaint Filed:  January 27, 2015; Date of Incident: August 1, 2014; NHTSA ID Number: 10679323; Manufacturer:  Volkswagen Group of America, Inc.; Summary:

TL* THE CONTACT OWNS A 2010 VOLKSWAGEN TIGUAN. AFTER STARTING THE ENGINE, THE RADIATOR WARNING LIGHT ILLUMINATED. THE CONTACT DISCOVERED THAT THE COOLANT FROM THE RADIATOR WAS PRESENT IN THE ENGINE COMPARTMENT. THE VEHICLE WAS TOWED TO THE DEALER WHO DIAGNOSED THAT THE WATER PUMP FAILED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 45,000.

(e)    Date Complaint Filed:  December 17, 2013; Date of Incident: August 29, 2013; NHTSA ID Number: 10556440; Manufacturer:  Volkswagen Group of America, Inc.; Summary:

TODAY IS THE 17TH OF DECEMBER AND FOR THE 2ND TIME IN 4 MONTHS THE COOLANT LIGHT HAS GONE OFF IN THE CAR. THE FIRST TIME IT HAPPENED WAS TOWARDS THE END OF AUGUST (I JUST PURCHASED THE VEHICLE A FEW WEEKS EARLIER). WHEN TAKEN TO THE DEALER SERVICE DEPARTMENT THE PROBLEM WAS THE WATER PUMP WENT BAD. AFTER THE MECHANIC SAID IT WAS STILL COVER UNDER WARRANTY THEY REPLACED IT. TODAY THE COOLANT LIGHT WENT OFF AGAIN, SAME ISSUE HAS BEFORE. AFTER CHECKING THE CAR FAX THE FIRST TIME IT HAPPENED, THIS IS THE 5TH WATER PUMP REPLACED IN THE CAR IN 2 YEARS. TODAY CALLING THE DEALERSHIP, THE PERSON AT THE DEALERSHIP HAS SAID THERE ARE QUITE FEW TIGUANS THAT HAVE COME IN WITH THE SAME ISSUE THE LAST FEW WEEKS. RESEARCHING THE ISSUE ONLINE THERE ARE INDICATIONS THAT THIS IS A PROBLEMATIC ISSUE THAT HAS NOT BEEN ADDRESSED BY VOLKSWAGEN. THE WARRANTY FOR THE PART ONLY COVERS A YEAR AND 12000 MILES. *TR

## **TOLLING OF THE LIMITATIONS PERIOD**

27.    The fraudulent conduct of the defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of failures in Class Vehicles was an inherently unknowable fact given the technical nature of the Class Vehicle design and manufacturing defects, including materials and workmanship.

28.    Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials and workmanship defects in their

vehicles or the requisite technical skills to surmise the proper vehicle maintenance and maintenance intervals for Class Vehicles.

29.     The statutory and case law of California together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all Class Vehicles because of the defendants' fraudulent conduct, including but not limited to concealment of Class Vehicle defects and omission of material facts.

30.     Proposed class members relied on the defendants' fraudulent misrepresentations concerning the cause of class engine water pump failures and therefore delayed bringing suit against the defendants.  These misrepresentations relate to the fact that, in reality, class engine water pumps were failing due to design, manufacture, materials and/or workmanship defects.  The defendants, however, fraudulently attributed the failings of Class Vehicle water pumps to other factors and/or exculpating conditions for which the defendants had no responsibility.

31.     The defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on the defendants' fraudulent representations.

32.     The defendants are equitably estopped from asserting the statutes of limitations have run against the claims of class members.

## FURTHER ALLEGATIONS

33.     The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representative and proposed class members the defects in class engines even though the defendants knew or should have known of design and manufacturing defects in Class Vehicles if the defendants had adequately tested class engines.

34.     The defendants had actual knowledge that defects were causing extensive irreversible premature performance degradation in class engine water pumps shortly after production of the Class Vehicles commenced.  The defendants engaged in extensive field research and quality investigations and analysis before revising the specifications for the original defective water pump, rebidding the new water pump for production and manufacturing and distributing the new water pump.  In addition, defendants have and continue to be under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five

COMPLAINT
Case No.

(5) days of learning of them.   The defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

35.     The defendants failed to inform Class Vehicle owners prior to purchase or during the express warranty period that their engine water pump was defective and would fail shortly after the express warranty period expired.   The defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of defects in the class engine water pump.

36.     The defendants also failed to inform Class Vehicle owners at the time of purchase that the water pump in their Class Vehicle's engine had been inadequately tested prior to placing the car in production and the time of vehicle sale.

37.     The defendants also failed to inform Class Vehicle owners that there had been several significant subsequent water pump materials and manufacturing improvements as described in this complaint that reduced and/or eliminated premature failure while purchasers' vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty.[7]   Specifically covered by this powertrain limited warranty were "all internal [engine] parts" including the engine water pump.   This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

38.     The defendants knew at least one year prior to 2010 (the date the original water pump was assigned a new part number indicative of a design and/or manufacture change) that class engines were experiencing premature engine water pump failures.   Despite this knowledge, the defendants continued to sell Class Vehicles with a water pump that was defective.   This knowledge is imputed to all defendants because VWGoA was monitoring warranty claims and

---

[7] Volkswagen vehicles were covered by including the powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service."  Audi vehicles were covered by a general vehicle warranty of "4 years or 50,000 miles, whichever occurs first."

COMPLAINT
Case No.

Class Vehicle performance in the United States, and reporting back to its parent companies located in Germany.

39.     The proposed class representative and proposed class members had valid and binding warranties and contracts with the defendants and were reasonably expected by the defendants to use their respective Class Vehicles in the manner in which passenger motor vehicles were used.

40.     The proposed class representative and proposed class members complied with all warranty and contractual obligations including all warranty, breach of warranty notices, maintenance and product use obligations for their respective Class Vehicles.  The proposed class representative and proposed class members operated their Class Vehicles under normal anticipated conditions in non-commercial environments.

41.     The defendants timely received the proposed class representative's breach of warranties notice through authorized representatives and suffered no resulting prejudice.  The proposed class representative contacted VWGoA through an authorized dealership.

42.     The proposed class representative and proposed class members were informed by representatives of VWGoA that VWGoA would not provide assistance in repairing class engines because their vehicles were outside of the express warranty period.

43.     The defendants refused to fully reimburse or compensate the proposed class representative for vehicle water pump repair expenses or provide a suitable substitute or replacement vehicles.  Although their respective vehicles' water pump failures occurred outside the unilateral express warranty period (which was not bargained for prior to purchase), the proposed class representative's Class Vehicle exhibited unmistakable symptoms (known only by the defendants) of degradation and impending premature failure within the express warranty period as described in this complaint.

44.     Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, the defendants failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

COMPLAINT
Case No.

45.     Through no fault of their own, the proposed class representative and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending water pump failure.  This information, however, was well known to the defendants, but not revealed.

46.     The proposed class representative relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the defendants at the time of purchase, including but not limited to the useful and expected life of Class Vehicles and the recommended Class Vehicle maintenance program.

47.     The defendants' misrepresentations, omissions and fraudulent statements were received by the proposed class representative and proposed class members prior to and at the point of their Class Vehicle purchase.  These representations, omissions and fraudulent were made by Volkswagen dealers referencing publications concerning Class Vehicles including the owner's manual and the USA Warranty and Maintenance pamphlets.  The representations created a reasonable belief that the useful life expectancy of the water pump in the Class Vehicles without a major failure was in excess of 120,000 miles.  These representations specifically related that the engine water pump was a non-maintenance engine component.

48.     The defendants actively concealed the true reasonably expected duration of Class Vehicle water pumps from the proposed class representative and all Class Vehicle purchasers.  The defendants intentionally failed to inform Class Vehicle purchasers that Class Vehicles incorporated a defective and/or improperly tested water pump that would prematurely fail within the reasonably expected durational operating period.

49.     The defendants intentionally failed to inform Class Vehicle purchasers that the water pump incorporated in Class Vehicles results in higher operational costs than alternative conventional water pumps or other competitive technology because the water pump prematurely fails within the reasonably expected useful life of the pump.

50.     The defendants actively and fraudulently concealed the existence of the water pump defects (including defects covered under Class Vehicle warranties concerning materials and workmanship) and that the owner's manual accompanying Class Vehicles incorporated improper maintenance recommendations and maintenance intervals.

COMPLAINT
Case No.
- 16 -

51.     The proposed class representative and class members did not learn that their respective Class Vehicle water pump was defective until after their water pumps failed.

52.     The defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of defects in Class Vehicles although the service representatives received hundreds of consumer complaints that the water pumps in Class Vehicles prematurely failed.  The defendants' employees falsely represented that certain pretexts for which the defendants were not responsible as the basis for the failures that were in fact caused by an otherwise warranted material defect in the water pumps.  They falsely stated that defendants were not responsible for the resulting Class Vehicle water pump failures and/or denied the existence of known Class Vehicle defects.

53.     Volkswagen and Audi dealers  (who also had a vested financial interest in concealing and suppressing the actual cause of Class Vehicle failures) improperly blamed premature water pump failures on certain conditions for which the defendants would not be responsible and/or denied the existence of defects in the water pump.

54.     The defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that Class Vehicles were defective with respect to their water pump, and that the pump suffered from extensive irreversible premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of Class Vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representative and proposed class members.  The proposed class representative and proposed class members were ignorant of this technical information through no fault of their own.

55.     The defendants acted to conceal water pump defects during the warranty period so that repair costs would be shifted to the proposed class representative and proposed class members once the warranty expired and the water pump failed.

56.     The defendants' knowledge of Class Vehicle defects was derived from warranty claims, claims supervisors, customer complaints and monitoring of performance of Class Vehicles by VWGoA quality assurance employees.  Additionally, the number of replacement water pumps

COMPLAINT
Case No.

1  and subsequent pump revisions would have placed the defendants on notice of water pump

2  defects.  The defendants elected to place into the stream of commerce Class Vehicles that they

3  knew would be adversely affected by the failure to adequately design and manufacture the water

4  pump.

5          57.     Additional information supporting allegations of fraud and fraudulent conduct is in

6  the control of the defendants.  This information includes but is not limited to technical root cause

7  analyses, communications with Class Vehicle owners, remedial measures, warranty claims and

8  internal corporate communications concerning how to deal with consumers who claim their class

9  engines' water pump was defective.

10         58.     Material information fraudulently concealed and/or actively suppressed by the

11  defendants includes but is not limited to Class Vehicle defects described in the preceding

12  paragraphs and throughout this complaint.

13         59.     Material information was fraudulently concealed and/or actively suppressed in

14  order to sell Class Vehicles to uninformed consumers (including the proposed class representative

15  and proposed class members) premised on affirmations and representations of reliable, high

16  quality, long-life vehicles with low maintenance, inexpensive operating costs, superior

17  performance and durability.  In fact, Class Vehicles actually contained a known water pump defect

18  that would increase vehicle operating costs by thousands of dollars.

19         60.     The defendants (and particularly the sales and marketing executives at VWGoA)

20  advertised and otherwise created the reasonable expectation (including but not limited to

21  scheduled class engine maintenance recommendations) that Class Vehicles would last over

22  120,000 miles or ten years before experiencing water pump failure.

23         61.     Material information was fraudulently concealed and/or actively suppressed in

24  order to protect the defendants' (and authorized vehicle dealers') corporate profits from loss of

25  sales from adverse publicity, to reduce warranty repair costs and to limit VW and Audi's brand

26  disparagement.

27  ///

28  ///

COMPLAINT
Case No.

62.     The defendants had a duty to disclose to Class Vehicle owners that there were material and manufacture defects in Class Vehicles and that the owner's manuals set forth the wrong maintenance recommendations and maintenance intervals.

63.     This duty arose because the defendants knew that there were defects in the vehicles and inaccuracies in the owner's manuals that affected vehicle operation, operating costs and safety while Class Vehicle owners were not, and could not reasonably be, cognizant of these defects and dangers.

64.     The defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from the proposed class representative and other purchasers.  The defendants breached their affirmative duty of disclosure to Class Vehicle owners (and particularly to owners who inquired as to the cause of Class Vehicle water pump failures).[8]

65.     The defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in Class Vehicles and omissions in accompanying owner's manual and USA Warranty and Maintenance pamphlet.

66.     The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with the defendants to increase durational warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored the defendants particularly where there were Class Vehicle defects known only to the defendants and the warranty unfairly shifted repair costs to consumers when Class Vehicles prematurely fail during their reasonably expected life), absence of effective warranty competition and the fact that Class Vehicles fail with substantially

---

[8] Since unexpected engine failure is a serious safety issue, the defendants had an affirmative duty to disclose the vehicle defects together with associated risks.

COMPLAINT
Case No.
- 19 -

fewer miles of operation than competitor vehicles from other manufacturers or other models manufactured by the defendants.

67.     Purchasers of Class Vehicles reasonably expect vehicles to function well in excess of the Class Vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers of Class Vehicles were led to believe by the defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 120,000 miles and there was no scheduled inspection or maintenance for the water pump within this period.

68.     Given the conduct of the defendants and the design, manufacture, materials and workmanship defects in Class Vehicles (that the defendants knew were inherently defective prior to the time of sale), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representative and proposed class members were neither knowing nor voluntary.

69.     The proposed class representative and proposed class members had an absence of any meaningful choice in the purchase of Class Vehicles and the contractual terms were unreasonably favorable to the defendants since the defendants were fully aware of defects in the Class Vehicles that substantially increased Class Vehicle operating costs.  The proposed class representative and proposed class members were unaware of defects in the Class Vehicles at the time of purchase.

70.     The bargaining position of the defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representative and proposed class members.  This is because the defendants knew there were defects in Class Vehicles affecting vehicle operating costs.

71.     The defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous and had been inadequately tested.

72.     The defendants knew defects in Class Vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the Class Vehicle's water

COMPLAINT
Case No.

1  pump.  The defendants artificially limited the duration of the warranty period to avoid performing

2  water pump warranty repairs in order to maximize profits through the sale of defective vehicles.

3        73.    The defendants unconscionably sold defective Class Vehicles to the proposed class

4  representative and proposed class members without informing these purchasers that the Class

5  Vehicles were defective.  In the alternative, the defendants failed to notify the proposed class

6  representative and proposed class members after the time of sale that the water pump had been

7  modified and that the water pump in their respective vehicles should be replaced prior to the

8  expiration of the warranty.

9        74.    The defendants' conduct renders the vehicle purchase contract so one-sided as to be

10  unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

11        75.    The durational limitation of the express warranties accompanying the Class

12  Vehicles is unreasonable and unconscionable since the defendants actively concealed known

13  vehicle defects and issued incorrect maintenance recommendations and maintenance intervals.

14  The proposed class representative and proposed class members had no notice of or ability to detect

15  the defects.

16        76.    The defendants restricted the warranty provisions for Class Vehicles in an effort to

17  avoid the cost of repairs because they were cognizant of Class Vehicle defects that existed at the

18  time of sale.

19        77.    Water pumps in engines in competitor vehicles manufactured and sold at the time

20  the Class Vehicles were manufactured and sold ordinarily last longer than warranted by the

21  warranty accompanying Class Vehicles.

22        78.    The defendants engaged in unconscionable fraudulent commercial practices and

23  attempted to conceal Class Vehicle materials defects, workmanship defects, manufacturing defects

24  and improperly recommended maintenance.

25        79.    The defendants are engaged in a continuing fraud concerning the true underlying

26  cause of Class Vehicle water pump failures.

27        80.    The defendants failed to adequately test Class Vehicles in appropriate consumer

28  environments prior to marketing, distribution and sale.

COMPLAINT
Case No.

81.     The defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. The defendants' upper level management orchestrated this wrongful conduct.

82.     The proposed class representative and proposed class members operated and maintained their Class Vehicles in conformity with the respective owner's manuals and provided the requisite notice to the defendants' authorized agents for warranty repair after their Class Vehicle water pumps failed.

83.     Class vehicle owners sustained an ascertainable financial loss, including but not limited to increased maintenance costs for water pump inspections and/or premature replacement of the water pump and/or substantially reduced engine performance.  Individuals who own or have owned Class Vehicles also sustained diminution of the resale value of their Class Vehicles since knowledge of problems with Class Vehicle's water pumps became public information after the time of their purchase.

84.     The proposed class representative and proposed class members have not received the benefit of their bargain concerning their respective purchase of Class Vehicles.

85.     The defendants are persons within the context of the consumer protection laws of California and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to the proposed class representative and proposed class members.

86.     The defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that Class Vehicles incorporated defective water pumps and were accompanied by an owner's manual and USA Warranty and Maintenance pamphlet that incorporated incorrect engine service and maintenance recommendations.   The proposed class representative and proposed class members were deceived by the defendants' conduct as described in this complaint with respect to their purchase of Class Vehicles.

87.     The defendants violated the consumer protection laws of California with their oppressive and unconscionable conduct described in this complaint including but not limited to

COMPLAINT
Case No.

their failure to disclose material information that caused ascertainable financial harm to the proposed class representative and proposed class members.

88.     The defendants were under a duty to disclose safety defects in Class Vehicles as described in this complaint but failed to disclose to the proposed class representative and proposed class members the characteristics of Class Vehicles with respect to defects in violation of the consumer protection laws of California.   The defendants' omissions (that water pumps were defective and that this defect constituted a safety hazard) deceived purchasers (including but not limited to the proposed class representative and proposed class members).   Those disclosure omissions include the fact that Class Vehicle water pump defects had a significant impact on operating costs, maintenance, durability and future care of Class Vehicles.   This failure to disclose additional information concerning Class Vehicle defects had the capacity to, and in fact did, deceive purchasers (including but not limited to the proposed class representative and proposed class members) in a material respect.

89.     If the proposed class representative and proposed class members had been made aware of the defects in their respective Class Vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased the Class Vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of Class Vehicles.

90.     The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representative and proposed class members defects in Class Vehicles even though the defendants knew or should have known information concerning these defects was material and central to the marketing and sale of Class Vehicles to prospective purchasers including the proposed class representative and proposed class members.

91.     The defendants violated the consumer protection laws of California by failing to inform Class Vehicles owners at the time of purchase that Class Vehicles had known defects, that the vehicles would prematurely require major engine repairs and/or prematurely fail with resulting catastrophic consequences and/or would have a significant effect on the vehicle's value.

COMPLAINT
Case No.

92.     As a direct result of these omissions, the proposed class representative and proposed class members purchased Class Vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the vehicle value and increase cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

93.     The wrongful conduct of the defendants in violation of the consumer protection laws of California occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendants' conduct.

**What the Omissions Were:**

94.     The defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information concerning class engine water pump defects, in an effort to deceive purchasers as described in this complaint.  At the time of purchase, the defendants fraudulently omitted to disclose material matter regarding the defects in Class Vehicles, including their impact on future repairs, operating costs and vehicle reliability as described in this complaint.

95.     The defendants fraudulently concealed from the proposed representatives and proposed class members defects in Class Vehicles even though the defendants knew or should have known that information concerning these defects was material and central to the marketing and sale of Class Vehicles to prospective purchasers, including the proposed class representative and proposed class members.

96.     The defendants concealed from proposed representatives and proposed class members during their warranty periods that a defect existed with the water pump which could have and should have been fixed during the warranty period, particularly as it was a safety issue, and defendants' withholding of this material information deprived proposed representatives and proposed class members of the right to have such defective part replaced for free under the warranty.

///

///

COMPLAINT
Case No.

**The Person(s) Responsible for the Failure to Disclose:**

97.     The proposed class representative and proposed class members are entitled to the reasonable inference that the defendants' sales, marketing, engineering and warranty departments and their executives were involved in the omissions.   This is particularly true given the defendants' recent conduct involving compliance certification and pollution control defeat devices involved in the sale of diesel powered passenger vehicles world-wide.

**The Context of the Omissions and the Manner in which they Misled:**

98.     Material information was fraudulently concealed and/or actively suppressed in order to sell Class Vehicles to uninformed consumers (including the proposed class representative and proposed class members) premised on affirmations and representations as described in this complaint.

99.     If the proposed class representative and proposed class members had been informed of defects in their Class Vehicles, they would not have purchased their respective Class Vehicles or would have paid substantially less.   If the proposed class representative and proposed class members had been made aware of the defects in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the Class Vehicles since each class member believed they were purchasing vehicles without major defects and were not fully informed of true characteristics and attributes of Class Vehicles.   If the proposed class representative and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty. The defendants' conduct that violated the consumer fraud statutes alleged herein deprived proposed representatives and proposed class members of that remedy.

**What the Defendants Obtained through the Fraud:**

100.     Material information concerning Class Vehicles was concealed and/or actively suppressed in order to protect the defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity and limit brand disparagement.   Purchasers believed they were obtaining vehicles as having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles.   The

COMPLAINT
Case No.

defendants had a uniform policy of not properly disclosing Class Vehicle defects in order to promote sales and increase profits as described in this complaint.

101.     As a proximate and direct result of the defendants' unfair and deceptive business trade practices, the proposed class representative and proposed class members purchased Class Vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

### COUNT I

**BREACH OF UNIFORM COMMERCIAL CODE § 2-313:**
**EXPRESS WARRANTY OF MERCHANTABILITY BY**
**THE DEFENDANTS RESULTING IN FINANCIAL HARM**

**(On Behalf of the Nationwide Class or,**
**Alternatively, the California State Class)**

102.     The proposed class representative and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

103.     The defendants are merchants with respect to passenger motor vehicles.   Class Vehicles are goods within the meaning of the Uniform Commercial Code as adopted by California.

104.     Defendant VWoA is the Warrantor of the Vehicles.

105.     The defendants provided proposed class members an express powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from date the vehicle was first placed in service."   Specifically covered by this powertrain limited warranty were "all internal [engine] parts" including the engine water pump.   This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

106.     The defendants expressly warranted to the general public, owners and lessees of Class Vehicles that Class Vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.   The proposed class representative and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

107.    The defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of these vehicles including superior design and manufacture, safety, durability, reliability, economy and performance.   In fact, Class Vehicle engines contained defects in the water pump that severely increased the cost of ownership and maintenance of Class Vehicles that was not contemplated by Class Vehicle owners at the time of purchase because the defendants did not disclose the water pump defects.

108.    The defendants represented that Class Vehicles were of a particular standard or quality, as described in this complaint, when they in fact were not.   Water pumps in class engines are failing far short of the expected useful life.

109.    The defendants received adequate notice of their breach of their express warranties and failed to cure the warranty breaches.   The proposed class representative and class members reported to the defendants the problems with and failings of the engine water pumps in their vehicles and requested that the defendants cure the warranty breach by repair and/or replacement of the defective water pump.   In the alternative, the proposed class representative, as indirect purchasers, were not required to issue notice of the warranty breach to the defendants and the lack of notice of warranty breach did not result in any prejudice to the defendants.

110.    The proposed class representative and proposed class members complied with maintenance recommendations for their respective Class Vehicle.

111.    The defendants failed to repair or replace the proposed class representative's and proposed class members' water pumps that were defective in materials and workmanship during the express warranty period although these defects were known to the defendants at that time.[9]

112.    Class Vehicles owned by the proposed class representative and proposed class members also prematurely failed and/or experienced substantial performance diminution within their respective express warranty periods.

---

[9] The USA Warranty and Maintenance booklet for Class Vehicles recites as follows: "[r]epairs under this warranty are made free of charge.   Your authorized Audi dealer will repair the defective part or replace it with a new or remanufactured genuine Audi part."   The Volkswagen version of this warranty guarantee is identical except Volkswagen is inserted in place of Audi.

COMPLAINT
Case No.

- 27 -

113.   The proposed class representative and proposed class members relied on the express warranties made by the defendants regarding Class Vehicles when selecting to purchase their Audi and Volkswagen vehicles.  As a result, the proposed class representative and proposed class members sustained injury, damages and an ascertainable loss in the purchase price of their vehicles and other financial injury including the cost for premature water pump repairs that resulted from the defendants' warranty breach.

114.   Class Vehicles are not reliable because of the water pump defect and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

115.   The proposed class representative and proposed class members could not have reasonably discovered the defective condition of their Class Vehicle engine's water pump prior to failure.

116.   The express warranty remedy set out in the warranty provisions for Class Vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of the defendants described in this complaint.

117.   The defendants breached their express warranties in that Class Vehicles were defective with respect to engine materials, workmanship, and manufacture.

118.   The defendants further breached their express warranties in that Class Vehicles were accompanied by an owner's manual and USA Warranty and Maintenance pamphlet that incorporated no inspection and service intervals for the water pump although the defendants knew these components were defective and required periodic inspection, service and/or replacement.

119.   The defendants further breached their express warranties by failing to remedy the defective water pump caused by defects in materials and workmanship as required by the warranty that accompanied the respective Class Vehicles.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, design and manufacture defects which cause the engine not to perform as warranted.

COMPLAINT
Case No.

120.     The proposed class representative and proposed class members relied on express warranties made by the defendants concerning the Class Vehicles and sustained financial injury resulting from the breach of those warranties by the defendants.

121.     By virtue thereof, the proposed class representative and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT II

### BREACH OF UNIFORM COMMERCIAL CODE § 2-314:
### IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS

**(On Behalf of the Nationwide Class or,
Alternatively, the California State Class)**

122.     The proposed class representative and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

123.     The defendants are merchants with respect to passenger motor vehicles.   Class Vehicles are goods within the meaning of the Uniform Commercial Code as adopted by California.

124.     The defendants failed to provide legally binding written notice to the proposed class representative and proposed class members of implied warranty exclusions at the time of purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of § 2-316.   Any purported implied warranty disclaimer is ineffective by law.

125.     The defendants impliedly warranted to the general public, owners and lessees of Class Vehicles that Class Vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.

126.     Class Vehicles that, due to a water pump defect, suddenly breakdown and stall while being driven, are not fit for the ordinary purposes for which passenger vehicles are used. The proposed class representative and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

///

///

COMPLAINT
Case No.

127.     As manufacturers of consumer goods, the defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

128.     To the extent privity of contract is required for purposes of the application of implied warranty, the proposed class representative and proposed class members are third-party beneficiaries to a contract implemented by the defendants that creates an implied warranty of merchantability.

129.     The defendants breached their implied warranties in that Class Vehicles were defective with respect to engine design and manufacture as described in this complaint and were unfit for the ordinary purposes for which passenger vehicles are used because of those defects causing premature water pump failure.

130.     Class Vehicles are predisposed to premature failure in normal anticipated operating environments because of engine materials, workmanship, design and manufacture defects described in this complaint that existed at the time these vehicles were manufactured.

131.     Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure caused by the engine overheating due to coolant loss from a defective leaking water pump.

132.     The defendants are estopped by their conduct, as described in this complaint, from disclaiming any and all implied warranties with respect to the water pump in class engines.

133.     The proposed class representative and proposed class members relied on implied warranties of merchantability made by the defendants regarding Class Vehicles in selecting to purchase their respective Class Vehicles and sustained an ascertainable financial injury resulting from the breach of those warranties by the defendants.

134.     The defendants received adequate notice of their breach of the implied warranty of merchantability through the proposed class representative's and proposed class members' requests for repair or replacement.  In the alternative, Class Vehicle owners, as indirect purchasers, were not required to issue notice of the warranty breach to the defendants and any lack of notice of

1  warranty breach did not result in any prejudice to the defendants.  The defendants declined to offer

2  the proposed class representative an effective remedy for their defective class engine or vehicle.

3        135.    Even  though  the  proposed  class  representative  and  proposed  class  members

4  complied  with  Class  Vehicle  engine  maintenance  recommendations  for  their  respective  Class

5  Vehicles, their respective Class Vehicle engines experienced premature water pump failure.

6        136.    The proposed class representative and proposed class members reasonably relied

7  upon the expertise, skill, judgment and knowledge of the defendants and upon implied warranties

8  that Class Vehicles were of merchantable quality and fit for their intended use.  Class Vehicles did

9  not conform to the defendants' implied representations or warranties because of defects in the

10  class engine's water pump.

11        137.    The proposed class representative and proposed class members had an independent

12  legitimate consumer expectation that water pumps in Class Vehicles would last in excess of

13  120,000 miles before requiring replacement based upon industry standards, competitor products,

14  consumer product magazines, prior vehicle ownership and reputation of the defendants for

15  manufacturing durable quality vehicles.  There were no statements made by the defendants or their

16  agents that contradicted or led consumers to lower their legitimate expectations at the time of

17  purchase.

18        138.    The proposed class representative and proposed class members could not have

19  reasonably discovered the defective condition of the Class Vehicles because the class engine water

20  pump defects were not visible.

21        139.    The defendants' breach of their implied warranties of merchantability was the

22  direct and proximate cause of the proposed class representative's and proposed class members'

23  financial harm.

24        140.     If Class Vehicles not been manufactured with defective water pumps, the

25  proposed class representative and proposed class members would not have incurred the costs

26  associated with premature water pump replacement.

27  ///

28  ///

COMPLAINT
Case No.

1   141.   By virtue thereof, the proposed class representative and proposed class members

2   demand judgment against defendants including multiple damages, interest, costs and attorneys'

3   fees.

4   **COUNT III**

5   **VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
    **15 U.S.C. § 2310(d)(1(A)**

6
    **(Brought Under State Law On Behalf**
7   **of the California State Class)**

8   142.   The proposed class representative and proposed class members incorporate by

9   reference all allegations in the above preceding paragraphs as if set forth fully in this count.

10   143.   This count is brought as a state law claim under 15 U.S.C. §2310(d)(1)(A) and is

11   before this Court as a supplemental state court claim for each of the state subclasses pursuant to

12   diversity jurisdiction under CAFA.

13   144.   The proposed class representative and proposed class members are consumers

14   within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

15   145.   Class Vehicles are consumer products within the context of the Magnuson-Moss

16   Warranty Act, 15 U.S.C. § 2301(1).

17   146.   The defendants are suppliers and/or warrantors within the context of the

18   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

19   147.   The defendants' express warranties are written warranties within the context of the

20   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  Class vehicle implied warranties created by

21   operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by §

22   2308.

23   148.   The defendants breached the express and implied warranties accompanying Class

24   Vehicles as described in this complaint.

25   149.   The Magnuson-Moss Warranty Act provides a claim for any consumer who is

26   damaged by the failure of a warrantor to comply with a written or implied warranty.

27   150.   The defendants' breach of their express and implied warranties was the direct and

28   proximate cause of the proposed class representative's and proposed class members' financial

COMPLAINT
Case No.
- 32 -

harm as more fully set out in the preceding warranty counts and constitutes a violation of the Magnuson-Moss Warranty Act.

151.    The defendants are jointly and severally the warrantors of the Class Vehicles.

152.    Affording the defendants a reasonable opportunity to cure their breach of written warranties for Class Vehicles would be unnecessary and futile.  The proposed class representative and proposed class members have already attempted to secure warranty coverage for their water pump replacement and related repairs without success.

153.    At the time of sale or lease of each Class Vehicle, the defendants knew, should have known or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted but nonetheless failed to rectify the situation and/or disclose the defects as described in this complaint.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Class Vehicles resort to an informal dispute resolution procedure and/or afford the defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

154.    The proposed class representative and proposed class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.

155.    By virtue thereof, the proposed class representative and proposed class members demand judgment against the defendants including multiple monetary damages, interest, costs and attorney's fees.

## COUNT IV

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. AND PROFESSIONS CODE §§ 17200 *ET SEQ.*

### (On Behalf of the California Subclass)

156.    Proposed California subclass representative Coffeng and proposed California Class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

157.    Proposed California Class representative Coffeng asserts this count on behalf of himself and members of the proposed California Class.

COMPLAINT
Case No.

158.    California's Unfair Competition Law ("UCL") prohibits all unlawful, unfair or deceptive business practices.  The defendants' conduct as described in this complaint constitutes unlawful, unfair and deceptive business practices.

159.    The defendants' breach of their express and implied warranties as described in this complaint violates § 2313 of California's Commercial Code and Cal. Civ. Code §§ 1792 *et seq.* of the Song-Beverly Consumer Warranty Act.   The defendants' conduct as described in this complaint further violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq*. These violations are independent and unlawful unfair and deceptive business practices.

160.    The defendants' sale of Class Vehicles without disclosing the existence of defective engine water pumps while misrepresenting the supposed quality and reliability attributes of these vehicles is an unlawful, unfair and deceptive business practice within the context of the UCL. This conduct was unlawful, unfair and deceptive because it was intended to, and did in fact, mislead and deceive proposed California subclass representative Coffeng and proposed California Class members.  If the defendants disclosed to proposed California Class representative Coffeng and proposed California Class members that Class Vehicles incorporated a defective water pump or that the system had been inadequately tested, they would not have purchased their respective vehicles or paid less for their respective Class Vehicle.

161.    The defendants knew that if defects in the engine water pump or inadequate testing of the water pump were disclosed to the consumer public prior to purchase, consumers at large would react similarly and elect to not to purchase Class Vehicles.  As a result, the defendants intentionally concealed their knowledge of the water pump defects and inadequate testing of the pump.

162.    As a direct, proximate and foreseeable result of the defendants' unlawful, unfair and deceptive business practices, proposed California Class representative Coffeng and proposed California Class members sustained an ascertainable loss and actual damages in that they expended tens of thousands of dollars to purchase the defective Class Vehicles and then were required to spend additional sums to have their defective water pumps repaired or replaced. Moreover, because of the undisclosed defects, proposed California Class representative Coffeng

and proposed California Class members sustained a loss and/or diminution in the value of their vehicles.   Proposed California Class representative Coffeng and proposed California Class members have or will incur incidental damages attributable to the loss of use of their Class Vehicles while the vehicles were or will be repaired.

163.   The defendants' unlawful, unfair and/or deceptive business practices caused proposed California Class Coffeng and members of the proposed California Class to convey money and benefits to the defendants including but not limited to the purchase price or lease payments for their vehicles together with water pump repair or replacement costs.

164.   Proposed California Class representative Coffeng and proposed California Class members request an order of restitution forcing the defendants to restore to them the benefits and monies they conveyed in connection with their purchase of the Class Vehicles and repair costs related to the defective water pump.

165.   By virtue thereof, proposed California representative Coffeng and proposed California Class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

**COUNT V**

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.***

**(On Behalf of the California Class)** [10]

166.   Proposed California Class representative Coffeng and proposed California Class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

---

[10] Upon the Cal. Civ. Code § 1782 notice requirements being satisfied, Coffeng and members of the proposed California Class intend to amend this count to include monetary damages in addition to the presently requested injunctive relief.  Coffeng's counsel is notifying defendants by separate letter of the particular violations of the California Consumer Legal Remedies Act and requesting they correct or agree to correct the violations enumerated.  If defendants fail to do so, Coffeng shall amend the complaint as of right (or otherwise seek leave to amend the complaint) to include compensatory and monetary damages.

COMPLAINT
Case No.

- 35 -

1    167.    Proposed California Class representative Coffeng asserts this count on behalf of

2    himself and members of the proposed California Class.

3    168.    The defendants violated Cal. Civ. Code § 1770(a)(5) by representing that Class

4    Vehicles have characteristics, uses, benefits and/or quantities they do not possess.

5    169.    The defendants violated Cal. Civ. Code § 1770(a)(7) by representing that Class

6    Vehicles are of a particular standard, quality or grade, when they are not, and in particular, by

7    supplying vehicles that contain a defect that involves a safety issue.

8    170.    The defendants violated Cal. Civ. Code § 1770(a)(9) by advertising Class Vehicles

9    with the intent not to sell them as advertised.

10    171.    The defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the

11    subject of a transaction has been supplied in accordance with a previous representation when it

12    was not.

13    172.    The defendants conducted the above-described acts or practices in transactions

14    intended to result, or that did result, in the sale of Class Vehicles to customers for personal, family

15    or household use.

16    173.    The defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code §§

17    1770 *et seq*. and committed other unfair and deceptive business practices as described in this

18    complaint including misrepresentations, omissions and fraudulent statements of material fact

19    relating to Class Vehicle safety.  Proposed California Class representative Coffeng and proposed

20    California Class members request equitable and injunctive relief authorized by the Consumers

21    Legal Remedies Act and for such additional relief as necessary.

22    174.    By virtue thereof, proposed California Class representative Coffeng and proposed

23    California Class members request judgment against the defendants, including injunctive relief set

24    out in this complaint, together with costs and attorneys' fees.

25

26    ///

27    ///

28    ///

COMPLAINT
Case No.

1

2

3

4

**COUNT VI**

**NEGLIGENT MISREPRESENTATION**

**(On Behalf of the Nationwide Class or,
Alternatively, the California State Class)**

5       175.    The proposed class representative and proposed class members hereby incorporate

6   by reference all allegations in the preceding paragraphs as if set forth fully in this count.

7       176.    The defendants negligently and recklessly misrepresented to the proposed class

8   representative and proposed class members the characteristics of Class Vehicles with respect to

9   engine water pump materials, workmanship, design and manufacture, including that the class

10  engine had a sufficient and adequate engine water pump.   The defendants negligently and

11  recklessly misrepresented information in the Class Vehicles' owner's manuals that incorporated

12  incorrect maintenance and service recommendations.

13      177.    The proposed class representative and proposed class members reasonably and

14  justifiably relied upon representations made by the defendants including information in the Class

15  Vehicles' owner's manual that incorporated incorrect engine water pump inspection and service

16  intervals.

17      178.    As a proximate and direct result of the proposed class representative and proposed

18  class members' reliance on the defendants' negligent and reckless misrepresentations, the

19  proposed class representative and proposed class members sustained monetary damages as

20  described in this complaint.

21      179.    By virtue thereof, the proposed class representative and proposed class members

22  demand judgment against defendants including multiple damages, interest, costs and attorneys'

23  fees.

24

**COUNT VII**

25

**UNJUST ENRICHMENT**

26

**(On Behalf of the Nationwide Class or,
Alternatively, the California Class)**

27      180.    The proposed class representative and proposed class members incorporate by

28  reference all allegations in the above preceding paragraphs as if set forth fully in this count.

COMPLAINT
Case No.

181.    The defendants breached their implied and express warranties in that Class Vehicles were defective with respect to the defective water pump.   The defendants further breached their express and implied warranties in that Class Vehicles were accompanied by an owner's manual that incorporated incorrect water pump inspection and service intervals.

182.    The defendants intentionally, negligently and recklessly and/or fraudulently misrepresented to the proposed class representative and proposed class members the characteristics of Class Vehicles with respect to the vehicle's engine water pump defects together with information in the Class Vehicles' owner's manuals that incorporated incorrect engine inspection and service intervals.

183.    The defendants benefited financially from their breaches of warranty, misrepresentations and fraud as described in this complaint.   The defendants denied legitimate Class Vehicle engine warranty claims and obtained further unwarranted financial gain.

184.    The proposed class representative and proposed class members sustained monetary damages as described in this complaint.

185.    Allowing the defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

186.    The proposed class representative and proposed class members request that the defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the defendants as a result of their wrongful conduct.   The proposed class representative and proposed class members should be designated beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the defendants' conduct.

187.    By virtue thereof, the proposed class representative and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT VIII

### INJUNCTIVE AND DECLARATORY RELIEF

188.    The proposed class representative and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

COMPLAINT
Case No.

189.   There is a justiciable dispute as to whether the water pump incorporated in class engines should be covered under the Limited Powertrain Warranty and/or New Vehicle Limited Warranty accompanying Class Vehicles.

190.   The proposed class representative and proposed class members request a declaratory judgment declaring that going forward all remedial work necessary to correct the defective water pump incorporated in class engines together with all resulting damages are covered warranty claims.

191.   This remedy is requested for all class members who still possess their vehicles. This remedy is authorized under the consumer fraud statutes of California and other states that grant each respective proposed class representative and proposed class member the right to seek injunctive or declaratory relief for violations of their respective state's consumer fraud statutes.

## RELIEF DEMANDED

WHEREFORE, the proposed class representative and proposed class members request:

A.   An Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclasses as defined in ¶ 14 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

B.   An Order appointing the proposed class representative as representative of the proposed class and designating the law firms of Thomas P. Sobran P.C. and Kantrowitz, Goldhamer & Graifman, P.C. as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

C.   Judgment for the proposed class representative and proposed class members against the defendants on all issues and counts;

D.   Damages for the proposed class representative and proposed class members, including but not limited to damages, together with interest, prejudgment interest, costs and attorneys' fees;

E.   Restitution for all water pump repairs incurred by the proposed class representative and proposed class members resulting from the defectively designed and manufactured water pumps and incorrect maintenance and service intervals as set forth in the Class Vehicles' owner's manuals;

COMPLAINT
Case No.

1    F.    Restitution of incidental expenses incurred by the proposed class representative and

2 proposed class members, including but not limited to rental vehicles and other substitute

3 transportation;

4    G.    A Court issued declaratory judgment declaring that all Class Vehicle claims caused

5 by their defective water pumps are within the scope of the Class Vehicles' warranty coverage; and,

6    H.    Any other relief deemed necessary by the Court.

7                    **REQUEST FOR JURY TRIAL**

8    The proposed class representative and proposed class members request trial by jury on all

9 issues and counts.

10                    STULL, STULL & BRODY

11 Dated:  March 31, 2017           By:        *s/ Patrice L. Bishop*
                                        Patrice L. Bishop
12                                       STULL, STULL & BRODY
                                        9430 West Olympic Blvd., Suite 400
13                                       Beverly Hills, CA  90212
                                        Tel:    (310) 209-2468
14                                       Fax:    (310) 209-2087
                                        Email:  pbishop@ssbla.com
15
                                        *Local Counsel for Plaintiff Gregory Coffeng*
16
                                        Gary S. Graifman
17                                       Jay I. Brody
                                        Kantrowitz, Goldhamer & Graifman, P.C.
18                                       747 Chestnut Ridge Road
                                        Chestnut Ridge, NY 10977
19                                       Tel:    (845) 356-2570
                                        Fax:    (845) 356-4335
20                                       Email: ggraifman@kgglaw.com
                                                jbrody@kgglaw.com
21
                                        Thomas P. Sobran
22                                       Thomas P. Sobran, P.C.
                                        7 Evergreen Lane
23                                       Hingham, MA 02043
                                        Tel:    (781) 741-6075
24                                       Fax:    (781) 741-6074
                                        Email: tsobran@sobranlaw.com
25
                                        *Counsel for Plaintiff Gregory Coffeng*
26

27

28

COMPLAINT
Case No.
                                        - 40 -