Patrice L. Bishop (182256)
pbishop@ssbla.com
STULL, STULL & BRODY
9430 W. Olympic Blvd., Suite 400
Beverly Hills, CA 90212
Tel: 310-209-2468
Fax: 310-209-2087

*Local Counsel for Plaintiffs
and the Putative Class*

Additional Counsel on Signature Page

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY COFFENG, MARK GLASER and JORDAN WILSON, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>    v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>     Defendant. | Case No. 17-cv-01825-JD<br><br>**PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORTIES**<br><br>DATE: October 25, 2018<br>TIME: 10:00 a.m.<br>JUDGE: Hon. James Donato<br>CRTRM: 11, 19th Floor |

## **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................................ 1

II. PRELIMINARY APPROVAL SHOULD BE GRANTED ................................................. 6

    A.  The Settlement Class Should Be Conditionally Certified ........................................ 6

        **1.**  The Settlement Class Satisfies The Numerosity Requirement. ................................................................................................ 7

        **2.**  The Settlement Class Satisfies The Commonality Requirement. ................................................................................................ 7

        **3.**  The Settlement Class Satisfies The Typicality Requirement. ................................................................................................ 8

        **4.**  The Settlement Class Satisfies The Adequacy Requirement. ................................................................................................ 9

        **5.**  The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b). ................................................................................. 9

    B.  The Notice Plan Should Be Approved. .................................................................. 11

    C.  The Substantive Terms of the Settlement Are Fair, Reasonable and Adequate, and Should Be Granted Preliminary Approval ..................................... 12

    D.  The Settlement Was the Product of Adversarial Arm's-Length Negotiation. ............................................................................................................ 14

III. CONCLUSION ................................................................................................................ 15

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MPA     Case No. 17-cv-01825-JD

- i -

# TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................... 10

*Baghdasarian v. Amazon.com, Inc.*,
    Case No. CV 05-8060 AG (CTx), 2009 WL 2263581 (C.D. Cal., Jul. 7, 2009) ....................... 11

*Browne v. American Honda Motor Co.*,
    Case No. CV 09-06750 MMM (DTBx), 2010 WL 9499072 (C.D. Cal. Jul. 29, 2010) ............. 6

*Browning v. Yahoo! Inc.*,
    Case No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ............................ 10

*Castro v. Zenith Acquisition Corp.*,
    2007 WL 81905 (N.D. Cal. Jan. 9, 2007) ................................................................................ 12

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................................. 13

*Friedman v. 24 Hour Fitness USA Inc.*,
    CV 06-6282 AHM (CTx), 2009 WL 2410889 (C.D. Cal. Aug. 6, 2009) ................................. 10

*Gattreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ................................................................................................... 13

*Gribble v. Cool Transports, Inc.*,
    Case No. CV 06-04863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ................ 6

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 7, 8, 9

*In re Connecticut General Life Ins. Co.*,
    No. Civ. S-07-0819 RRB EFB, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997) ........................... 7

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
    No. MDL 150, 1993 WL 39306 (C.D. Cal. Jan. 12, 1993) ....................................................... 7

*In re Laser Arms Corp. Securities Litig.*,
    794 F. Supp. 475 (S.D.N.Y. 1979) ........................................................................................... 11

*Jaffe v. Morgan Stanley & Co., Inc.*,
    No. C 06-3903 THE, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............................................. 2

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................................................. 10

*Lowdermilk v. United States Bank National Assoc.*,
    479 F.3d 994 (9th Cir. 2007) ..................................................................................................... 7

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950) ................................................................................................................. 11

*Officers for Justice v. Civil Service Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ................................................................................................ 12

*Parra v. Bashas, Inc.*,
 536 F.3d 975 (9th Cir. 2008) .................................................................................................. 7

*Peil v. National Semiconductor Corp.*,
 86 F.R.D. 357 (E.D. Pa. 1980) ............................................................................................. 12

Rosario v. Livaditis,
 963 F.2d 1013 (7th Cir.1992) ................................................................................................. 8

*Sadowska v. Volkswagen Group of America, Inc.*,
 No. CV 11-665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013 ............................................... 5

*Simpson v. Fireman's Fund Ins. Co.*,
 231 F.R.D. 391 (N.D. Cal. 2005) ........................................................................................... 8

*Tchoboian v. Parking Concepts, Inc.*,
 2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) ....................................................................... 11

*Torrisi v. Tucson Elec. Power*,
 8 F.3d 1370 (9th Cir. 1993) .................................................................................................. 12

*Van Bronkhorst v. Safeco Corp.*,
 529 F.2d 943 (9th Cir. 1976) ................................................................................................ 12

*Zinser v. Accufix Research Int., Inc.*
 253 F.3d 1180, *amended* 273 F.3d 1266 (9th Cir. 2001) ....................................................... 9

**Rules**

Federal Rule of Civil 23 ............................................................................................... *passim*

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MPA                     Case No. 17-cv-01825-JD

- iii -

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on October 25th, 2018 at 10:00 a.m., before the Honorable James Donato, United States District Judge, at Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, in San Francisco, California, or at such other time or place as this Court may Order, Plaintiffs Gregory Coffeng, Mark Glaser, and Jordan Wilson, by and through their undersigned counsel, will and do hereby move this Court in unopposed fashion for an Order granting Preliminary Approval of the classwide Proposed Settlement reached in this matter. A copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Gary S. Graifman filed herewith. A copy of the proposed Preliminary Approval Order sought to be entered by this Court is attached as Exhibit 3 to the Settlement Agreement. This unopposed motion is based on the accompanying Memorandum in Support, Declaration of Gary S. Graifman, Esq., including the Settlement Agreement which is attached thereto including all of its exhibits, any argument of counsel, and such additional material as this Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the putative Class, defined *infra*, should be certified for settlement purposes, with Plaintiffs being appointed Class Representatives and Plaintiffs' counsel being appointed Lead Settlement Class Counsel and Class Liaison Counsel.

2. Whether preliminary approval of the Settlement, defined *infra*, should be granted.

3. Whether the proposed Notice, defined *infra*, of the Settlement should be disseminated to the putative Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Counsel for Plaintiffs and Defendant in the above-entitled action are pleased to report that, following significant and intensive arm's length settlement negotiations, over approximately the past five months, the parties have reached a proposed classwide settlement (the "Settlement") to resolve this action. A copy of the parties' Settlement Agreement is attached as Exhibit A to the

Declaration of Gary S. Graifman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Graifman Decl.").

Pursuant to Federal Rule of Civil 23, Plaintiffs now file this unopposed motion for preliminary approval, so that: and (i) notice of the proposed Settlement can be disseminated to the absent Class Members; (ii) the absent Class Members can be given an opportunity to avail themselves of the Settlement, opt-out of the Settlement Class, or file any objections to the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(1) (directing that any notice of class action settlement may only be disseminated with prior court approval); *see also Jaffe v. Morgan Stanley & Co., Inc.*, No. C 06-3903 THE, 2008 WL 346417, at*11 (N.D. Cal. Feb. 7, 2008) (Henderson, J.) (once court grants preliminary approval it is proper to stay and enjoin members of settlement class from litigating before this or other courts matters covered by proposed settlement).

This unopposed motion for preliminary approval also seeks to set a date for the Final Approval and Fairness Hearing on the proposed Settlement. *See* Settlement Agreement, at ¶ IX(A). At the Final Approval Hearing, the Court will have the opportunity to determine whether to grant final approval to the class action settlement, as well as to evaluate any objections to the Settlement that may have been filed. *See* Fed. R. Civ. P. 23 (e)(2) (directing that a class action settlement that purports to bind absent class members may only be entered after hearing held by the court). Annexed as Exhibit B to the Graifman Decl. for the Court's convenience is a proposed schedule of dates calculated on the assumption that the Preliminary Approval Order would be entered on October 25, 2018. Exhibit B is based on the pertinent dates contemplated in the Settlement Agreement (obviously if the Order is entered after that date, the dates on Exhibit B should be extended accordingly).

The unopposed motion for preliminary approval should be granted. The Settlement reached is unquestionably fair, reasonable and adequate—it provides Class Members with a meaningful warranty extension and robust reimbursement for pre-notice repair costs they incurred to replace the allegedly defective primary engine water pump that forms the basis of the CAC. *See* Settlement Agreement, at ¶¶ II(A), (B) and (C). Under the warranty extension, Defendant Volkswagen Group of America, Inc. ("VWGoA") will extend the New Vehicle Limited Warranty

("NVLW") applicable to the Settlement Class Vehicles to cover repair or replacement of a failed primary engine water pump, by an authorized Volkswagen or Audi dealer, for a period of 10 years or 100,000 miles, whichever occurs first, from the vehicle's In-Service Date, subject to certain terms and conditions. *Id*. This warranty extension almost doubles the 5 years or 60,000 miles (whichever occurs first) durational limit of VWGoA's original NVLW. The proposed Settlement, therefore, provides meaningful redress for the claims and allegations pled in the Consolidated Amended Complaint (the "CAC").

The gravamen of the CAC is that VWGoA allegedly withheld material disclosures concerning claimed defective primary engine water pump components known to VWGoA and used in the following vehicles (hereinafter "Settlement Class Vehicle(s)"): (i) certain 2008 through and including 2014 model year Audi motor vehicles equipped with the 2.0L TSI or TFSI turbocharged engine; and (ii) certain 2008 through and including 2014 model year Volkswagen motor vehicles equipped with the 2.0L TSI turbocharged engine.[1] Settlement Class Vehicles equipped with 2.0L EA888 TSI or TFSI turbocharged four cylinder multi-valve engines include, but are not limited to, engine codes CCTA, CAEB, CAED and CBFA (hereinafter "class engines" or "class engine").[2] VWGoA has maintained, and continues to maintain, that the primary engine water pumps in the Settlement Class Vehicles are not defective; that no warranties (express or implied) or laws (statutory or common) have been violated, and that no wrongdoing has occurred in connection with the water pumps and the Settlement Class Vehicles.

The Settlement of this vigorously disputed claim provides substantial benefits both for those Settlement Class Members whose vehicles have already manifested a water pump failure

---

[1] Because certain vehicles during these model years did not use the allegedly defective water pump component, the Class Vehicles involve certain Vehicle Identification Numbers ("VIN" or "VIN's") and Class Members will be able to determine if their VIN is included in the Settlement. (Ex. 4 to Settlements Agreement lists the VIN's and the Class Vehicles. With the Court's permission, that Exhibit will be filed under seal because it contains private and confidential information about the vehicles of the particular Settlement Class members. There are approximately 800,000 vehicles in the Settlement Class.

[2] Class Vehicles include the Audi A3, A4, A5 and Q5 together with the Volkswagen CC, Beetle, EOS, Golf/GTI, Jetta, Passat, Sports Wagon and Tiguan, *inter alia*. Class Vehicles were distributed and warranted by VWGoA in the United States.

and been repaired at their owners' expense (reimbursement), and for those Settlement Class Members whose vehicles experience a water pump failure after the date of class notice and within 10 years or 100,000 miles (whichever occurs first) from the vehicle's In-Service Date (warranty extension).

Under the reimbursement portion of the Settlement, Class Members who have paid out-of-pocket for repair or replacement of a failed primary engine water pump within eight (8) years or 80,000 milers (whichever occurs first) from the vehicle's In-Service Date and prior to the Notice Date, will receive one hundred percent (100%) reimbursement of the paid invoice amount for the repair or replacement, subject to certain adjustments (*e.g.* for good will or full/partial payments/reimbursements received by them under an extended warranty or service contract). *See* Settlement Agreement, at ¶ II(B). Settlement Class Members who have paid out-of-pocket for repair or replacement of a failed primary engine water pump after eight (8) years or 80,000 miles (whichever occurs first) and up to ten (10) years or 100,000 miles (whichever occurs first) of the vehicle's In-Service Date and prior to the Notice Date, will receive seventy percent (70%) reimbursement of the paid invoice amount for the repair or replacement, subject to certain similar adjustments. *See* Settlement Agreement, at ¶ II(B).

In addition, if, within 10 years or 100,000 miles (whichever occurred first) of the vehicle's In-Service Date and prior to the Notice Date, a Settlement Class Member paid for the cost of repair/replacement of a damaged engine that was caused by the failure of the water pump, he/she may be entitled to a graduated percentage of reimbursement of the out-of-pocket expenses based on the following schedule:

| Time from in-service date | Less than 50,000 miles | 50,001 to 60,000 miles | 60,001-70,000 miles | 70,001-80,000 miles | 80,001 to 100,000 miles |
|---|---|---|---|---|---|
| 4 years | 100%[3] | 70% | 50% | 40% | 25% |

---

[3] Under original warranty.

| | | | | | |
|---|---|---|---|---|---|
| 4-5 years[4] | 70% | 50% | 40% | 30% | 20% |
| 5-6 years | 50% | 40% | 35% | 25% | 15% |
| 6-7 years | 40% | 30% | 25% | 20% | 10% |
| 7-8 years | 30% | 25% | 20% | 15% | 10% |
| 8-10 years | 25% | 20% | 15% | 10% | 5% |

The reimbursement provision of the Settlement Agreement for failed water pumps applies regardless of whether the repair was made by an authorized VW or Audi dealership or at an independent service center of the Settlement Class Member's choice. *Id*. at ¶ II(B)(1)(c) (although if made at an independent service center and not an authorized dealer, the amount for such reimbursement is capped at $950.00 if it is subject to the 100% reimbursement, and 70% of that amount if subject to the 70% reimbursement).

Notably, the overall settlement consideration is not subject to any aggregate monetary cap, proration, or other allocation. In addition to the foregoing substantive relief, under the Settlement Agreement VWGoA will bear the cost of the class notice, claims administration, and awarded attorneys' fees and expenses. *Id*. at ¶¶ IV(A) and (B). By any objective standard, the Settlement warrants preliminary approval. Indeed, such automotive classwide settlements that provided a cash reimbursement or prospective warranty extension option have been granted final approval by California federal courts. *See Sadowska v. Volkswagen Group of America, Inc.*, No. CV 11-665, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013) (granting final approval to nationwide class settlement that called for defendant car manufacturer to extended warranty to lesser of 10 years or

---

[4] For VW Settlement Class Vehicles in which the New Vehicle Limited Warranty period is 5 years or 60,000 miles (whichever occurs first) from the In-Service Date, the reimbursement percentage shall be one hundred percent (100%) for unreimbursed out-of-pocket expenses incurred within the said 5 years or 60,000 miles (whichever occurs first) warranty period, but not exceeding the maximum reimbursement amount of $4,000.00 if the repair/replacement was performed by an independent service center and not an authorized VW dealer (Paragraph 2 above).

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT; MPA                                            Case No. 17-cv-01825-JD

100,000 miles and offer reimbursement for repairs already undertaken); *Browne v. American Honda Motor Co.*, Case No. CV 09-06750 MMM (DTBx), 2010 WL 9499072, at *4 (C.D. Cal. Jul. 29, 2010) (granting final approval to nationwide class settlement that provided coverage for future brake repairs for a period of up to three years or a reimbursement option covering up to 50 percent of repair costs already undertaken).

The notice of the proposed Settlement also fully complies with Rule 23 and due process concerns, as it fully advises Settlement Class Members of their rights under the Settlement, and is to be disseminated individually through the United States mail. *See* Ex. 5 to Settlement Agreement (proposed form of Notice); Settlement Agreement, at ¶¶ V(b)(1), (2) and (3) (calling for Settlement Administrator to disseminate individual Notice of the Proposed Settlement to identifiable members of settlement class via United States mail). Additionally, to account for Settlement Class Members whose current address may not be readily identifiable, the Settlement Agreement also calls for the dissemination of the Notice on a Settlement website. *See* Settlement Agreement, at ¶ V(b)(6) (calling for publication of a settlement website containing the notice).

Certification of a Settlement Class for settlement purposes only is also worthy of preliminary approval. Here, the Settlement Class definition closely tracks the putative class definition alleged in the CAC. *Compare* Settlement Agreement, at ¶ I(Q) (Settlement Class definition) *with* CAC, at ¶ 14 (putative class defined in complaint). As detailed below, moreover, Plaintiffs meet the Rule 23 criteria for conditional certification of the Settlement Class for settlement purposes only.

## II. PRELIMINARY APPROVAL SHOULD BE GRANTED

### A. The Settlement Class Should Be Conditionally Certified

This is a putative class action, and as such, the proposed Settlement Agreement calls for certification of a Settlement Class for settlement purposes only. *See* Settlement Agreement, at ¶ 1(Q) (defining Settlement Class). The use of such settlement classes is common and proper in the resolution of class action litigation. *See, e.g., Gribble v. Cool Transports, Inc.*, Case No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at * 3, (C.D. Cal. Dec. 15, 2008) (approving settlement

class as part of final approval of class action settlement); *In re Connecticut General Life Ins. Co.*, No. Civ. S-07-0819 RRB EFB, 1997 WL 910387, at *1 ¶ 2 (C.D. Cal. Feb. 13, 1997) (certifying "for purposes of settlement, the Settlement Class defined in Section II and Exhibit E of the Settlement Agreement"); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, No. MDL 150, 1993 WL 39306, at *2 (C.D. Cal. Jan. 12, 1993) (granting preliminary approval and certifying "for purposes of this settlement only, Temporary Settlement Classes as defined in the Settlement Agreement.").

Here, subject to certain exclusions, the Settlement Class is defined as: "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I (R) of this Agreement, in the United States of America and Puerto Rico." Settlement Agreement, at ¶ I(Q). Settlement Class definition sets forth an identifiable class, and generally tracks the putative class definition originally pled in the CAC. *See* CAC, at ¶¶ 1 and 2 (alleging class definition).

### 1. The Settlement Class Satisfies The Numerosity Requirement.

Rule 23 (a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). It is undisputed that this action meets the numerosity requirement. Material obtained by Plaintiffs' counsel during discovery in this action confirms that approximately 800,000 Settlement Class Vehicles were manufactured and distributed within the United States. Unquestionably, this more than satisfies the numerosity requirement for class certification. *See Lowdermilk v. United States Bank National Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007) (numerosity criteria satisfied by plaintiff's mere allegation that class size "exceeds 30 persons.").

### 2. The Settlement Class Satisfies The Commonality Requirement.

Rule 23 (a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). "To establish commonality, '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies.'" *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Here, this commonality requirement is met because the claims of all absent class members arise from the same allegation

in the CAC, namely, does there exist a defect in the Settlement Class Vehicles' primary engine water pump?

Further, the Settlement Class also shares this commonality requirement in that all Settlement Class Members whose vehicles experience the manifestation of the alleged common defect (a water pump failure) are entitled to relief if their claim meets the requirements of the Settlement. This is so because a key provision of the Settlement Agreement permits eligible members to obtain reimbursement from VWGoA for certain out-of-pocket costs previously incurred by the Settlement Class Member in having to replace the original primary engine water pump within the time and mileage parameters of the Settlement. *See* Settlement Agreement, at ¶¶ II(B) and (C) (detailing settlement consideration).

### 3. The Settlement Class Satisfies The Typicality Requirement.

Rule 23 (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Hanlon*, 150 F.3d at 1020). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In determining whether typicality is met, the focus should be "'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff. *Simpson*, 231 F.R.D. at 396 (quoting Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir.1992)). Typicality does not require that "all class members suffer the same injury as the named class representative." *Id*.

The typicality criteria are satisfied in this case. Plaintiffs Gregory Coffeng, Mark Glaser, and Jordan Wilson own vehicles equipped with the water pumps alleged in the CAC and experienced a manifestation of the alleged defect that required repairs at costs that varied among the Plaintiffs. *See* CAC, at ¶¶ 10-12. Because Plaintiffs are members of the proposed Settlement Class, and assert the same causes of action on behalf of themselves and all absent class members, their CAC and the Settlement Class meet the typicality requirement for class certification.

### 4. The Settlement Class Satisfies The Adequacy Requirement.

Rule 23 (a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. There are no conflicts of interest alleged or that could possibly exist here. Plaintiffs seek the same remedy as all class members; namely, relief to address the claim that the vehicle has manifested or is unduly prone to manifest a failure of the primary engine water pump. Plaintiffs' interests, therefore, are fully aligned with the interests of the Settlement Class members.

Further, all Plaintiffs and their counsel are adequate class representatives. This is evidenced, in the first instance, by the fact that Plaintiffs and their counsel have managed to negotiate this Settlement Agreement with VWGoA, so as to grant meaningful relief to the class. Counsel for Plaintiffs are highly experienced in class action litigation, and have been involved in many class actions and settlements. *See* Exs. C-E to the Graifman Decl. (resumes of class counsels' law firms)[5]. Their track record in this action before this Court evidences their adequacy to serve as Class counsel.

### 5. The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b).

In addition to meeting all the class certification requirements enumerated in Rule 23(a), a movant must also satisfy at least one of the requirements of Rule 23(b). *See Zinser v. Accufix Research Int., Inc.* 253 F.3d 1180, 1886, *amended* 273 F.3d 1266 (9th Cir. 2001). Here, the Settlement provides monetary relief, and the criteria set forth in Rule 23(b)(3) is pertinent. This section provides that class certification is appropriate if the criteria of Rule 23(a) are met, and if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

---

[5] Exhibit C to the Graifman Decl. is the firm resume of Kantrowitz, Goldhamer & Graifman, P.C.; Exhibit D is the firm resume of the Law Offices of Thomas P. Sobran, P.C.; and Exhibit E is the firm resume of Stull, Stull & Brody.

Fed. R. Civ. P. 23(b)(3).

The "predominance" and "superiority" requirements of Rule 23(b)(3) are readily met in this case. "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Friedman v. 24 Hour Fitness USA Inc.*, CV 06-6282 AHM (CTx), 2009 WL 2410889, at *6 (C.D. Cal. Aug. 6, 2009) (*quoting Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)). Here, this cohesiveness assuredly exists because the overarching inquiry and interest of all putative class members is whether the members of the Settlement Class are entitled to relief from VWGoA for an alleged defect in the primary engine water pump present in their particular Settlement Class Vehicle. This evidence and proof as to the existence of a legally cognizable claim to obtain such relief, therefore, would predominate over any individual issues in adjudicating this case.

Similarly, the "superiority" requirement of Rule 23(b)(3) is also satisfied in this case. In determining the superiority of a class action, courts consider the following four factors: (1) the class members' interests in individually prosecuting separate actions; (2) whether any litigation concerning the controversy has already been brought by class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.[6] *See* Fed. R. Civ. P. 23(b)(3)(a)-(d). Here, those factors clearly militate in favor of class certification. Although the cost of repairing or replacing a failed primary engine water pump is significant, the cost of individually litigating such a case against VWGoA would easily exceed the cost of any relief that could be obtained by any lone owner and lessee. This, alone, warrants a finding that a class action is a superior method of adjudication. *See Tchoboian v.*

---

[6] Manageability is a factor to assess in deciding whether the superiority requirement has been met when class certification is sought as part of an adversarial trial process. By contrast, "a settlement class need not be 'manageable' as a trial class action because no trial will occur." *Browning v. Yahoo! Inc.*, Case No. C04-01463 HRL, 2007 WL 4105971, at *9 (N.D. Cal. Nov. 16, 2007) (*citing Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997)).

*Parking Concepts, Inc.*, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009) (Selna, J.) (granting motion for class certification and noting that "[t]his superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution."); *Baghdasarian v. Amazon.com, Inc.*, Case No. CV 05-8060 AG (CTx), 2009 WL 2263581, at *7 (C.D. Cal., Jul. 7, 2009) (granting motion for class certification and noting that the superiority inquiry is geared to address "the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Because the proposed Settlement Class meets all the applicable requirements for certification under Federal Rule of Civil Procedure 23, the class should be conditionally certified for purposes of settlement. At the Fairness Hearing, the Court will have further opportunity to revisit this conditional certification in deciding whether to grant Final Approval to the Settlement Agreement and certification of the Settlement Class.

### B. The Notice Plan Should Be Approved.

Rule 23 and due process concerns require notice to be provided to absent class members in order to inform them of the proposed Settlement, and grant them the opportunity to opt-out or object. *See* Fed. R. Civ. P. 23(c)(2). The notice and means of disseminating it must be the "best notice practicable" under the circumstances. *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950). Here, the parties propose to disseminate the notice ("Notice") of the proposed Class Action Settlement individually, by way of United States mail to the last known address of the absent Class Members for which the Class Member's identity and address are reasonably ascertainable from industry-recognized databases. *See* Settlement Agreement, at ¶¶ V(b)(1)-(3) (setting forth Notice Plan and notice terms under the Settlement Agreement). The Claims Administrator will use the same company to acquire the names and addresses of Settlement Class Vehicle owners as manufacturers use to aggregate that data for recall notices. *See* Settlement Agreement, at ¶ V(b)(2). Such individual service of notice via the U.S. mail has been held, as a matter of law, to satisfy the due process concerns and to meet the "best practicable notice" standard. *See In re Laser Arms Corp. Securities Litig.*, 794 F. Supp. 475, 496 (S.D.N.Y. 1979)

1    ("Therefore, the Court finds that notice by first class mail is the 'best practicable notice.'"); *Peil v.*
2    *National Semiconductor Corp.*, 86 F.R.D. 357, 375 (E.D. Pa. 1980) ("In the present case, the best
3    notice practicable would apparently be obtained by a first class mailing."). Moreover, the
4    Settlement Agreement calls for the Settlement Administrator to establish a website with Notice of
5    the Settlement and to post the Notices for VW and Audi Class Members on both. *See* Settlement
6    Agreement, at ¶ V(b)(6).

7    The proposed form of Notice also complies with due process requirements and Rule 23.
8    The form Notices for VW and Audi Class Members are both attached as Exhibit 5 to the
9    Settlement Agreement, and the Notices inform absent Class Members as to the terms of the
10   Settlement, their right to avail themselves of the Settlement, opt-out, or object, procedures to
11   follow and applicable deadlines, as well as the binding effect of the Settlement upon Members of
12   the Settlement Class who do not opt-out. *See* Ex. 5 to Settlement Agreement. The VW and Audi
13   forms of Notice and the proposed plan of dissemination should, therefore, also be approved.

### C. The Substantive Terms of the Settlement Are Fair, Reasonable and Adequate, and Should Be Granted Preliminary Approval

16   Preliminary approval should also be granted to the Settlement because its terms are fair,
17   reasonable and adequate. Ultimately, the decision as to whether to grant preliminary approval to a
18   settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith*
19   *Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007). In exercising that discretion,
20   however, the Court should bear in mind that "there is an overriding public interest in settling and
21   quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco*
22   *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that a settlement represents an exercise of
23   judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir.
24   1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private
25   consensual agreement negotiated between the parties to a lawsuit must be limited to the extent
26   necessary to reach a reasoned judgment that the agreement is not the product of fraud or
27   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The general standard by which courts are guided when deciding whether to grant preliminary approval to a class action settlement is whether the proposed settlement falls within the range of what could be "fair, adequate, and reasonable," so that notice may be given to the proposed class, and a hearing for final approval may be scheduled. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds that the proposed settlement is "within the range of possible approval" and that notice should be given, "the next step is the fairness hearing.").

This proposed Settlement assuredly satisfies the foregoing criteria. The terms of the Settlement provide Settlement Class Members with meaningful relief that addresses the precise legal injury that was alleged in the CAC. The recovery in this Settlement is substantial. Each qualifying Settlement Class Member may be entitled to receive hundreds and potentially thousands of dollars to reimburse the cost of vehicle repair. Eligible Settlement Class Members also are provided a warranty extension benefit for the primary engine water pump that almost doubles the duration of the original VWGoA New Vehicle Limited Warranty. Settlement Agreement, ¶ II(A).

By any measure, the Settlement terms are fair, adequate and reasonable. But this is particularly true when considered in light of the uncertain prospects and risks faced by Plaintiffs and the putative class. This is an arm's length Settlement of a vigorously disputed claim. VWGoA maintains that the water pump is not defective and that no warranties or laws (statutory or common) have been violated. VWGoA vigorously denies any liability or wrongdoing, and intends to vigorously contest not only the ultimate liability and claim for damages, but also Plaintiffs' anticipated motion for class certification. Although Plaintiffs remained confident in the merits of their case, the results were not predictable with any degree of certainty. In addition, VWGoA reserved the right to appeal any class certification or ultimate decision entered against it. An appeal to the Ninth Circuit would likely take an extended period of time to resolve, such that,

even if successful, it would mean that ultimate relief to the class would likely be substantially delayed.

The notice terms of the proposed Settlement readily satisfy fairness and due process requirements because they call for personal notice *via* United States mail on all identifiable Settlement Class Members and the Notice apprises the Settlement Class Members of the Settlement terms and Class Members' options. *See* Settlement Agreement, at ¶¶ V(b)(1)–(3) (imposing on Defendant obligation to effect Notice on Settlement Class Members by United States mail); Ex. 1 to Settlement Agreement (proposed form of Notice).

### D. The Settlement Was the Product of Adversarial Arm's-Length Negotiation.

That the discussions and negotiations leading up to the Settlement were conducted in vigorous, adversarial, and arm's-length fashion also serve as added indicia of the fairness of the settlement. Here, settlement negotiations were not even broached in earnest until the parties had exchanged meaningful informal discovery and fully briefed and argued a Motion to Dismiss and, after the hearing on Defendants' Motion, Amendment of the Complaint, and Plaintiffs' counsel consulted with automotive experts. These actions all occurred prior to engaging in settlement talks. At the point of settlement discussions, each side had a *bona fide* basis on which to make an informed assessment of the value, strengths, and potential weaknesses of their respective case and defenses.

Further, it is undeniable that the settlement negotiations here were non-collusive and adversarial in nature. Indeed, the parties engaged in extended negotiations during which several extensions of time were required and granted by the Court. Furthermore, as of the filing of this Motion for Preliminary Approval, counsel have not begun any negotiations on the issue of reasonable attorneys' fees and incentive awards. Thus further attesting to the adversarial, *bona fide*, and arm's-length nature of the negotiations. *Id*.

Because the proposed Settlement amounts to a reasonable means of resolving this litigation, and because the risks and expenses inherent in continuing to litigate this matter are significant and uncertain, this proposed settlement should be preliminarily approved.

## III. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the unopposed motion for preliminary approval be granted.

STULL, STULL & BRODY

Dated: September 11, 2018  By:  *s/ Patrice L. Bishop*
Patrice L. Bishop
STULL, STULL & BRODY
9430 West Olympic Blvd., Suite 400
Beverly Hills, CA 90212
Tel:  (310) 209-2468
Fax:  (310) 209-2087
Email: pbishop@ssbla.com

*Local Counsel for Plaintiffs Gregory Coffeng, Mark Glaser and Jordan Wilson and the Putative Class*

Gary S. Graifman (admitted *pro hac vice*)
Jay I. Brody
KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Tel:  (845) 356-2570
Fax:  (845) 356-4335
Email: ggraifman@kgglaw.com
       jbrody@kgglaw.com

Thomas P. Sobran (admitted *pro hac vice*)
THOMAS P. SOBRAN, P.C.
7 Evergreen Lane
Hingham, MA 02043
Tel:  (781) 741-6075
Fax:  (781) 741-6074
Email: tsobran@sobranlaw.com

*Lead Counsel for Plaintiffs Gregory Coffeng, Mark Glaser and Jordan Wilson and the Putative Class*