1  Patrice L. Bishop (182256)
   pbishop@ssbla.com
2  STULL, STULL & BRODY
   9430 W. Olympic Blvd., Suite 400
3  Beverly Hills, CA  90212
   Tel:    310-209-2468
4  Fax:    310-209-2087

5  *Local Counsel for Plaintiffs*
   *and the Putative Class*
6

7  *Additional Counsel on Signature Page*

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  GREGORY COFFENG, MARK GLASER        Case No. 17-cv-01825-JD
    and JORDAN WILSON, individually and on
14  behalf of all others similarly situated,   **PLAINTIFFS' UNOPPOSED NOTICE OF**
                                                **MOTION AND SECOND RENEWED**
15          Plaintiffs,                         **MOTION FOR PRELIMINARY**
                                                **APPROVAL OF CLASS ACTION**
16          v.                                  **SETTLEMENT; MEMORANDUM OF**
                                                **POINTS AND AUTHORITIES**
17

18  VOLKSWAGEN GROUP OF AMERICA,
    INC.,
19                                              DATE:       August 15, 2019
            Defendant.                          TIME:       10:00 a.m.
20                                              JUDGE:      Hon. James Donato
                                                CRTRM:      11, 19th Floor
21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2

**Page**

3    I.      INTRODUCTION.................................................................................................. 1

4    II.     PRELIMINARY APPROVAL SHOULD BE GRANTED ................................. 16

5           A.      The Settlement Class Should Be Conditionally Certified ...................... 16

6                   1.      The Settlement Class Satisfies The Numerosity
7                           Requirement. ............................................................................... 17

8                   2.      The Settlement Class Satisfies The Commonality
                            Requirement. ............................................................................... 17

9                   3.      The Settlement Class Satisfies The Typicality
10                          Requirement. ............................................................................... 18

11                  4.      The Class Representatives Satisfy The Adequacy
                            Requirement. ............................................................................... 18

12                  5.      The Settlement Class Satisfies The Necessary
13                          Criteria Of Rule 23(b). ............................................................... 19

14          B.      The Notice Plan Should Be Approved. .................................................. 20

15          C.      The Substantive Terms of the Settlement Are Fair, Reasonable and

16                  Adequate, and Should Be Granted Preliminary Approval ...................... 22

17          D.      The Settlement Was the Product of Adversarial Arm's-Length

18                  Negotiation ............................................................................................. 23

19   III.    THE PARTIES HAVE INCORPORATED THE MATERIAL REQUESTED IN THE

20           NORTHERN DISTRICT'S PROCEDURAL GUIDANCE ............................... 24

21   IV.     CONCLUSION ................................................................................................... 30

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page**

3

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)                                                              20

4

5

*Baghdasarian v. Amazon.com, Inc.*,
   Case No. CV 05-8060 AG (CTx), 2009 WL 2263581 (C.D. Cal., Jul. 7, 2009)          20

6

*Bellinghausen v. Tractor Supply Co.*,
   No. 13-cv-2377-JSC, 2015 WL 1289342 (N.D. Cal. Mar. 20, 2015)                    29

7

8

*Brickman v. Fitbit, Inc.*, 1
   5-cv-02077 (N.D. Cal. Dec. 17, 2018)                                            8

9

*Browne v. American Honda Motor Co.*,
   Case No. CV 09-06750 MMM (DTBx), 2010 WL 9499072 (C.D. Cal. Jul. 29, 2010)      14

10

*Browning v. Yahoo! Inc.*,
   Case No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)               20

11

12

*Castro v. Zenith Acquisition Corp.*,
   2007 WL 81905 (N.D. Cal.  Jan. 9, 2007)                                         22

13

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992)                                                   22

14

*Friedman v. 24 Hour Fitness USA Inc.*,
   CV 06-6282 AHM (CTx), 2009 WL 2410889 (C.D. Cal. Aug. 6, 2009)                  19

15

16

*Gattreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982)                                                    22

17

*Gaudin v. Saxon Mortgage Serv.*, Inc.,
   2015 U.S. Dist. LEXIS 95720 (N.D. Cal. July 21, 2015)                           8

18

19

*Gribble v. Cool Transports, Inc.*,
   Case No. CV 06-04863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)       16

20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)                                        17, 18, 27, 28

21

22

*Herremans v. BMW of N.A.*,
   LLC, CV 14-2363-GW(PJWX) (C.D. Cal.)                                      *passim*

23

*Huntsman v. Southwest Airlines, Co.*,
   2018 U.S. Dist. LEXIS 207009 (N.D. Cal. Dec. 5, 2018)                           8

24

25

*In re Connecticut General Life Ins. Co.*,
   No. Civ. S-07-0819 RRB EFB, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997)            16

26

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
   No. MDL 150, 1993 WL 39306 (C.D. Cal. Jan. 12, 1993)                           16

27

28

*In re Laser Arms Corp. Securities Litig.*,
  794 F. Supp. 475 (S.D.N.Y. 1979) .......................................................... 21

*In Re Nissan AT Transmission Cooler Defect Litigation*,
  10-cv-7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) .......................... 26, 29

*In re Toyota Motor Corp.*,
  No. 8:10ML-02151-JVS, 2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013) ........ 28

*In re Volkswagen Timing Chain Products Liability Litig,*,
  Civil Action No. 16-cv-2765 (JLL) (D.N.J.) ............................................ 25, 26, 27

*Jaffe v. Morgan Stanley & Co., Inc.*,
  No. C 06-3903 THE, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............................. 9

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) .......................................................... 19

*Lowdermilk v. United States Bank National Assoc.*,
  479 F.3d 994 (9th Cir. 2007) ........................................................... 17

*Miranda v. Coach, Inc.*,
  14-cv-02031 (N.D. Cal. June 22, 2016) .................................................... 8

*Mullane v. Central Hanover Trust*,
  339 U.S. 306 (1950) .................................................................... 20

*Myles v. AlliedBarton Sec. Serv., LLC*,
  2014 WL 6065602 (N.D. Ca. Nov. 12, 2014) ............................................... 29

*Navarro v. Servisair*,
  No. 08-cv-2716, MHP, 2010 WL 1729538 (N.D. Cal. Apr. 27, 2010) ........................ 29

*Officers for Justice v. Civil Service Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................... 22

*Parra v. Bashas, Inc.*,
  536 F.3d 975 (9th Cir. 2008) ........................................................... 17

*Peil v. National Semiconductor Corp.*,
  86 F.R.D. 357 (E.D. Pa. 1980) .......................................................... 21

*Relente v. Viator, Inc.*,
  2015 WL 3613713 (N.D. Cal. June 9, 2015) ............................................... 29

*Sadowska v. Volkswagen Group of America, Inc.*,
  No. CV 11-665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013 .............................. 14

*Seifi v. Mercedes Benz USA, LLC*,
  Case No. 12-cv-05493 (TEH) (N.D. Cal. Aug. 18, 2015) ................................ 28, 29

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) ........................................................ 18

*Stokes v. Interline Brands, Inc.*,
　　2014 WL 5826335 (N.D. Cal. Nov. 10, 2014) ............................................................ 29

*Tchoboian v. Parking Concepts, Inc.*,
　　2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) ............................................................... 20

*Torrisi v. Tucson Elec. Power*,
　　8 F.3d 1370 (9th Cir. 1993) ......................................................................................... 22

*Trew v. Volvo Cars of N. Am., LLC*,
　　No. S-05-1379-RRB, 2007 U.S. Dist. LEXIS 55305 (S.D. Cal. July, 31, 2007) ....... 28

*Van Bronkhorst v. Safeco Corp.*,
　　529 F.2d 943 (9th Cir. 1976) ....................................................................................... 22

*Zinser v. Accufix Research Int., Inc.*
　　253 F.3d 1180, *amended* 273 F.3d 1266 (9th Cir. 2001) ........................................... 19

**Rules**

Federal Rule of Civil 23 ....................................................................................... *passim*

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

      **PLEASE TAKE NOTICE THAT** on August 15, 2019, at 10:00 a.m., before the Honorable James Donato, United States District Judge, at Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, in San Francisco, California, or at such other time as this Court may Order, Plaintiffs Gregory Coffeng, Mark Glaser, and Jordan Wilson, by and through their undersigned counsel, will move this Court in unopposed fashion for an Order granting Preliminary Approval of the classwide proposed Settlement reached in this matter (the "Unopposed Motion"). A copy of the Second Amended Settlement Agreement executed on or about May 30, 2019 (the "Settlement Agreement") is attached as Exhibit ("Exh.") A to the Declaration of Gary S. Graifman filed herewith (the "Graifman Decl."). A copy of the proposed Preliminary Approval Order sought to be entered by this Court is attached as Exh. 3 to the Settlement Agreement. This Unopposed Motion is based on the accompanying Memorandum of Points and Authorities, the Graifman Decl., including the Settlement Agreement which is attached thereto including all of its exhibits, the Declaration of Cameron R. Azari, Esq., Director of Legal Notice for Hilsoft Notifications, a business unit of Epiq Global, (the "Azari Decl.") submitted herewith, any argument of counsel, and such additional material as this Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

    1.    Whether the putative Class, defined *infra*, should be preliminarily certified for settlement purposes, with Plaintiffs conditionally appointed Class Representatives and Plaintiffs' counsel conditionally appointed Lead Settlement Class Counsel and Class Liaison Counsel.

    2.    Whether preliminary approval of the Settlement, defined *infra*, should be granted.

    3.    Whether the proposed Notice, defined *infra*, of the Settlement should be disseminated to the putative Class.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

    The parties request preliminary approval of the proposed classwide settlement (the "Settlement") resolving this proposed class action. This settlement was reached following lengthy

and intensive arm's length negotiations. As noted above, the operative Settlement Agreement is attached as Exhibit A to the Graifman Decl.

The Court, at the February 7, 2019 hearing, articulated certain issues, requested information, and provided a suggested roadmap for preliminary approval that the parties have assiduously sought to follow in this submission.

The Settlement is fair, reasonable and adequate for a number of reasons, including the following:

- The Settlement provides that class members who, prior to the Notice Date, incurred out-of-pocket expenses for repair/replacement of the primary engine water pump ("water pump") will receive a ***100% reimbursement*** of the cost of repair/replacement if the repair/replacement was performed within eight (8) years or 80,000 miles (whichever occurred first) of the vehicle's In-Service Date, and ***seventy percent (70%) reimbursement*** of the cost of repair/replacement if performed between eight (8) years/80,000 miles (whichever occurred first) and ten (10) years/100,000 miles (whichever occurred first). If a prior repair/replacement was performed at an independent repair facility, the amount of reimbursement is capped at $950.00. The Court inquired as to the rationale for the $950.00 "cap" for such repairs. That figure represents the average cost for the repair/replacement that would be incurred at VW/Audi dealerships in the highest (most expensive) market in the U.S., which is California (*See* Graifman Decl., ¶ 10). The cap is, therefore, very liberal and favorable to the Settlement Class Members.

- The Settlement provides for a substantial extension of the existing New Vehicle Limited Warranties ("NVLWs") applicable to the water pump of the Settlement Class Vehicles. The warranty extension will be effective on the Notice Date, and will cover repair or replacement of a failed water pump, by an authorized VW or Audi dealer, free of charge, for a period of ***up to ten (10) years or 100,000 miles (whichever occurs***

*first)* from the Settlement Class Vehicle's In-Service Date.[1]   This is nearly a doubling of the existing NVLW warranty period applicable to the subject water pumps.

- While the substantial benefits provided above would, by themselves, constitute an eminently fair, reasonable and adequate settlement, Defendant has, in addition to those benefits, agreed to also (1) reimburse class members for a percentage of the cost incurred to repair engine damage that occurred as a direct result of a failure of the water pump during the period of ***ten (10) years or 100,000 miles (whichever occurs first)*** from the vehicle's In-Service Date and prior to the Notice Date, pursuant to the percentage chart set forth in the Settlement Agreement at Article II, Sec.C, and (2) include in the 10 year/100,000 mile (whichever occurs first) extended warranty a percentage of the cost of repair/replacement, by an authorized VW or Audi dealer, of engine damage directly caused by a failure of the water pump, during that extended warranty period and after the Notice Date, subject to the same percentages that are contained in the percentage chart in the Settlement Agreement at Article II, Sec. A. These provisions were added to the already fair, reasonable and adequate Settlement in order to afford significant extra benefits to VW and Audi customers. As discussed below, a comparable class settlement was approved without these added provisions and with benefits far less significant than those afforded by this Settlement.

- The Court had inquired as to how the parties agreed upon the percentages contained in these two aforementioned added benefits. VWGoA's data has confirmed that engine damage seldom results from a failed water pump, and this relief is, therefore, not expected to be a significant component, either of potential damages in litigation or of the Settlement. *See* Graifman Decl., ¶10. The percentages of reimbursement for this

---

[1]   There is ***no*** $950 cap for work done under the warranty extension going forward as that work will be done by VW/Audi authorized dealers free of charge within the warranty extension period. The use of a cap for reimbursement of past work done by independent service centers ("ISCs") allows Defendant to maintain some oversight and control of the cost of repair and insure that the charges by ISCs are not fraudulent or otherwise out of the norm. This is a standard provision in most judicially approved auto defect class action settlements.

infrequent occurrence are fair and reasonable. They are the product of compromise between the parties resulting from substantial arm's length negotiations that sought to take into account the panoply of factors to be considered in fashioning a fair and balanced benefit, including the manner of use/driving of the vehicle and its effects on the life and condition of the engine, whether the engine was properly maintained in accordance with proper maintenance intervals, whether the engine was subjected to stresses and/or damage from external, outside or environmental causes, and the age, mileage and "wear and tear" of the engine at the time of alleged failure – all of which may affect the engine's condition at the time of, and contribute to, engine damage that allegedly occurred. The negotiated percentages further take into account the amount of time and mileage in which the class members were able to use, enjoy and benefit from their vehicles prior to the alleged damage. The percentages were, therefore, the product of compromise of disputed claims, based on many factors, and are beneficial to the Settlement Class.

- **The Comparator Settlement Demonstrates the Fairness and Adequacy of this Settlement**. The parties have located one other class action settlement involving failed water pumps. *See Herremans v. BMW of N.A.*, LLC, CV 14-2363-GW(PJWX) (C.D. Cal.). Virtually every aspect of the proposed Settlement herein provides greater benefits to the class than the settlement that was approved in *Herremans*.

  o In *Herremans*, the Court gave final approval to a nationwide settlement providing one hundred percent reimbursement for class members only for pre-Notice repairs that occurred up to a period of *seven (7) years or 84,000 miles* (whichever occurs first), and up to a *maximum reimbursement amount of $500.00* regardless of whether the repair was performed by an authorized dealer or an independent repair shop. (*See Herremans* Final Approval, ECF Doc. No. 75, a copy of which is annexed to the Graifman Decl. as Exh. C). Here, the within Settlement, by comparison, provides reimbursement for pre-Notice Date class vehicle engine water pump repairs/replacement that occurred during a

period of ten (10) years or 100,000 miles (whichever occurred first). In and of itself, the one hundred percent reimbursement for past repairs in this case is for 8 years or 80,000 miles – one (1) year or 10,000 miles longer than *Herremans*, and without any maximum reimbursement cap if the repair was performed by an authorized VW or Audi dealer. In addition, with respect to water pump repairs/replacements performed by an independent repair shop, the reimbursement cap of $950.00 in this case is almost double the amount that was approved in *Herremans*.

- o The settlement approved in *Herremans* also provided for a much shorter extended warranty for the water pump of seven (7) years or 84,000 miles (whichever comes first), in sharp contrast to the extended warranty in this Settlement of up to ten (10) years or 100,000 miles (whichever occurs first).

- o In addition, unlike the Settlement in this case, the approved *Herremans* settlement does not provide for any reimbursement for engine damage caused by a water pump failure, nor did it include any percentage of coverage for such engine damage in its extended warranty.

- **Revisions to the Release Language**. The release language in the Settlement Agreement has been amended to address the concern of the Court raised at the February 7, 2019 hearing. The release language (Settlement Agreement at Art. I, Sec. O, p. 6) clearly spells out the type and nature of the claims released, and is conspicuously limited in scope to claims/potential claims that relate to or arise from the primary engine water pump of Settlement Class Vehicles. This is standard release language of a settlement agreement and does not exceed the scope of the claims that were or could have been asserted in this putative nationwide class action.

- **Robust Class Notice Plan.** Working with Claims/Notice Administrator, Epiq Global, the parties have created an extremely robust Class Notice Program. This program successfully addresses Your Honor's comments and provides for class notice in several different ways:

   o <u>Individual direct mail notice – Within 100 days of the entry of the Preliminary Approval Order, direct mail notice will be sent to the Settlement Class Members</u> at current or last known addresses that are obtained and aggregated by IHS Markit/Polk ("Polk") from the records of the DMVs in all 50 states, as done with a formal recall notice. Prior to mailing the Class Notice, an address search through the United States Postal Service's National Change of Address database will be conducted to update the address information for Settlement Class Vehicle owners and lessees. For each individual Class Notice that is returned as undeliverable, the Claim Administrator shall re-mail all Class Notices where a forwarding address has been provided. For the remaining undeliverable notice packets where no forwarding address is provided, the Claim Administrator shall perform an advanced address search (e.g. a skip trace) and re-mail any undeliverable to the extent any new and current addresses are located.

   o <u>Email Notice</u> – As a supplement to the Direct Mail Notice, email notice will be provided to all Settlement Class Members for whom a facially valid email address is available from Polk. The Email Notice content will be substantially the same as the mailed notice, and will use an embedded html text format that will provide easy to read text without certain graphics and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. Each Email Notice will be transmitted with a unique message identifier. For any Email Notice for which a bounce code is received indicating that the message was undeliverable, at least one additional attempt will be made to deliver the Notice by email. In addition, the Email Notice will include an embedded link to the case website which will provide recipients with easy access to copies of the mailed notice, the Settlement Agreement, the online Claim Form, and other information about the Settlement. *See* Azari Decl., ¶¶ 19-20.

- o  <u>Social Media Banner Notices</u> – As an additional Notice, there will be Social Media Banner Notices, which run online banner notice ads about the Settlement on *Facebook* and *Instagram*, the two largest social media outlets in the world, targeting owners/lessees of Volkswagen and Audi vehicles and persons interested in Volkswagen and Audi. The banner notice ads will also allow users to identify themselves as potential Settlement Class members and directly link them to the Settlement Website for more information. *Id.*, ¶¶ 21-22.
- o  <u>Sponsored Search Listings</u> – In addition, there will be Sponsored Search Listings acquired on the three most highly-visited Internet search engines, *Google*, *Yahoo!* and *Bing*, to facilitate class members locating the Settlement Website through the use of various search terms. As a result of the sponsored listing, the Settlement Website will appear at the top of the page of any related search results. *See Id.*, ¶23.
- o  Based on prior automotive settlements, the Claims/Notice Administrator expects to successfully "deliver individual notice to over 90-95% of the Settlement Class," *Id.*, ¶27, an extraordinary percentage for any class settlement.
- **Informational Settlement Website**. The Claims/Notice Administrator will also maintain an informational Settlement Website that includes the relevant documents in the case including the Settlement Agreement, Class Notices, Claim Forms, "Frequently Asked Questions," applicable Orders and deadlines, and a toll-free number to contact the Claim Administrator with any questions. The Settlement Website will also include a portal or portals allowing class members to file a claim online, object[2] or opt out, and

---

[2]  At the February 7, 2019 hearing, the Court expressed its desire to permit Settlement Class Members to file objections with the Settlement Administrator online via the Settlement Website. Although counsel has added that to the within motion and draft proposed class notices, counsel anticipate a potential problem with such a procedure because objections are formal pleadings which seek to put before the Court a challenge to one or more aspects of the settlement, and which should be mailed to or filed directly with the Court by the class member. Indeed, the Northern District Procedural Guidance for Class Action Settlements, at §5, states that "the notice should instruct class members who wish to object to the settlement to send their written objections **only**

will include information instructing class member how and when to file a claim, opt out or object, if they so choose.

- **<u>Revised Deadlines for Opting Out/Objections</u>**. The opt out and objection deadlines are now set at sixty (60) days after the filing of the motion for attorney fees. *See* Graifman Decl. Exh. B. (setting forth the proposed schedule for notice and submissions through the final approval hearing process (the "Proposed Schedule")). There is no language concerning discovery concerning objectors or sanctions in the notice.

Pursuant to Federal Rule of Civil 23, Plaintiffs now file this renewed Motion for Preliminary Approval, so that: (i) notice of the proposed Settlement can be disseminated to the Settlement Class Members; (ii) the Settlement Class Members can be given an opportunity to avail themselves of the Settlement, opt-out of the Settlement Class, or file any objections to the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(1) (directing that any notice of class action settlement may only be disseminated with prior court approval); *see also Jaffe v. Morgan Stanley*

---

**to the court**…" (emphasis added). Although the N.D. Guidance does not govern over the Court's directives, counsel respectfully believe having objections sent to or filed directly with the Court, rather than the Settlement Administrator, alleviates any potential jurisdictional or procedural problems, and is the better and more appropriate practice that Your Honor, and other courts, have followed in the past. *See, e.g., Huntsman v. Southwest Airlines, Co.*, 2018 U.S. Dist. LEXIS 207009, *12-13 (N.D. Cal. Dec. 5, 2018) (Donato, J.) (objections to "be submitted to the Court either by mailing the comment or objection to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California"); *Brickman v. Fitbit, Inc*., 15-cv-02077, Dkt. No. 275 (N.D. Cal. Dec. 17, 2018) (Donato, J.) (granting preliminary approval of settlement and approving settlement notices stating "In order to be effective, Notice of Intent to Object must be filed with the Court by June 16, 2019, and copies sent to" the attorneys. …"); *Miranda v. Coach, Inc.*, 14-cv-02031, Dkt. No. 79 (N.D. Cal. June 22, 2016) (Donato, J.) (requiring preliminary approval motion to be revised, in part, because "objections should be sent directly to the Court" and not merely to the Settlement Administrator). *See also Gaudin v. Saxon Mortgage Serv.,* Inc., 2015 U.S. Dist. LEXIS 95720 (N.D. Cal. July 21, 2015) (While preliminary approval papers provided that objections should be sent to the settlement administrator, Judge Tigar, in granting preliminary approval, wrote that he "will approve the class notice subject to the following alterations: Any objections to the settlement should only be mailed to the court…[which] will file the objections on the Court's electronic filing system. As currently worded, the long-form notice requires objections to be sent to the settlement claims administrator, which is unnecessary, as electronic filing of an objection on the case docket constitutes service on the parties").

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND SECOND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MPA                    Case No. 17-cv-01825-JD

- 8 -

1   *& Co., Inc.*, No. C 06-3903 THE, 2008 WL 346417, at*11 (N.D. Cal. Feb. 7, 2008) (Henderson,

2   J.) (once court grants preliminary approval it is  proper to stay and enjoin members of settlement

3   class from litigating before this or other courts matters covered by proposed settlement).

4         This Unopposed Motion for preliminary approval also seeks to set the date for the Final

5   Approval and Fairness Hearing on the proposed Settlement. *See* Settlement Agreement, ¶ IX(A).

6   For the Court's convenience, annexed as Exhibit B to the Graifman Decl. is a Proposed Schedule

7   which provides for the calculation of relevant future dates, including the Notice Date, date for

8   filing papers in support of settlement and Class Counsel's application in support of fee application,

9   the deadline for objections and opt outs, and the settling parties' date to file responsive papers to

10   any objections to the Settlement. The Proposed Schedule is based on the pertinent dates

11   contemplated in the Settlement Agreement.

12         Class Counsel respectfully submit that the Unopposed Motion should be granted. The

13   Settlement reached is fair, reasonable and adequate—it provides Class Members with substantial

14   benefits including a meaningful and significant warranty extension and generous reimbursement

15   for pre-notice repair costs, as explained in more detail below. *See* Settlement Agreement, ¶¶ II(A),

16   (B) and (C).

17         The proposed Settlement, therefore, provides meaningful redress for the claims and

18   allegations pled in the Amended Complaint (Dkt. 52). The gravamen of the Amended Complaint

19   is that VWGoA allegedly withheld material disclosures concerning the allegedly defective primary

20   engine water pump used in the following vehicles (hereinafter "Settlement Class Vehicle(s)"): (i)

21   certain 2008 through and including 2014 model year Audi motor vehicles equipped with the 2.0L

22   TSI or TFSI turbocharged engine; and (ii) certain 2008 through and including 2014 model year

23   Volkswagen motor vehicles equipped with the 2.0L TSI turbocharged engine.[3]   Settlement Class

24   ──────────────

[3] Because not every vehicle during these model years contained the water pump component at
25   issue, the Class Vehicles involve certain Vehicle Identification Numbers ("VIN" or "VIN's") and
     Class Members will readily be able to determine if their VIN is included in the Settlement. (Exh. 4
26   to Settlement Agreement lists the VIN's and the Class Vehicles (*see* Dkt. 64-4, 64-6 (submitted to
     the Court as an unredacted version of document sought to be sealed))). Exh. 4 was subject to the
27   pending Motion to Seal (Dkt. 64) which was granted by the Court on May 10, 2019, (Dkt. 74)
28   because it contains private and confidential information about Settlement Class members' vehicles
     which is protected from public disclosure by the laws of the United States and Germany. There are

Vehicles equipped with 2.0L EA888 TSI or TFSI turbocharged four cylinder multi-valve engines include, but are not limited to, engine codes CCTA, CAEB, CAED and CBFA (hereinafter "class engines" or "class engine").[4]

These claims are vigorously disputed. VWGoA maintains that the primary engine water pumps in the Settlement Class Vehicles are not defective; that no warranties (express or implied) or laws (statutory or common) have been violated; and that no wrongdoing has occurred in connection with the water pumps and the Settlement Class Vehicles.

The Settlement of this vigorously disputed action provides substantial benefits both for those Settlement Class Members whose vehicles have previously manifested a water pump failure and been repaired at their owners' expense (reimbursement), and for those Settlement Class Members whose vehicles experience a water pump failure more than 20-days following the date the class notice is mailed and within 10 years or 100,000 miles (whichever occurs first) from the vehicle's In-Service Date ("Warranty Extension").

The proposed Settlement contains reimbursement provisions whereby, subject to said proof of adherence and proper documentation, including proof of repair and payment of expenses, those Settlement Class Members who, prior to 20-days after the Notice Date, and within 100,000 miles or 10 years of the In-Service Date of the vehicle (whichever came first), paid out-of-pocket expenses to repair or replace a failed primary engine water pump, can seek reimbursement for all or part of those expenses. Under the reimbursement portion of the Settlement, Class Members who have paid out-of-pocket for repair or replacement of a failed primary engine water pump within eight (8) years or 80,000 miles (whichever occurred first) from the vehicle's In-Service Date and prior to the Notice Date, will receive one hundred percent (100%) reimbursement of the paid invoice amount for the repair or replacement, subject to certain adjustments (*e.g.* for goodwill or

approximately 875,000 vehicles in the Settlement Class. A DVD with the confidential VIN data for approximately 875,000 Class members' vehicles was provided to the Court on September 13, 2018.

[4] Class Vehicles include certain model year Audi A3, A4, A5 and Q5, and certain model year Volkswagen CC, Beetle, EOS, Golf/GTI, Jetta, Passat, Sports Wagon and Tiguan, *inter alia*, that were distributed and warranted by VWGoA in the United States and Puerto Rico.

full/partial payments/reimbursements received by them under an insurance policy, some other extended warranty or service contract). *See* Settlement Agreement, ¶ II(B). Settlement Class Members who have paid out-of-pocket for repair or replacement of a failed primary engine water pump after eight (8) years or 80,000 miles (whichever occurred first) and up to ten (10) years or 100,000 miles (whichever occurred first) of the vehicle's In-Service Date and prior to the Notice Date, will receive seventy percent (70%) reimbursement of the paid invoice amount for the repair or replacement, subject to certain similar adjustments. *See* Settlement Agreement, ¶ II(B).

This reimbursement provision of the Settlement Agreement for failed water pumps applies regardless of whether the pre-Notice repair was made by an authorized VW or Audi dealership or at an Independent Service Center of the Settlement Class Member's choice. *Id*., ¶ II(B)(1)(c) (if made at an independent service center and not an authorized dealer, the amount for such reimbursement is capped at $950.00 if it is subject to the 100% reimbursement, and 70% of that amount if subject to the 70% reimbursement). Based upon information informally exchanged in this case, the $950.00 cap exceeds the average U.S. cost (parts and labor) for the repair/replacement of a failed water pump at VW and Audi dealerships. In fact, it represents the highest average cost by dealerships in any state in the U.S., which is the state of California (See Decl. of Gary Graifman). The cap is, therefore, very liberal, fair and reasonable. Notably, this cap is substantially higher than, and indeed almost double the amount of, the similar cap that was approved in the *Herremans* case, discussed *supra*.

In addition, if, within 10 years or 100,000 miles (whichever occurred first) of the vehicle's In-Service Date and prior to the Notice Date, a Settlement Class Member paid for the cost of repair/replacement of a damaged engine that was caused directly by the failure of the water pump, he/she will be entitled to a percentage of reimbursement of the out-of-pocket expenses paid for such engine repair or replacement pursuant to the following sliding scale schedule based upon the age and mileage of the vehicle at the time or repair (the "Schedule"):

///

///

///

| Time from in-service date | Less than 50,000 miles | 50,001 to 60,000 miles | 60,001-70,000 miles | 70,001-80,000 miles | 80,001 to 100,000 miles |
|---|---|---|---|---|---|
| 4 years or less | 100%[5] | 70% | 50% | 40% | 25% |
| 4-5 years[6] | 70% | 50% | 40% | 30% | 20% |
| 5-6 years | 50% | 40% | 35% | 25% | 15% |
| 6-7 years | 40% | 30% | 25% | 20% | 10% |
| 7-8 years | 30% | 25% | 20% | 15% | 10% |
| 8-10 years | 25% | 20% | 15% | 10% | 5% |

The Settlement provides a cap of $4,000 for such reimbursement if the engine was repaired or replaced by an independent service center rather than an authorized VW or Audi dealer. The $4,000.00 cap amount is substantially higher than the average cost of repair or replacement, by authorized VW/Audi dealers, of engine damage attributable to a failed water pump. In fact, VW's data reflects that the cost of more than 99% of all water pump related dealer repairs, including repairs of engine damage directly caused by a failed water pump, is $2,000 or less. *See* Graifman Decl., ¶ 10; Settlement Agreement, Section II.C.

The Settlement also provides a generous and substantial Warranty Extension relating to the Settlement Class Vehicles' water pumps. Under the Warranty Extension, and subject to proof of adherence to the vehicle's maintenance schedule relating to the coolant system, Defendant

---

[5] Covered under original vehicle powertrain warranty terms.

[6] For VW Settlement Class Vehicles in which the New Vehicle Limited Warranty period is 5 years or 60,000 miles (whichever occurs first) from the In-Service Date, the reimbursement percentage shall be one hundred percent (100%) for unreimbursed out-of-pocket expenses incurred within 5 years or 60,000 miles (whichever occurs first) warranty period, but not exceeding the maximum reimbursement amount of $4,000.00 if the repair/replacement was performed by an independent service center and not an authorized VW dealer.

VWGoA will extend the New Vehicle Limited Warranties ("NVLW") applicable to the Settlement Class Vehicles to cover repair or replacement of a failed primary engine water pump, by an authorized Volkswagen or Audi dealer, for a period of 10 years or 100,000 miles (whichever occurs first) from the vehicle's In-Service Date, subject to certain terms and conditions (the "Extended Warranty"). *Id*. This Warranty Extension almost doubles the 5 years or 60,000 miles (whichever occurs first) durational limits of VWGoA's original NVLW applicable to the subject water pumps.

In addition, for those Settlement Class Members whose water pumps fail after the Notice Date and during the Settlement's Warranty Extension period, if there is engine damage that is caused directly by the failure of the water pump, the Warranty Extension also provides for coverage of a percentage of the cost of the engine repair or replacement, by an authorized VW or Audi dealer, based upon the same sliding scale percentage Schedule set forth above in the section for reimbursement for past failures. *See* Settlement Agreement, Section II.A.

The Court also inquired at the February 7th hearing as to how the percentages in connection with reimbursement for directly-related engine damage were derived. This was not a necessary part of the Settlement relief; indeed, it was not even offered in *Herremans,* in which a class settlement that involved an allegedly defective water pump was approved. This was added to this Settlement to afford an extra benefit for VW and Audi customers over and above the other substantial benefits that, standing alone, are fair, reasonable, adequate and worthy of approval. Engine damage seldom results from a failed water pump, and this relief is, therefore, not expected to be a significant component, either of potential damages in litigation or of the Settlement. The percentages of reimbursement for this infrequent occurrence are very fair and reasonable. They are the product of substantial arm's length negotiations of disputed claims that take into account Defendant's position throughout this litigation and negotiation that there are factors such as driving habits, use of the vehicle, maintenance of the engine and its components, any unrelated damage to the engine by any source, as well as the age, mileage and "wear and tear" of the engine at the time of the alleged damage - - all of which affects the engine's condition, the amount of use the class member has obtained from the engine prior to the damage, and the value of what is being

1  replaced. The percentages for this aspect of the Settlement are a reasonable arm's length

2  compromise of disputed claims, factor in many differing issues, and offer a substantial added

3  benefit to the Settlement.

4       Notably, the overall settlement consideration is not subject to any aggregate monetary cap.

5  In addition to the foregoing substantive relief, under the Settlement Agreement, VWGoA will bear

6  the cost of the class notice, claims administration, and approved reasonable attorneys' fees and

7  expenses. *Id.*, ¶¶ IV(A) and (B). By any objective standard, the Settlement warrants preliminary

8  approval. Indeed, such automotive classwide settlements that have provided a cash reimbursement

9  or prospective warranty extension option have been granted final approval by California federal

10  courts. *See Herremans v. BMW of N.A., LLC, supra* (granting final approval to a nationwide class

11  settlement which extended the manufacturer's warranty for failed water pumps to seven years or

12  84,000 miles, whichever occurred first); *see also Sadowska v. Volkswagen Group of America, Inc.*,

13  No. CV 11-665, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013) (granting final approval to

14  nationwide class settlement that called for defendant car manufacturer to extend warranty to lesser

15  of 10 years or 100,000 miles and offer reimbursement for repairs already undertaken); *Browne v.*

16  *American Honda Motor Co.*, Case No. CV 09-06750 MMM (DTBx), 2010 WL 9499072, at *4

17  (C.D. Cal. Jul. 29, 2010) (granting final approval to nationwide class settlement that provided

18  coverage for future brake repairs for a period of up to three years or a reimbursement option

19  covering up to 50 percent of repair costs already undertaken).

20       The revised Class Notice program for the proposed Settlement fully complies with Rule 23

21  and due process concerns, as it fully advises Settlement Class Members of their rights under the

22  Settlement. It is very robust, and in response to the Court's comments, the revised Settlement

23  Notice Plan provides that class notice is to be disseminated not only through individual notice

24  through the United States mail, (still the "gold standard" of Notice), but also through email notice,

25  social media notice, and sponsored search listings. *See* Azari Decl.; *see also* Exh. 5 to Settlement

26  Agreement (proposed form of Notice); Settlement Agreement, ¶¶ V(b)(1), (2) and (3).

27  Additionally, the Settlement Agreement also calls for the dissemination of the Notice on a

28

1  Settlement website. *See* Settlement Agreement, ¶ V(b)(6) (calling for publication of a settlement
2  website containing copies of the Class Notice).

3  The revised Settlement also incorporates the Court's directive that Class Members will
4  have sixty (60) days from the filing of the motion for an award of attorneys' fees and expenses to
5  file Requests for Exclusion to the Settlement or Objections to the Settlement, and may do so by
6  various methods such as by mail or filing with the Claim Administrator through a portal in the
7  Settlement Website, as clearly indicated in the Notice.[7]  The language suggested by the Northern
8  District of California Procedural Guidance for Class Action Settlements ("N.D. Proc. Guidance")
9  has been incorporated into the Settlement Notice to be disseminated.

10  Certification of a Settlement Class for settlement purposes only, also merits preliminary
11  approval. Here, the Settlement Class definition closely tracks the putative class definition alleged
12  in the Amended Complaint. *Compare* Settlement Agreement, ¶ I(Q) (Settlement Class definition)
13  *with* Amended Complaint, ¶ 14 (putative class defined in complaint). As detailed below, Plaintiffs
14  meet the Rule 23 criteria for conditional certification of the Settlement Class for settlement
15  purposes only.

16  **Recent Procedural History**

17  The initial Motion for Preliminary Approval of the Settlement was filed pursuant to the
18  Court's scheduling order on September 11, 2018, and the Preliminary Approval Hearing was
19  scheduled for October 25, 2018. *See* Dkt. 65, *et seq.* Thereafter, on October 22, 2018, the parties,
20  on their own accord, entered into an Amended Settlement Agreement that added an additional
21  settlement benefit. *See* Dkt. 66-2. On October 23, 2018, the parties filed a Stipulation Requesting
22  Revised Preliminary Approval Order Based Upon Amended Settlement Agreement. *See* Dkt. 66,
23  *et seq*. Thereafter, on October 24, 2018 (Dkt. 68), the Court vacated the hearing set for October
24  25, 2018, and ordered the parties to resubmit the motion and follow the Northern District of
25  California Procedural Guidance for Class Action Settlements, which were expected to be

26  ---
27  [7] As discussed *supra*, the parties respectfully request that the Court reconsider its initial desire to permit objections to be filed with the Claim Administrator online via the settlement website, and
28  direct that any objections be mailed to, or filed directly with, the Court by Settlement Class Members.

1    promulgated shortly thereafter, and which, in fact, were posted on the Court's website on

2    November 2, 2018. *See* Dkt. 68; *see also* N.D. Proc. Guidance.

3         Plaintiffs filed the revised preliminary approval motion on December 7, 2018 (Dkt. 69, *et*

4    *seq.*), which the Court set for hearing (pursuant to the parties' request) on February 7, 2019. *See*

5    Dkt. 70. At the February 7th hearing, the Court indicated that the settlement was nearly ready for

6    approval, but would need certain specified revisions and explanations, and laid out the roadmap

7    for preliminary approval. Counsel have followed that roadmap and now respectfully resubmit the

8    Settlement for Preliminary Approval. In addition, the parties have revised the Settlement

9    Agreement to conform to the Court's concerns and suggestions, revised the Class Notices to

10   incorporate them, as well as language from the N.D. Proc. Guidance, and revised the Notice Plan

11   for Notice to the Class. In addition, the information requested in the N.D. Proc. Guidance is set

12   forth herein below at Point III.

13   **II.    PRELIMINARY APPROVAL SHOULD BE GRANTED**

14        **A.    The Settlement Class Should Be Conditionally Certified**

15        This is a putative class action, and as such, the proposed Settlement Agreement calls for

16   certification of a Settlement Class for settlement purposes only. *See* Settlement Agreement, ¶ 1(Q)

17   (defining Settlement Class). The use of such settlement classes is common and proper in the

18   resolution of class action litigation. *See, e.g., Gribble v. Cool Transports, Inc.*, Case No. CV 06-

19   04863 GAF (SHx), 2008 WL 5281665, at * 3, (C.D. Cal. Dec. 15, 2008) (approving settlement

20   class as part of final approval of class action settlement); *In re Connecticut General Life Ins. Co.*,

21   No. Civ. S-07-0819 RRB EFB, 1997 WL 910387, at *1 ¶ 2 (C.D. Cal. Feb. 13, 1997) (certifying

22   "for purposes of settlement, the Settlement Class defined in Section II and Exhibit E of the

23   Settlement Agreement"); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust*

24   *Litig.*, No. MDL 150, 1993 WL 39306, at *2 (C.D. Cal. Jan. 12, 1993) (granting preliminary

25   approval and certifying "for purposes of this settlement only, Temporary Settlement Classes as

26   defined in the Settlement Agreement.").

27        Here, subject to certain exclusions, the Settlement Class is defined as: "All persons and

28   entities who purchased or leased a Settlement Class Vehicle, as defined in Section I (R) of this

1  Agreement, in the United States of America and Puerto Rico." Settlement Agreement, ¶ I(Q). The

2  Settlement Class definition sets forth an identifiable class, and generally tracks the putative class

3  definition originally pled in the Amended Complaint. *See* Amended Complaint, ¶¶ 1-2 (alleging

4  class definition).

5            **1.       The Settlement Class Satisfies The Numerosity Requirement.**

6        Rule 23 (a)(1) requires that "the class [be] so numerous that joinder of all members is

7  impracticable." Fed. R. Civ. P. 23 (a)(1). This action meets that requirement. Material obtained by

8  Plaintiffs' counsel during discovery in this action confirms that approximately 875,000 Settlement

9  Class Vehicles were distributed by VWGoA within the United States and Puerto Rico.

10 Unquestionably, this more than satisfies the numerosity requirement for class certification. *See*

11 *Lowdermilk v. United States Bank National Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007) (numerosity

12 criteria satisfied by plaintiff's mere allegation that class size "exceeds 30 persons.").

13           **2.       The Settlement Class Satisfies The Commonality Requirement.**

14       Rule 23 (a)(2) requires that "there [be] questions of law or fact common to the class." Fed.

15 R. Civ. P. 23 (a)(2). "To establish commonality, '[t]he existence of shared legal issues with

16 divergent factual predicates is sufficient, as is a common core of salient facts coupled with

17 disparate legal remedies.'" *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (*quoting*

18 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Here, commonality is met. The

19 claims of the putative Class Members arise from the same allegations in the Amended Complaint,

20 namely, does there exist a defect in the Settlement Class Vehicles' primary engine water pump?

21       Further, the Settlement Class also shares this commonality requirement in that all

22 Settlement Class Members whose vehicles experience the manifestation of the alleged common

23 defect (engine water pump failure) are entitled to relief if their claim meets the requirements of the

24 Settlement. This is because a key provision of the Settlement Agreement permits eligible members

25 to obtain reimbursement from VWGoA for certain out-of-pocket costs previously incurred by the

26 Settlement Class Member in having to repair/replace the original primary engine water pump

27 within the time and mileage parameters of the Settlement. *See* Settlement Agreement, ¶¶ II(B) and

28 (C) (detailing settlement consideration).

1

### 3.     The Settlement Class Satisfies The Typicality Requirement.

2    Rule 23 (a)(3) requires that "the claims or defenses of the representative parties are typical

3    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality prerequisite of

4    Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the

5    claims or defenses of the class.'" *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D.

6    Cal. 2005) (quoting *Hanlon*, 150 F.3d at 1020). "[R]epresentative claims are 'typical' if they are

7    reasonably co-extensive with those of absent class members; they need not be substantially

8    identical." *Hanlon*, 150 F.3d at 1020. The typicality criteria are satisfied in this case. Plaintiffs

9    Gregory Coffeng, Mark Glaser, and Jordan Wilson own class vehicles equipped with primary

10   water pumps alleged in the Amended Complaint and experienced a manifestation of the alleged

11   defect that required repairs at costs that varied among the Plaintiffs. *See* Amended Complaint, ¶¶

12   10-12. Because Plaintiffs are members of the proposed Settlement Class, and assert the same

13   causes of action on behalf of themselves and all absent class members, their claims are typical.

14

### 4.     The Class Representatives Satisfy The Adequacy Requirement.

15   Rule 23 (a)(4) requires that "the representative parties will fairly and adequately protect the

16   interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal

17   adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

18   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

19   on behalf of the class?" *Hanlon*, 150 F.3d at 1020. There are no conflicts of interest that exist here.

20   Plaintiffs seek the same remedy as all class members; namely, relief to address the claim that the

21   vehicle has manifested or is unduly prone to manifest a failure of the primary engine water pump.

22   Plaintiffs' interests are fully aligned with the interests of the Settlement Class members.

23   Counsel for Plaintiffs are highly experienced in class action litigation, and have been

24   involved in many class actions and settlements. *See* Exhibits D-F to the Graifman Decl. (resumes

25   of class counsels' law firms).[8]   Their track record in this action before this Court evidences their

26   adequacy to serve as Class counsel.

27
---
[8] Exhibit D to the Graifman Decl. is the firm resume of Kantrowitz, Goldhamer & Graifman, P.C.;
28   Exhibit E is the firm resume of Thomas P. Sobran, P.C.; and Exhibit F is the firm resume of Stull,
Stull & Brody.

1          **5.      The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b).**

2          In addition to meeting all the class certification requirements enumerated in Rule 23(a), a

3    movant must also satisfy at least one of the requirements of Rule 23(b). *See Zinser v. Accufix*

4    *Research Int., Inc.* 253 F.3d 1180, 1886*, amended* 273 F.3d 1266 (9th Cir. 2001). Here, the

5    Settlement provides monetary relief, and the criteria set forth in Rule 23(b)(3) is pertinent. This

6    section provides that class certification is appropriate if the criteria of Rule 23(a) are met, and if:

7                    [T]he court finds that the questions of law or fact common to class
                     members predominate over any questions affecting only individual
8                    members, and that a class action is superior to other available
                     methods for fairly and efficiently adjudicating the controversy.
9

10   Fed. R. Civ. P. 23(b)(3).

11         The "predominance" and "superiority" requirements of Rule 23(b)(3) are readily satisfied

12   in this case. "To establish predominance of common issues, a party seeking class certification is

13   not required to show that the legal and factual issues raised by the claims of each class member are

14   identical. Rather, the predominance inquiry focuses on whether the proposed class is 'sufficiently

15   cohesive to warrant adjudication by representation.'" *Friedman v. 24 Hour Fitness USA Inc.*, CV

16   06-6282 AHM (CTx), 2009 WL 2410889, at *6 (C.D. Cal. Aug. 6, 2009) (*quoting Local Joint*

17   *Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162

18   (9th Cir. 2001)). Here, this cohesiveness assuredly exists because the overarching inquiry and

19   interest of all putative class members is whether the members of the Settlement Class are entitled

20   to relief from VWGoA for an alleged defect in the primary engine water pump present in their

21   particular Settlement Class Vehicle. This evidence and proof as to the existence of a legally

22   cognizable claim to obtain such relief, therefore, would predominate over any individual issues in

23   adjudicating this case.

24         Similarly, the "superiority" requirement of Rule 23(b)(3) is also satisfied in this case. In

25   determining the superiority of a class action, courts consider the following four factors: (1) the

26   class members' interests in individually prosecuting separate actions; (2) whether any litigation

27   concerning the controversy has already been brought by class members; (3) the desirability of

28   concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in

managing a class action.[9] *See* Fed. R. Civ. P. 23(b)(3)(a)-(d). Here, those factors clearly militate in favor of class certification. Although the cost of repairing or replacing a failed primary engine water pump could be significant, the cost of individually litigating such a case against VWGoA would easily exceed the cost of any relief that could be obtained by any lone owner or lessee. This, alone, warrants a finding that a class action is a superior method of adjudication. *See Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009) (Selna, J.) (granting motion for class certification and noting that "[t]his superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution."); *Baghdasarian v. Amazon.com, Inc.*, Case No. CV 05-8060 AG (CTx), 2009 WL 2263581, at *7 (C.D. Cal., Jul. 7, 2009) (the superiority inquiry is geared to address "the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Since the proposed Settlement Class meets the applicable requirements for certification under Federal Rule of Civil Procedure 23, the proposed Settlement Class should be conditionally certified for purposes of settlement. At the Fairness Hearing, the Court will have further opportunity to revisit this conditional certification in deciding whether to grant Final Approval to the Settlement Agreement and certification of the Settlement Class.

### B.     The Notice Plan Should Be Approved.

Rule 23 and due process concerns require notice to be provided to absent class members in order to inform them of the proposed Settlement, and grant them the opportunity to opt-out or object. *See* Fed. R. Civ. P. 23(c)(2). The notice and means of disseminating it must be the "best notice practicable" under the circumstances. *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950). As set forth above and in the Azari Decl., the parties propose to disseminate the notice of the proposed Class Action Settlement ("Notice") though a robust program. That includes Notice by several independent and effective means: (i) Notice sent individually, by way of United States mail, to the current or last known addresses of the absent Class Members for which the Class

---

[9] Manageability is not a factor to assess in deciding whether the superiority requirement has been met in the class settlement context *Browning v. Yahoo! Inc.*, Case No. C04-01463 HRL, 2007 WL 4105971, at *9 (N.D. Cal. Nov. 16, 2007) (*citing Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997)).

1   Member's identity and address are reasonably ascertainable from the DMV records of all states

2   and industry-recognized databases (Settlement Agreement, ¶¶ V(b)(1)-(3) (setting forth Notice

3   Plan and notice terms under the Settlement Agreement));[10] (ii) Email notice to all Settlement Class

4   Members whose email addresses are reasonably available (Azari Decl., ¶¶ 19-20); (iii) Social

5   Media Notice whereby banner ad notices will appear online on *Facebook* and *Instagram*,

6   specifically targeted to Audi and Volkswagen owners (Azari Decl., ¶ 12, 21-22); and (iv)

7   "Sponsored Search Listings" (Azari Decl., ¶ 23). The Settlement Agreement also calls for the

8   Settlement Administrator to establish a Settlement Website that, among other things, will provide

9   additional Notice of the Settlement and will contain copies of the VW and Audi Class Notices as

10  well as the pertinent settlement documents, orders, deadlines, instructions on how to submit

11  claims, opt out or object to the Settlement, FAQs and answers, and other information. *See*

12  Settlement Agreement, ¶ V(b)(6). As discussed *supra*, this very robust Notice Program is expected

13  to reach 90-95% of the Settlement Class, an extraordinary percentage that more than satisfies any

14  reasonableness and due process considerations (Azari Decl., ¶ 27).

15      The proposed form of Notice complies with due process requirements, Rule 23, and the

16  Court's comments and concerns discussed at the last hearing. The form Notices for VW and Audi

17  Class Members are both attached as Exhibit 5 to the Settlement Agreement, and the Notices

18  inform absent Class Members as to the terms the Settlement, their right to avail themselves of

19  the Settlement, opt-out, or object, procedures to follow for submitting claims, opting out or

20  objecting to the Settlement, applicable deadlines, as well as the binding effect of the Settlement

21  upon Members of the Settlement Class who do not opt-out. *See* Exhibit 5 to Settlement

22  Agreement. The Notices also identify the Settlement Website, where the pertinent information is

---

23  [10] The Claims Administrator, Epiq Global, will use the same company, IHS Markit Polk, to

24  acquire the names and addresses of Settlement Class Vehicle owners and lessees that
    manufacturers use to aggregate data for recall notices mandated by NHTSA. *See* Settlement

25  Agreement, ¶ V(b)(2). Individual service of notice *via* U.S. mail has been held, as a matter of law,
    to satisfy the due process concerns and to meet the "best practicable notice" standard. *See In re*

26  *Laser Arms Corp. Securities Litig.*, 794 F. Supp. 475, 496 (S.D.N.Y. 1979) ("Therefore, the Court

27  finds that notice by first class mail is the 'best practicable notice.'"); *Peil v. National*
    *Semiconductor Corp.*, 86 F.R.D. 357, 375 (E.D. Pa. 1980) ("In the present case, the best notice

28  practicable would apparently be obtained by a first class mailing.").

1    also available, and provide contact information for the Claim Administrator in the event of any

2    questions. The form of Notice provides for 60-days for exclusions and objections to be filed, as

3    directed by the Court, and incorporates the suggested language from the N.D. Proc. Guidance for

4    opt outs and objections. The VW and Audi forms of Notice and the proposed plan of

5    dissemination should, therefore, also be approved.

6    **C.    The Substantive Terms of the Settlement Are Fair, Reasonable**
     **and Adequate, and Should Be Granted Preliminary Approval**

7

8        Preliminary approval should be granted because the Settlement terms are fair, reasonable

9    and adequate. Ultimately, the decision to grant preliminary approval to a settlement of a class

10   action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*,

11   2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007). In exercising that discretion the Court should bear

12   in mind that "there is an overriding public interest in settling and quieting litigation," and this is

13   "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9ᵗʰ

14   Cir. 1976). Recognizing that a settlement represents an exercise of judgment by the negotiating

15   parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit held

16   that "the court's intrusion upon what is otherwise a private consensual agreement negotiated

17   between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

18   judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

19   the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

20   to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

21       The general standard by which courts are guided when deciding whether to grant

22   preliminary approval to a class action settlement is whether the proposed settlement falls within

23   the range of what could be "fair, adequate, and reasonable," so that notice may be given to the

24   proposed class, and a hearing for final approval may be scheduled. *Class Plaintiffs v. Seattle*, 955

25   F.2d 1268, 1276 (9th Cir. 1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.

26   1982) (If the court finds that the proposed settlement is "within the range of possible approval"

27   and that notice should be given, "the next step is the fairness hearing.").

28

This proposed Settlement assuredly satisfies the foregoing criteria. The terms of the Settlement provide Settlement Class Members with substantial and meaningful benefits that address the issue alleged in the Amended Complaint. Each qualifying Settlement Class Member may be entitled to receive hundreds and potentially thousands of dollars to reimburse the cost of a covered repair. Eligible Settlement Class Members also are provided a Warranty Extension benefit for the primary engine water pump that almost doubles the time and mileage duration of the original VWGoA New Vehicle Limited Warranty with respect to the subject water pumps. Settlement Agreement, ¶ II(A). As noted above, this Settlement compares extremely favorably to the closest comparator, being a prior settlement involving failed motor vehicle engine water pumps, settled in the Central District of California.

By any measure, the Settlement terms are fair, adequate and reasonable. This is particularly true when considered in light of the uncertain prospects and risks faced by Plaintiffs and the putative class. This is an arm's length negotiation and resolution of a vigorously disputed claim. VWGoA maintains that the water pump is not defective and that no warranties or laws (statutory or common) have been violated. VWGoA vigorously denies any liability or wrongdoing, and intends to vigorously contest not only the ultimate liability and claim for damages, but also Plaintiffs' anticipated motion for class certification. Although Plaintiffs remained confident in the merits of their case, the results were not predictable with any degree of certainty. If class certification were not granted in the litigation, Class Members would have to seek redress in individual actions in which the amounts in controversy would be substantially less than the cost of prosecuting the actions. VWGoA also has the right to appeal any class certification or ultimate decision entered against it. An appeal to the Ninth Circuit would likely take an extended period of time to resolve, meaning ultimate relief to the class would likely be substantially delayed.

**D.     The Settlement Was the Product of Adversarial Arm's-Length Negotiation**

The fact that the discussions and negotiations leading up to the Settlement were conducted in vigorous and arm's-length fashion also serve as added indicia of the fairness of the settlement. The settlement negotiations commenced after the parties had exchanged meaningful informal

discovery and fully briefed and argued a Motion to Dismiss and, after the hearing on Defendants' Motion (*see* Dkt. 51), amendment of the Complaint (*see* Dkt. 52), and Plaintiffs' counsel consulted with automotive experts. These actions occurred prior to engaging in settlement talks. At the point of settlement discussions, each side had a *bona fide* basis on which to make an informed assessment of the value, strengths, and potential weaknesses of their respective case and defenses.

It is undeniable that the settlement negotiations here were non-collusive and adversarial in nature. The parties thoroughly engaged in extended negotiations during which several extensions of time were required. In addition, the parties agreed on the material terms of this Settlement prior to the onset of any discussions relating to reasonable attorney fees and expenses which counsel have only recently resolved, thus further attesting to the adversarial, *bona fide*, and arm's-length nature of the negotiations. *Id*.

Because the proposed Settlement amounts to a reasonable means of resolving this litigation, and because the risks, expense and delays of potential recovery inherent in continuing to litigate this matter are significant and uncertain, this proposed Settlement meets the standard for preliminary approval and should be preliminarily approved accordingly.

## III.   THE PARTIES HAVE INCORPORATED THE MATERIAL REQUESTED IN THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE

The following information is provided pursuant to the N.D. Proc. Guidance:

a)   The litigation class has not been certified and there is no difference between the Settlement Class and the class proposed in the operative Amended Complaint. N.D. Proc. Guidance, ¶ 1(a);

b)   The claims released in this matter are all claims that were or could have been brought in this putative nationwide class action and that relate to or arise from the primary engine water pump ("water pump") of the Settlement Class Vehicles. N.D. Proc. Guidance, ¶ 1(c). The Release specifically exempts any claims for personal injury or property damage other than damage to the vehicle itself resulting from the primary engine water pump;

c)      Class Counsel believe that the recovery under the Settlement would be parallel to and/or not materially less than that which could realistically be received in the case, although there is also the possibility of denial of class certification or a defense verdict after trial. As discussed in more detail above, this Settlement has substantial Extended Warranty and Reimbursement benefits that are clearly fair, reasonable and adequate, and, in fact, exceed the settlement benefits of the comparable water pump class action, discussed *supra,* that was approved by the Central District of California. N.D. Proc. Guidance, ¶ 1(e);

d)      The proposed Claim Forms (annexed as Exhibit 1 to the Amended Settlement Agreement) are clear, easily understandable, and will be disseminated with the Class Notice *via* First Class Mail directly to each of the identified Settlement Class Members. Class Notice will also be sent *via* email where available and will be made available through the social media and internet banner ad links to the Settlement Website. While the number or percentage of claims is difficult to know, a reasonable estimate based on other settlements and the calculated warranty rate, is expressed herein. The Settlement benefit here is substantial and provides an incentive to submit a claim if such expenses had been incurred. Counsel believe that a reasonable estimate of claims may be in the range of approximately 30,000 claims. N.D. Proc. Guidance, ¶ 1(g). Class Counsel bases that opinion on the claims history in another case involving many of the same vehicles as the Class Vehicles herein (albeit different components), *In re Volkswagen Timing Chain Products Liability Litig,* Civil Action No. 16-cv-2765 (JLL) (D.N.J.) ("*In re Volkswagen Timing Chain Litig.*") (pending final approval).[11]   The estimated claims in that matter, which has approximately half the number of vehicles of the within matter, supports such an estimate. N.D. Proc. Guidance, ¶ 1(g). In addition, the warranty rate herein, based on discovery, was approximately 10% over an 8 year period. If calculated for a 6 year period instead of 8, that rate, adjusted to 7.5% for the reduction in years, would exceed this conservative estimate of 30,000 claims for reimbursement (based on over 800,000 Class Vehicles) by a significant amount. Class

---

[11]   *In re Volkswagen Timing Chain Litig.* encompassed approximately 477,000 class vehicles. This class action includes approximately 875,000 class vehicles, a portion of which subsumes the same vehicles as *In re Volkswagen Timing Chain Litig.*

Counsel believes their estimate is also supported by another nationwide class action settlement that Class Counsel was directly involved in as co-lead counsel and which also involved overseeing the post-approval claims process. *See In Re Nissan AT Transmission Cooler Defect Litigation*, 10-cv-7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (opinion on motion for final approval) ("*In re Nissan AT Cooler*". There were approximately 17,000 claims received for reimbursement in that claims administration process. A substantial number of Nissan class members also received the additional benefit of future repair work done under the extended warranty (in addition to the reimbursement for past repairs). The within action has an Extended Warranty to 100,000 miles or 10 years (whichever occurs first) and, based on counsel's previous experience in other cases, such as *In re Nissan AT Cooler*, the *future* repairs which will be made under the Warranty Extension will add an additional future group that benefits from the Settlement that is equal to one half of the reimbursement claims for past repairs, thus, adding another approximately 15,000 class members (to the 30,000 or so seeking past reimbursement) who would benefit. N.D. Proc. Guidance, ¶ 1(g).

e)       There is no settlement fund, and no cap on the recovery for the Class. Reimbursements will be made on a claims-made basis to Class Members who submit qualified claims in this action. There is no reversion or *cy pres* involved in this Settlement. N.D. Proc. Guidance, ¶¶ 1(h) & 8.

f)       The proposed Settlement Administrator is Epic Global. N.D. Proc. Guidance, ¶ 2. Epic Global is one of the premier Settlement Administration companies in the U.S., with years of experience and recognized excellence in numerous approved class action settlements. Moreover, Epiq Global was the judicially approved Settlement Claims Administrator in *In re Volkswagen Timing Chain Litig.* (concerning many of the same vehicles as the Class Vehicles herein), and has extensive experience working with IHS Markit Polk. Class Counsel and defense counsel have agreed that Epic Global would be the most appropriate Claims Administrator for use in this case. Utilizing the same Claims Administer in this case as in the previous case involving VWGoA (and a large portion of the same Settlement Class Vehicles) will result in substantial efficiencies. The cost of claims administration will be borne by Defendant and will not affect the recovery to any

1  Settlement Class Member. Therefore, the Court need not approve such costs; however, if the Court

2  deems that necessary, the parties understand that this will not occur until the Final Approval

3  Hearing. N.D. Proc. Guidance, ¶ 2.

4        g)     The content of the Class Notice in this action is easily understandable and

5  straightforward and conforms with the Class Notice approved by the U.S. District Court in prior

6  cases, including *In re Volkswagen Timing Chain Litig.,* in which Epiq Global disseminated a

7  similar notice. N.D. Proc. Guidance, ¶ 3. The Class Notice in this case, as set forth above, includes

8  verbatim the language suggested in the N.D. Proc. Guidance, ¶ 3, and incorporates the comments

9  and concerns that this Court articulated at the February 7, 2019 hearing. Further explanation of the

10  notice program is set forth, *supra,* at § II.B at 20-22.

11        h)     The parties understand that the Court will not consider or approve the request for

12  attorney fees until the Final Approval Hearing and Class Counsel will include their fee request in

13  the Motion for Final Approval. However, the parties can now report that they have reached

14  agreement on Class Counsel's request for attorneys' fees and expenses. The parties had not

15  discussed the issue of attorney fees prior to agreement on the material terms of this Settlement

16  and, as the Court may recall, had not reached agreement even at the time of the February 7, 2019

17  hearing before the Court. They have only reached agreement on the issue recently, after continued

18  negotiations. The agreed-upon total combined limit amount for Class Counsel fees and expenses

19  in this action is two million four hundred thousand dollars ($2,400,000), and that sum will be set

20  forth in the Class Notice. Class Counsel respectfully submit that while it would be premature to set

21  forth the current lodestar at this time, as this matter was placed on an early settlement track, and

22  the work of Class Counsel is continuing and will undoubtedly increase in the future, Class

23  Counsel report a combined current lodestar of $799,477.25 and expenses of $18,652.25.[12] Class

---

24  [12]   *See Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1029-30 (9th Cir.1998) recognizing that counsel
25  should be entitled to payment for the future work required of them ("Class counsel presented
   affidavits to the district court justifying their fees on the basis of their work on the individual state
26  class actions. The fee award also includes all future services that class counsel must provide
   through the life of the latch replacement program. They must remain available to enforce the
27  contractual elements of the settlement agreement and represent any class members who encounter
   difficulties. The factual record provides a sufficient evidentiary basis for the district court's
28  approval of the fee request.").

Counsel continue to incur time and expense as the approval process continues, as class notices are finalized and implemented, settlement administrative matters including the settlement website are addressed, the objection and opt-out process continues, and the claims process, and the issues arising therein, need to be addressed. In Class Counsel's experience, the amount of work to reach final approval, to address requests and questions by Class Members, and to deal with settlement administrative and claims approval matters, can be substantial. Class Counsel estimates that the lodestar at the time of Final Approval will be in the range of approximately two million dollars ($2,000,000.00). Counsel would be in a position to address any further questions the Court may have, if any, relating to lodestar or value based upon the benefit to the Settlement Class at the preliminary or final approval hearing.[13]  The fees paid to Class Counsel will have no reduction on any aspect of Class Members' recovery.

   i)     As set forth in the proposed Class Notice, an incentive award for each of the three (3) Class Representatives will be sought in the amount of $2,500.00. The Class Representatives fully participated in the litigation and settlement process. Class Representatives provided necessary documents and support to Class Counsel, and reviewed the Complaint together with other pleadings and documents. Class Counsel were able to understand the nature of the defect

---

[13] Class Counsel respectfully submit that attorney fees based on the percentage-of-the-fund calculation and methodology is a method often applied in automobile defect cases in the Ninth Circuit. *See Seifi v. Mercedes Benz USA, LLC*, Case No. 12-cv-05493-TEH (N.D. Cal. Aug. 18, 2015), ECF Doc. 208, *Order Granting Award of Attorneys Fees, Reimbursement of Expenses and Class Representative Award* at ¶ 9 ("Class Counsel request that the Court grant approval of the requested award of Counsel Fees in the sum of Two Million Four Hundred Eleven Thousand Eight Hundred Eighty Two Dollars ($2,411,882). . . . It appears that utilizing the percentage-of-fund method of calculation, the requested Counsel Fee is well below the twenty five percent (25%) benchmark recognized in the Ninth Circuit. ***For cases using the percentage-of-the fund method, twenty five percent (25%) of the overall figure is considered a 'benchmark award of attorneys fees.'***" (emphasis added) (*citing Hanlon v. Chrysler Corp*., 150 F.3d at 1029)*; see also In re Toyota Motor Corp*., No. 8:10ML-02151-JVS, 2013 U.S. Dist. LEXIS 94485, at *211 (C.D. Cal. June 17, 2013) (valuing the relief involving the installation of a brake override system at $400 million); *Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379-RRB, 2007 U.S. Dist. LEXIS 55305, at *15 (S.D. Cal. July, 31, 2007) (valuing the extension of warranty replacing a throttle module at $24 million based on part replacement costs and applying a percentage method to determine fees). Class Counsel herein believes the value of this settlement preliminarily will exceed $35 million based on the anticipated number of claims and Warranty Extension repairs.

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND SECOND RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MPA          Case No. 17-cv-01825-JD

- 28 -

alleged herein because of, in part, the valuable input from the Class Representatives, and their imparting the circumstances surrounding their respective failures and providing the invoices and repair information to counsel. The Class Representatives further reviewed the Amended Complaint and provided input thereto and reviewed the opposition to Defendant's motion to dismiss. They discussed the settlement process with Class Counsel, and allowed their names to be placed in the public record as Plaintiffs in this case on behalf of a class of similar owners and lessees, tens of thousands of whom will now benefit because of their efforts, by receiving reimbursement or utilizing the extended warranty to have the work done at Defendant's expense. Class Counsel is mindful of this Court's previous decisions on incentive awards.[14]   However, counsel believes that a modest incentive award is warranted in this matter. Counsel also understand that no determination is needed at the preliminary approval stage. Nonetheless, the N.D. Proc. Guidance impels counsel to raise it, and as such counsel addresses it herein briefly and preliminarily. The incentive award requested here is reasonable based on other comparable incentive awards in automotive defect cases. *See In Re Nissan AT Cooler, supra,* at *15; *see also Seifi v. Mercedes Benz U.S.A., LLC*, Case No. 12-cv-05493-TEH (N.D. Cal. Aug. 8, 2015), Dkt. 208 at p. 4 (awarding incentive awards of $9,000 each to class representatives and holding "The incentive awards sought are justified and in line with incentive awards approved by this Court. *See Bellinghausen v. Tractor Supply Co.*, No. 13-cv-2377-JSC, 2015 WL 1289342, at *17 (N.D. Cal. Mar. 20, 2015) (awarding named class plaintiff $15,000 incentive award 'in light of the time and effort Plaintiff expended for the benefit of the class.'); *Navarro v. Servisair*, No. 08-cv-2716, MHP, 2010 WL 1729538, at *4 (N.D. Cal. Apr. 27, 2010) ('Based on this active participation, an incentive award of $10,000.00 is reasonable.')"). The award requested herein is not contingent on any of the class members endorsing or approving the settlement. N.D. Proc. Guidance, ¶ 7.

       j)       There is no *cy pres* award contemplated in this case. N.D. Proc. Guidance, ¶ 8.

---

[14] *E.g., See Relente v. Viator, Inc*., 2015 WL 3613713 (N.D. Cal. June 9, 2015);   *Myles v. AlliedBarton Sec. Serv., LLC*, 2014 WL 6065602 (N.D. Ca. Nov. 12, 2014);   *Stokes v. Interline Brands, Inc*., 2014 WL 5826335 (N.D. Cal. Nov. 10, 2014).

k)      The parties intend to comply with the Class Action Fairness Act and have already provided notice to the Attorney General of the United States and the State Attorneys General of the proposed Settlement in accordance with 28 U.S.C. ¶ 1715(b). N.D. Proc. Guidance, ¶ 10.

l)      The N.D. Proc. Guidance, ¶ 11 requests information for at least one past comparable class action settlement. As noted above, counsel verily believes the within action compares extremely favorably to the *Herremans v. BMW of N.A., LLC* matter as discussed above.

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Unopposed Motion be granted.

STULL, STULL & BRODY

Dated:  June 7, 2019              By:   *s/ Patrice L. Bishop*
Patrice L. Bishop
STULL, STULL & BRODY
9430 West Olympic Blvd., Suite 400
Beverly Hills, CA  90212
Tel:     (310) 209-2468
Fax:     (310) 209-2087
Email:  pbishop@ssbla.com

*Local Counsel for Plaintiffs Gregory Coffeng, Mark Glaser and Jordan Wilson and the Putative Class*

Gary S. Graifman (admitted *pro hac vice*)
Jay I. Brody
KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Tel:     (845) 356-2570
Fax:     (845) 356-4335
Email: ggraifman@kgglaw.com
            jbrody@kgglaw.com

Thomas P. Sobran (admitted *pro hac vice*)
THOMAS P. SOBRAN, P.C.
7 Evergreen Lane
Hingham, MA 02043
Tel:     (781) 741-6075
Fax:     (781) 741-6074
Email: tsobran@sobranlaw.com

*Lead Counsel for Plaintiffs Gregory Coffeng, Mark Glaser and Jordan Wilson and the Putative Class*