1  Patrice L. Bishop (182256)
   pbishop@ssbla.com
2  STULL, STULL & BRODY
   8383 Wilshire Blvd., Suite 800
3  Beverly Hills, CA  90211
   Tel:   (323) 456-8638
4  Fax:   (323) 456-8601

5  *Local Counsel for Plaintiffs*
   *and the Putative Class*
6
7  [Additional Counsel on Signature Page]

8

9                    UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  GREGORY COFFENG, MARK GLASER and      Case No. 17-cv-01825-JD
    JORDAN WILSON, individually and on behalf
14  of all others similarly situated,          **PLAINTIFFS' NOTICE OF MOTION
                                               AND UNOPPOSED MOTION FOR FINAL
15          Plaintiffs,                        APPROVAL OF CLASS ACTION
                                               SETTLEMENT; MEMORANDUM OF
16          v.                                 POINTS AND AUTHORITIES**

17  VOLKSWAGEN   GROUP   OF   AMERICA,
    INC.,
18                                             DATE:      March 26, 2020
            Defendant.                         TIME:      10:00 a.m.
19                                             JUDGE:     Hon. James Donato
                                               CRTRM:     11, 19th Floor
20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................... 2

    A.    The Litigation and Settlement, Generally .............................................. 2

    B.    The Settlement's Consideration ............................................................. 3

    C.    The Notice Plan ...................................................................................... 6

III.   ARGUMENT ...................................................................................................... 8

    A.    The Settlement Class Should Be Certified ............................................ 8

        1.    The Proposed Settlement Satisfies Rule 23(a) ............................ 9

        2.    The Settlement Class Satisfies the Necessary Criteria
            of Rule 23(b)(3) ........................................................................ 10

    B.    The Court Should Reaffirm the Appointment of Class Counsel ........... 12

    C.    The Settlement is Fair, Reasonable and Adequate ............................... 12

        1.    The Class Representatives and Class Counsel Have
            Vigorously Represented the Class ............................................. 13

        2.    The Settlement Was the Product of Arm's-Length
            Negotiation ............................................................................... 14

        3.    The Settlement's Relief Represents a Substantial
            Recovery ................................................................................... 14

        4.    The Settlement Treats Class Members Equitably ...................... 18

    D.    Plaintiffs Provided Adequate Notice .................................................... 18

    E.    Defendant Provided Notice Under the Class Action Fairness Act ......... 19

    F.    The Settlement Meets the Northern District's Procedural Guidance ..... 19

IV.    CONCLUSION ................................................................................................ 20

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- i -

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                                       **Page**

3

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 9, 11

4

5

*Ayala v. Coach, Inc.*,
    No. 14-cv-02031-JD, 2017 U.S. Dist. LEXIS 77652 (N.D. Cal. May 22, 2017) ................ 2

6

*Baghdasarian v. Amazon.com, Inc.*,
    Case No. CV 05-8060 AG (CTx), 2009 WL 2263581 (C.D. Cal., Jul. 7, 2009) .............. 11

7

8

*Browne v. American Honda Motor Co.*,
    Case No. CV 09-06750 MMM (DTBx), 2010 WL 9499072 (C.D. Cal. Jul. 29, 2010) ..... 15

9

*Browning v. Yahoo! Inc.*,
    Case No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ..................... 11

10

*Castro v. Zenith Acquisition Corp.*,
    2007 WL 81905 (N.D. Cal.  Jan. 9, 2007) ........................................................ 12

11

12

*Friedman v. 24 Hour Fitness USA Inc.*,
    CV 06-6282 AHM (CTx), 2009 WL 2410889 (C.D. Cal. Aug. 6, 2009) ........................ 11

13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................... 9, 10

14

15

*Herremans v. BMW of N.A.*,
    LLC, CV 14-2363-GW(PJWX) (C.D. Cal.) ....................................................... 14, 15

16

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ............................................................... 18

17

18

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .................................................................................. 9

19

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) .............................................................................. 11

20

*Lowdermilk v. United States Bank National Assoc.*,
    479 F.3d 994 (9th Cir. 2007) .................................................................................. 9

21

22

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950) ............................................................................................. 18

23

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 12

24

25

*Parra v. Bashas, Inc.*,
    536 F.3d 975 (9th Cir. 2008) .................................................................................. 9

26

*Sadowska v. Volkswagen Group of America, Inc.*,
    No. CV 11-665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ......................... 15

27

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) ................................................................. 10

*Tchoboian v. Parking Concepts, Inc.*,
  2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) .......................................... 11

*Torrisi v. Tucson Elec. Power*,
  8 F.3d 1370 (9th Cir. 1993) ..................................................................... 12

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................... 12

**Statutes**

28 U.S.C. § 1715(d) ................................................................................... 19

**Rules**

Fed. R. Civ. P. 23 ............................................................................. 8, 9, 10, 14

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

      **PLEASE TAKE NOTICE THAT** on March 26, 2020, at 10:00 a.m., before the Honorable James Donato, United States District Judge, at Courtroom 11, 19th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, in San Francisco, California, or at such other time as this Court may Order, Plaintiffs Gregory Coffeng, Mark Glaser, and Jordan Wilson, by and through their undersigned counsel, will move this Court for an Order granting Final Approval of the classwide proposed Settlement reached in this matter.

      Plaintiffs respectfully request this Court grant final approval to the class settlement ("Settlement"); certify the Class for settlement purposes;[1] reaffirm the appointment of Class Counsel; determine the Settlement is fair, reasonable and adequate; and find that the Parties have provided adequate notice.  This Motion is based on the Memorandum of Points and Authorities, the Joint Declaration of Gary S. Graifman and Thomas P. Sobran (the "Jt. Decl."), the Declaration of Cameron R. Azari ("Azari Decl."), any argument of counsel, and such additional material as this Court may consider.

**STATEMENT OF ISSUES TO BE DECIDED**

      1.      Whether the Settlement defined *infra*, is fair, reasonable and adequate and should be approved;

      2.      Whether the Class, defined *infra*, should be certified at the final approval hearing;

      3.      Whether the timely effectuated Notice Program, previously approved by the Court, provided adequate notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

      In the August 29, 2019 Order Granting Preliminary Approval of Settlement, Preliminarily Certifying Class and Approving Class Notice (Dkt. 82, the "PAO"), this Court found "for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied." *See*

---

[1] Because this Motion requests class certification, the Parties are informed and believe that they are limited twenty-five (25) pages under the Standing Order for Civil Cases Before Judge James Donato, dated January 5, 2017, at ¶18.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES    Case No. 17-cv-01825-JD

- 1 -

Dkt. 82 at ¶ 8.; *see also* ¶¶ 9-10. The Court also found that the "[t]he Settlement is fair, reasonable and adequate[.]" *Id.* at ¶ 6. These same findings are also appropriate at this stage of the litigation as the criteria for granting final approval have been met.

As detailed *infra*, the proposed Settlement, reached after adversarial arms'-length negotiations, provides substantial and meaningful monetary relief and other benefits to the Settlement Class, including a meaningful warranty extension. Plaintiffs' claims were vigorously disputed throughout the litigation. Among other things, VWGoA maintained that the engine primary coolant pumps ("water pump") in the Settlement Class Vehicles are not defective; that no warranties (express or implied) or laws (statutory or common) were violated; and that no wrongdoing occurred in connection with the water pumps and/or the Settlement Class Vehicles. *See, e.g.*, Jt. Decl. ¶¶ 5. Despite this, the Parties were able to settle the action in a very substantial manner and engaged in a robust Notice Program, *via* U.S. mail, email, Social Media Banner Notices and Sponsored Search Listings. Under these circumstances, final approval of the proposed Settlement is warranted. *See, e.g.*, *Ayala v. Coach, Inc.*, No. 14-cv-02031-JD, 2017 U.S. Dist. LEXIS 77652, at *5 (N.D. Cal. May 22, 2017).

## II.      STATEMENT OF FACTS

### A.      The Litigation and Settlement, Generally

The Settlement provides meaningful redress for the claims and allegations pled in the Amended Complaint (the "AC," Dkt. 52). The gravamen of the AC is that VWGoA allegedly withheld material disclosures concerning the allegedly defective primary engine water pump used in the following vehicles (hereinafter "Settlement Class Vehicle(s)"): (i) certain 2008 through and including 2014 model year Audi motor vehicles equipped with the 2.0L TSI or TFSI turbocharged engine; and (ii) certain 2008 through and including 2014 model year Volkswagen motor vehicles equipped with the 2.0L TSI turbocharged engine.[2]  Settlement Class Vehicles equipped with 2.0L

---

[2] Because not every vehicle during these model years contained the water pump component at issue, the Class Vehicles involve certain Vehicle Identification Numbers ("VINs") within these models and model years. As discussed during the preliminary approval process, a settlement website was established which, *inter alia*, allows Class Members to readily determine if their vehicle is included through the VIN lookup database maintained at https://www.enginewaterpumpsettlement.com/ (the

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 2 -

EA888 TSI or TFSI turbocharged four cylinder multi-valve engines include, but are not limited to, engine codes CCTA, CAEB, CAED and CBFA (hereinafter "class engines" or "class engine").[3]

### B.   The Settlement's Consideration

The Settlement includes a reimbursement of past out-of-pocket expenses for premature replacement of the water pump and an extended warranty for the pump.  The past out-of-pocket expense reimbursement program and the extended warranty also include a percentage of the cost or repair of engine damage directly caused by a water pump failure during the applicable time and mileage period.  Plaintiffs estimate the value of the reimbursement portion of the Settlement to be approximately $21,814,992. *See* Jt. Decl. ¶ 24. Plaintiffs' expert in the subject matter of automobile repair costs and warranty valuation estimates the value of the extended warranty program appurtenant to the water pump warranty extension to be approximately $12,230,314 (*see* Jt. Decl. ¶ 24), making the total value of the settlement worth an estimated $34,045,306.[4]  The overall settlement consideration is not subject to any aggregate monetary cap.  Under the Settlement Agreement, VWGoA bears the cost of the class notice, claims administration, and approved reasonable attorneys' fees and expenses. *See* SA at ¶¶ IV(A) and (B).

More specifically, the reimbursement program under the Settlement provides that class members who, prior to December 2, 2019 (the date of the notice or "Notice Date"), incurred out-of-pocket expenses for repair/replacement of the water pump will receive a 100% reimbursement of

---

"Settlement Website"). *See also* Exh. 4 to Second Amended Settlement Agreement (Jt. Decl. Exh. 2, the "Settlement Agreement" or "SA") (Dkts. 64-4, 64-6, 74 (order granting motion to seal document containing private and confidential information about Settlement Class members' vehicles)). There are approximately 874,781 vehicles in the Settlement Class. *See* Azari  Decl. at ¶ 12.

[3] Class Vehicles include certain model year Audi A3, A4, A5 and Q5 vehicles, and certain model year Volkswagen CC, Beetle, EOS, Golf/GTI, Jetta, Passat, Sports Wagon and Tiguan vehicles.

[4] Plaintiffs' warranty valuation expert, Kirk D. Kleckner, CPA, MBA, ASA-BV, has provided this preliminary valuation as to the value of the Settlement's warranty extension program to 10 years and 100,000 miles, subject to finalization of his analysis.  If the final analysis changes, Mr. Kleckner will be submitting an expert Declaration prior to the Final Approval hearing reflecting the final analysis.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 3 -

the cost of repair/replacement if performed within eight (8) years/80,000 miles,[5] and seventy percent (70%) reimbursement of the cost of repair/replacement of the water pump if performed between eight (8) years/80,000 miles and ten (10) years/100,000 miles.  If a prior repair/replacement was performed at an independent service center ("ISC") (*e.g.*, not at an authorized VW or Audi dealer), the amount of reimbursement is capped at $950.00, the average cost for a water pump repair/replacement incurred at an authorized VW/Audi dealership in California, the highest (most expensive) market in the U.S. *See* Jt. Decl. ¶ 4.  The appropriateness of this generous monetary cap on past ISC repairs was demonstrated to the Court's satisfaction on preliminary approval.  The reimbursement requires timely submission of a completed signed Claim Form together with documentary Proof of Repair Expense which is spelled out in the Class Notice, on the Claim Form itself and on the settlement website, discussed *infra*.

The Settlement also contains a Warranty Extension which nearly doubles the existing New Vehicle Limited Warranties' ("NVLW") warranty period applicable to Settlement Class Vehicles' water pump.  The warranty extension, effective as of the Notice Date, will cover repair or replacement of a failed water pump, by an authorized VW or Audi dealer, free of charge, for a period of up to ten (10) years or 100,000 miles from the vehicle's In-Service Date.   The extended warranty is subject to the same terms and conditions of the original New Vehicle Limited Warranty, and is transferable to subsequent owners to the extent the time and mileage period of the extended warranty has not expired.

In addition, pursuant to the percentage chart below (the "Schedule"),[6] Defendant also agreed to: (1) reimburse class members for a percentage of the out-of-pocket cost that was incurred to repair

---

[5] All reimbursement and warranty periods outlined herein which indicate a mileage limitation or tme limitation from the In-Service Date are for whichever occurs(ed) first (*e.g.*, the warranty remains in effect until either the stated mileage limitation or time limitation from the In-Service Date is reached, whichever is first).

[6] VWGoA's data confirmed that engine damage seldom results from a failed water pump. *See* Jt. Decl. ¶ 13.  The percentages are the product of compromise between the parties resulting from substantial arm's-length negotiations that sought to take into account the panoply of factors, including: the manner of use/driving of the vehicle and its affects on the life and condition of the engine; whether the engine was properly maintained in accordance with recommended maintenance intervals; whether the engine was subjected to stresses and/or damage from external, outside or

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 4 -

engine damage that occurred as a direct result of a failure of the water pump during the period of ten (10) years or 100,000 miles and prior to the Notice Date (plus a 20-day grace period following the Notice Date);[7] and (2) include in the 10 year/100,000 mile extended warranty for the water pump a percentage of the cost of repair/replacement, by an authorized VW or Audi dealer, of engine damage directly caused by a failure of the water pump, during that extended warranty period and after the Notice Date. The Engine Damage Reimbursement Schedule provides reimbursement on the following sliding scale based on the age and mileage of the Settlement Class Vehicle:

| Time from in-service date | Less than 50,000 miles | 50,001 to 60,000 miles | 60,001-70,000 miles | 70,001-80,000 miles | 80,001 to 100,000 miles |
|---|---|---|---|---|---|
| 4 years or less | 100%[8] | 70% | 50% | 40% | 25% |
| 4-5 years[9] | 70% | 50% | 40% | 30% | 20% |
| 5-6 years | 50% | 40% | 35% | 25% | 15% |
| 6-7 years | 40% | 30% | 25% | 20% | 10% |

---

environmental causes; and the age, mileage and "wear and tear" to the engine at the time of alleged failure.  The negotiated percentages further take into account the amount of time and mileage in which the Class members were able to use, enjoy and benefit from their respective vehicles prior to the alleged damage.

[7] The Settlement provides a cap of $4,000.00 for such reimbursement if the engine was repaired or replaced by an ISC. SA at II (C)(2). This, too, was demonstrated to be satisfactory to the Court at the preliminary approval stage.  The $4,000.00 cap amount is substantially higher than the average cost of repair or replacement, by authorized VW/Audi dealers, of engine damage attributable to a failed water pump. VW's data reflects that more than 99% of all water-pump related dealer repairs, including repairs of engine damage directly caused by a failed water pump, cost $2,000 or less. *See* Jt. Decl. ¶ 16.

[8] Covered under original vehicle powertrain warranty terms. *See* SA at II(A) and II(C).

[9] For VW Settlement Class Vehicles in which the NVLW period is 5 years or 60,000 miles (whichever occurs first) from the In-Service Date, the reimbursement percentage shall be one hundred percent (100%) for unreimbursed out-of-pocket expenses incurred within 5 years or 60,000 miles (whichever occurs first) warranty period, but not exceeding the maximum reimbursement amount of $4,000.00 if the repair/replacement was performed by an ISC.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 5 -

| 7-8 years | 30% | 25% | 20% | 15% | 10% |
| 8-10 years | 25% | 20% | 15% | 10% | 5% |

For either past reimbursement or the extended warranty, the Settlement Class Member must demonstrate proof of adherence to the vehicle's maintenance schedule relevant to the function of the coolant system (including use of the specified coolant fluid recommended by VW or Audi) during the period they owned or leased the vehicle up to the date of the repair or replacement, within a ten percent variance from the maintenance schedule.  However in the event such maintenance records cannot be obtained despite good faith efforts, the Class Member may submit a signed Declaration setting forth the good faith effort to obtain the records and attesting to their adherence to the maintenance schedule relevant to the coolant system during the period they owned or leased the vehicle up to the date of the repair or replacement, within a ten percent variance from the schedule.  The Settlement Agreement allows for reimbursement for one repair or replacement of a water pump per Settlement Class Vehicle.  SA, II(B)(1)(a) and (b).  However, if a proper Audi or Volkswagen replacement pump failed within 12 months or 12,000 miles, the replacement warranty allows for reimbursement for the cost (parts only) of the new Volkswagen or Audi pump that will replace the failed one. SA, II(B)(2)(b).

The claims period extends to April 30, 2020 for Settlement Class members to file a claim with the claims administrator.  In the event any claim is deficient, the class member shall receive a notice of deficiency from the claims administrator and an opportunity to cure the problem.  In the event such claim is thereafter denied, the right to seek an administrative review with input from Class Counsel and defense counsel.

**C.    The Notice Plan**

The Parties and Epiq Global ("Epiq"), the Court appointed Claims Administrator (*see* PAO ¶ 15), provided direct and indirect notice to the Class pursuant to the robust Class Notice Program prepared with the Court's guidance.  The form, content and manner of the dissemination of the class notice was reviewed by and preliminarily approved by the Court.  On December 2, 2019, 1,911,011

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES        Case No. 17-cv-01825-JD

- 6 -

direct mail notices were sent to Settlement Class Members at current or last known addresses obtained and aggregated by IHS Markit/Polk ("Polk") from DMV records in all 50 states and associated Territories. *See* Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Notice Plan and Notices, submitted herewith(the "Azari Decl.") ¶¶ 13-19. Prior to mailing the Class Notice, an address search through the United States Postal Service's National Change of Address database was conducted to update the address information for Settlement Class Vehicle owners and lessees. *See Id.* ¶¶ 21-22. For any individual Class Notice returned as undeliverable, Epiq shall re-mail all Class Notices where a forwarding address has been provided. For the remaining undeliverable notice packets where no forwarding address is provided, Epiq shall perform an advanced address search (*e.g.* a skip trace) and re-mail the notice to the extent any new and current addresses are located. *Id.* at ¶ 22.

As a supplement to the Direct Mail Notice, on December 2, 2019, 451,412 email notices were sent to Settlement Class Members for whom a facially valid email address was available from Polk. The Email Notice content was substantially the same as the mailed notice (*id.* at ¶ 25 and Attachment 3), and used an embedded HTML text format to provide easy to read text without certain graphics and other elements that increased the likelihood that the message would not be blocked by any Internet Service Providers (ISPs) or SPAM filters. For any Email Notices for which a bounce code was received indicating that the message was undeliverable, at least one additional attempt will be made to deliver the Notice by email.

The mailed and emailed class notices contained the form and content approved by the Court and was compliant with the Northern District of California Class Guidance ("Class Guidance"). The class notices were accompanied by a Claim Form for those Class members eligible and who wish to submit claims for reimbursement under the terms of the Settlement. In addition, the class notices contained contact information for the Claim Administrator and identified the settlement website (and the Email Notice included an embedded link to the settlement website). The settlement website provides Settlement Class Members with access to copies of the mailed notice, the Settlement Agreement, the online Claim Form, other information about the Settlement, their rights and

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES        Case No. 17-cv-01825-JD

- 7 -

1 applicable dates and deadlines, and the ability to file claims for reimbursement and requests for

2 exclusion (opt outs) online. *See Id.*

3       Epiq also disseminated Social Media Banner Notices on *Facebook* and *Instagram*, the two

4 largest social media outlets in the world, targeting owners/lessees of Volkswagen and Audi vehicles

5 and persons interested in Volkswagen and Audi.  The banner notice ads allow users to identify

6 themselves as potential Settlement Class members and directly link them to the Settlement Website

7 for more information. *Id.* at ¶ 28.  Epiq also successfully implemented Sponsored Search Listings

8 acquired on the three most highly-visited Internet search engines, *Google*, *Yahoo!* and *Bing*, to

9 facilitate class members locating the Settlement Website through the use of various search terms.

10 *Id.* at ¶¶ 29-30.  As a result of the sponsored listing, the Settlement Website should appear at the top

11 of the page of any related search results.  The Settlement Website, operational on December 2, 2019,

12 includes the Settlement Agreement, Class Notices, Claim Forms, "Frequently Asked Questions,"

13 applicable Orders and deadlines, portals for online filing of claims or opt-outs and, as in the mailed

14 and emailed notices, a toll-free number to contact the Claim Administrator with any questions.  It

15 also provides the VIN look-up tool and allows Class members to submit a claim or opt-out of the

16 Settlement online. *Id.* at ¶¶ 31.  Epiq believes that it successfully delivered individual notice to over

17 90-95% of the Settlement Class. *Id*. at ¶ 38.

## III.   ARGUMENT

19       The Settlement warrants Final Approval.  In determining whether to grant final approval,

20 the Court must: (1) certify the proposed Settlement Class; (2) determine the Settlement is fair,

21 reasonable, and adequate under Fed. R. Civ. P. 23(e)(2); and (3) assess whether appropriate notice

22 and other requirements have been met under the Constitution, Class Action Fairness Act ("CAFA"),

23 and the Procedural Guidance for Class Action Settlements ("Class Guidance"). For the reasons

24 outlined below, Plaintiffs have established each of these elements, that final approval is appropriate

25 and that the Settlement is fair, reasonable and adequate.

### A.   The Settlement Class Should Be Certified

27       The proposed Settlement Agreement calls for certification of a Settlement Class for

28 settlement purposes only. *See* SA ¶ 1(Q).  Under Ninth Circuit law, "the criteria for class

certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Indeed, unlike a litigation class that may go to trial, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial. *Id.* at 556-57.

However, "in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class[.]" *Id.* at 557, *citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (in certifying a settlement class, the court must ensure the class definition is neither unwarranted nor overbroad).   The Settlement Class, subject to certain exclusions, is narrowly defined as: "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I (R) of this Agreement, in the United States of America and Puerto Rico." SA ¶ I(Q). This definition generally tracks the putative class definition pled in the AC. *See* AC ¶¶ 1-2. Furthermore, the Settlement will result in substantial benefits to the Settlement Class.

### 1.        The Proposed Settlement Satisfies Rule 23(a)

The proposed class satisfies Rule 23(a) requirements of numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23(a); *see also Hyundai*, 926 F.3d at 556. Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As noted earlier, there are approximately 874,781 vehicles in the Settlement Class. *See* Azari Decl. ¶12. This more than satisfies the numerosity requirement for class certification. *See Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007) (numerosity criteria satisfied by plaintiff's mere allegation that class size "exceeds 30 persons.").

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "To establish commonality, '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies.'" *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008), *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, commonality is met.  The claims of the putative Class Members arise from the same allegations in the AC, namely, does there exist a defect in the Settlement Class Vehicles' engine primary water pump?  Additionally, all Settlement Class

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES        Case No. 17-cv-01825-JD

- 9 -

1    Members whose vehicles experience the manifestation of the alleged common defect are entitled to

2    relief if their claim meets the Settlement's requirements.   This is because a key provision of the

3    Settlement Agreement permits eligible members to obtain reimbursement from VWGoA for certain

4    out-of-pocket costs previously incurred in premature repair/replacement of the original water pump

5    within the time and mileage parameters of the Settlement. *See* SA II(B) and (C).

6         Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

7    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality prerequisite of Rule

8    23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or

9    defenses of the class.'" *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005),

10   *quoting Hanlon*, 150 F.3d at 1020.  "[R]epresentative claims are 'typical' if they are reasonably co-

11   extensive with those of absent class members; they need not be substantially identical." *Hanlon*,

12   150 F.3d at 1020.  Plaintiffs Gregory Coffeng, Mark Glaser, and Jordan Wilson own class vehicles

13   that experienced premature water pump failure requiring costly out-of-pocket payments for

14   unanticipated repair. *See* AC ¶¶ 10-12.  Because Plaintiffs are members of the proposed Settlement

15   Class and assert the same causes of action on behalf of themselves and all absent class members,

16   their claims are typical.

17        Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

18   interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal

19   adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

20   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

21   on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  There are no conflicts of interest that exist here.

22   Plaintiffs seek the same remedy as all class members; namely, relief to address the claim that the

23   vehicle has manifested or is unduly prone to manifest a failure of the water pump.  Plaintiffs'

24   interests are fully aligned with the interests of the Settlement Class members.

25        **2.    The Settlement Class Satisfies the Necessary Criteria of Rule 23(b)(3)**

26        Rule 23(b)(3)'s "predominance" and "superiority" requirements are also readily satisfied

27   here. *See* Fed. R. Civ. P. 23(b)(3).  "To establish predominance of common issues, a party seeking

28   class certification is not required to show that the legal and factual issues raised by the claims of

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES        Case No. 17-cv-01825-JD

- 10 -

1  each class member are identical.  Rather, the predominance inquiry focuses on whether the proposed

2  class is 'sufficiently cohesive to warrant adjudication by representation.'" *Friedman v. 24 Hour*

3  *Fitness USA Inc.*, CV 06-6282 AHM (CTx), 2009 WL 2410889, at *6 (C.D. Cal. Aug. 6, 2009),

4  *quoting Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244

5  F.3d 1152, 1162 (9th Cir. 2001).  This cohesiveness assuredly exists here because the overarching

6  inquiry and interest of all putative class members is whether the members of the Settlement Class

7  are entitled to relief from VWGoA for an alleged defect in the water pump present in their particular

8  Settlement Class Vehicle.  This evidence and proof as to the existence of a legally cognizable claim

9  to obtain such relief predominates over any individual issues.

10      Similarly, the "superiority" requirement of Rule 23(b)(3) is also satisfied.  In determining

11  the superiority of a class action, courts consider the following four factors: (1) the class members'

12  interests in individually prosecuting separate actions; (2) whether any litigation concerning the

13  controversy has already been brought by class members; (3) the desirability of concentrating the

14  litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class

15  action.[10] *See* Fed. R. Civ. P. 23(b)(3)(a)-(d).  Here, those factors clearly militate in favor of class

16  certification.  Although the cost of repairing or replacing a failed water pump could be significant,

17  the cost of individually litigating such a case against VWGoA easily exceeds the cost of any relief

18  that could be obtained by any lone owner or lessee.  This, alone, warrants a finding that a class

19  action is a superior method of adjudication.  *See Tchoboian v. Parking Concepts, Inc.*, Case No.

20  SACV 09-422 JVS (ANx), 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009) (granting motion for

21  class certification and noting that "[t]his superiority inquiry requires a comparative evaluation of

22  alternative mechanisms of dispute resolution."); *Baghdasarian v. Amazon.com, Inc.*, Case No. CV

23  05-8060 AG (CTx), 2009 WL 2263581, at *7 (C.D. Cal., Jul. 7, 2009).

24      The proposed Settlement Class preliminarily approved and certified under Federal Rule of

25  Civil Procedure 23 should now be granted final approval.

26

27  _____

[10] Manageability is not a factor to assess in deciding whether the superiority requirement has been

28  met. *Browning v. Yahoo! Inc.*, Case No. C04-01463 HRL, 2007 WL 4105971, at *9 (N.D. Cal. Nov. 16, 2007), *citing Amchem Prods. v. Windsor*, 521 U.S. at 619.

### B.      The Court Should Reaffirm the Appointment of Class Counsel

The Court has found "that the following counsel will fairly and adequately represent the interests of the Settlement Class and hereby appoints Kantrowitz, Goldhamer & Graifman, P.C., and Thomas P. Sobran, P.C., as Lead Settlement Class Counsel, and Stull, Stull & Brody as Settlement Class Liaison Counsel." PAO ¶ 14.  Plaintiffs respectfully request that the Court reaffirm this Order.

Rule 23(g)(1) states that "[i]n appointing class counsel, the court (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1).  To date, Plaintiffs' Counsel has capably managed this complex action as demonstrated by, *inter alia*, the complaints, briefing on VWGoA's motion to dismiss, and arms'-length negotiations that resulted in the Settlement.  Moreover, Counsel for Plaintiffs are highly experienced in class action litigation. *See* Exhibits "2"-"4" to the Jt. Decl.

### C.      The Settlement is Fair, Reasonable and Adequate

Final approval should be granted because the Settlement terms are fair, reasonable, and adequate.  Ultimately, the decision to grant final approval to a settlement of a class action is a matter left to the discretion of the trial court. *See Castro v. Zenith Acquisition Corp.*, No. 06-cv-04163 SI, 2007 WL 81905, at *1 (N.D. Cal. Jan. 9, 2007).  In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 12 -

1    Under the December 1, 2008 amendments to Rule 23, in determining whether a proposed

2  settlement is fair, reasonable, and adequate, the Court must consider whether:

3       (A) the class representatives and class counsel have adequately
        represented the class;
4       (B) the proposal was negotiated at arm's length;
        (C) the relief provided for the class is adequate, taking into account:
5               (i) the costs, risks, and delay of trial and appeal;
                (ii) the effectiveness of any proposed method of distributing
6               relief to the class, including the method of processing class-
                member claims;
7               (iii) the terms of any proposed award of attorney's fees,
                including timing of payment; and
8               (iv) any agreement required to be identified under Rule
                23(e)(3); and
9       (D) the proposal treats class members equitably relative to each other.

10  Fed. R. Civ. P. 23(e)(2).  The Settlement satisfies each element of these requirements.

11       **1.    The Class Representatives and Class Counsel Have Vigorously
              Represented the Class**
12

13    As provided in more detail in the Motion for Award of Attorneys' Fees, Reimbursement of

14  Expenses and Service Award (the "Fee Motion") and Jt. Decl., Class Counsel engaged in extensive

15  investigation of the water pump failures, the design of the subject water pump, review of parts

16  changes and Technical Service Bulletins, review of online VW/Audi owner bulletin boards or chat

17  rooms which discussed the problems occurring with the subject water pump and available NHTSA

18  complaints. Class Counsel acquired an exemplar water pump and reviewed the functionability with

19  a consulting expert.  After vigorous arms' length negotiations, Plaintiffs were able to procure a

20  substantial and extremely beneficial Settlement for the Settlement Class.  Prior to engaging in any

21  settlement talks, the parties exchanged meaningful informal discovery and fully briefed and argued

22  a motion to dismiss. Furthermore, after the hearing on the motion to dismiss (*see* Dkt. 51), Plaintiffs

23  filed the AC (*see* Dkt. 52) after conducting additional engineering and forensic analysis into the

24  nature and cause of the alleged defect. *See* Jt. Decl. at ¶¶ 7-10. At that time, the Court also granted

25  the parties' request to place this matter on a settlement track.   Plaintiffs and their Class Counsel's

26  diligent pursuit of this Settlement for over two-years demonstrates their vigorous representation of

27  the Class. *See* Dkts. 58, 64-67, 75-78; Jt. Decl. at ¶¶ 10-11, 16.

28

1

2.      **The Settlement Was the Product of Arm's-Length Negotiation**

2      At the point of settlement discussions, each side had a *bona fide* basis on which to make an

3   informed assessment of the value, strengths, and potential weaknesses of their respective cases and

4   defenses.  It is undeniable that the settlement negotiations here were non-collusive and adversarial

5   in nature.  The parties thoroughly engaged in extended negotiations during which several extensions

6   of time were required. *See, e.g.*, Dkt. Nos. 53, 58, 60-62. In addition, the parties agreed on the

7   material terms of this Settlement prior to the onset of any discussions relating to reasonable attorney

8   fees and expenses, thus further attesting to the adversarial, *bona fide*, and arms'-length nature of the

9   negotiations. Jt. Decl. at ¶¶ 13-16.Since the proposed Settlement amounts to a reasonable means of

10   resolving this litigation, and because the risks, expense and delays of potential recovery inherent in

11   continuing to litigate this matter are significant and uncertain, this proposed Settlement satisfies the

12   standard for final approval and accordingly should receive final approval.

13

3.      **The Settlement's Relief Represents a Substantial Recovery**

14      Under Rule 23(e)(2)(C), the court must also consider whether "the relief provided for the

15   class is adequate," taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the

16   effectiveness of any proposed method of distributing relief to the class, including the method of

17   processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including

18   timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[11] Fed. R.

19   Civ. P. 23(e)(2)(c).

20      First, putative Class members are entitled to substantial benefits if final approval is granted.

21   Indeed, as a comparison, virtually every aspect of the proposed Settlement provides greater benefits

22   to the Class than the settlement approved *Herremans v. BMW of N.A.*, LLC, CV 14-2363-

23   GW(PJWX) (C.D. Cal.), the only other case concerning water pumps located by the parties.  The

24   *Herremans* court finally approved a nationwide settlement providing reimbursement only for pre-

25

26   _____

27   [11] Rule 23(e)(3) is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages to the class in return for advantages for others." Fed. R. Civ. P. 23(e) 2003 Advisory Committee Notes.  Plaintiffs have not

28   entered into any related agreements.

notice repairs that occurred up to a period of *seven (7) years/ 84,000 miles*, and up to a *maximum reimbursement amount of $500.00* regardless of whether the repair was performed by an authorized dealer or an independent repair shop. *See* Dkt. No. 78-3.  In contrast, the Settlement provides reimbursement for pre-Notice Date water pump repairs/replacement that occurred during a period of ten (10) years/100,000 miles, with 100% reimbursement for past repairs up to 8 years/80,000 miles, without any maximum reimbursement cap if the repair was performed by an authorized VW or Audi dealer. In addition, with respect to water pump repairs/replacements performed by an ISC, the reimbursement cap of $950.00 in this case is almost double the amount that was approved in *Herremans*.  The *Herremans* settlement also provided for a much shorter extended warranty[12] for the water pump of seven (7) years/84,000 miles, in contrast to the Settlement's extended warranty of up to ten (10) years/100,000 miles.  Further, unlike the Settlement here, the approved *Herremans* settlement did not provide any reimbursement for, or extended warranty related to, engine damage caused by a water pump failure.

Second, none of the enumerated factors even remotely suggest the denial of final approval. The first factor – "the costs, risks, and delay of trial and appeal" supports final approval.  Plaintiffs estimate that the total combined value of the Settlement is approximately $34.04 Million (*e.g.*, both reimbursement and extended warranty programs), with Class members receiving 100% reimbursement of the cost of a prior water pump repair/replacement if done within eight (8) years/80,000 miles and seventy percent (70%) reimbursement if performed up to ten (10) years/100,000 miles (capped at $950 if performed by an ISC); an extended NVLW warranty period applicable to the water pump; reimbursement of a percentage of the past cost incurred to repair engine damage that occurred as a direct result of a failure of the water pump pursuant to the Schedule; and extended warranty coverage for a percentage of the cost of repair/replacement of

---

[12] In addition to *Herremans*, automotive classwide settlements providing a cash reimbursement or prospective warranty extension option have been granted final approval by California federal courts. *See, e.g., Sadowska v. Volkswagen Group of America, Inc.*, No. CV 11-665, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013); *Browne v. American Honda Motor Co.*, Case No. CV 09-06750 MMM (DTBx), 2010 WL 9499072, at *4 (C.D. Cal. Jul. 29, 2010) (granting final approval to nationwide class settlement that provided coverage for future brake repairs for a period of up to three years or a reimbursement option covering up to 50 percent of repair costs already undertaken).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 15 -

engine damage directly caused by water pump failure.  This is an exceptional result given the tremendous risks, challenges and costs of continued litigation against a giant multi-national corporation.

As to the risks of litigation, as the Court pointed out during the initial hearing on Defendant's Motion to Dismiss, certifying a nationwide litigation class would be a formidable challenge (See Dkt. No. 51, Transcript of Nov. 2, 2017 Hearing, pp. 13-15).  However, here, in the settlement context, the benefits will in fact flow to a nationwide settlement class of owners and lessees.  In addition, although Class Counsel had confidence in the case, if a nationwide litigation class (or a smaller multistate class) were to be certified, there is always risk of a defense verdict or summary judgment before even reaching trial.  Statutes of limitation defenses, among others, also presented a risk of non-recovery to many Class Members and/or an inability to pursue many of the claims. Moreover, the nature of class litigation is that class cases take extended periods of time to reach trial (and/or resolution of subsequent appeal) and in the automobile context, vehicles are fungible items in which the longer they are driven, the greater the risk that they incur other problems, are retired from service or traded or sold.  The benefit to the Settlement Class Members of an *early* settlement in the context of a consumer automotive defect case cannot be overstated.

The second factor – "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" also supports final approval.  While Settlement Class Members must provide relevant proof of adherence of the vehicle's maintenance schedule relevant to the coolant system and proper documentation, the proposed method of distributing relief is fair and reasonable.   The Settlement contains reimbursement provisions whereby Settlement Class Members who previously paid out-of-pocket expenses to repair/replace a failed primary engine water pump and/or a damaged engine that was directly caused by water pump failure can obtain reimbursement for all or part of those expenses through an independent claims administrator and an administration process, is spelled out clearly in the class notice and on the settlement website, that is easy to follow. *See* SA II(B).  Indeed, the Settlement even provides that if the required proof submitted by a Settlement Class Member is found to be deficient, he/she will be afforded notice of and opportunity to cure the deficiency.  See SA at Sec. I(N).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 16 -

Also provided by the Settlement is a warranty extension related to the water pumps whereby VWGoA will extend the NVLWs of the Settlement Class Vehicles to cover repair or replacement of a failed primary engine water pump, by an authorized Volkswagen or Audi dealer, for a period of 10 years/100,000 miles and, pursuant to the Schedule, a percentage of the cost of repair/replacement of a damaged engine caused directly by the failure of the water pump after the Notice Date. *Id*. at SA II(C).

Notably, the overall settlement consideration is not subject to any aggregate monetary cap. As a result, the effectiveness of the notice and claims program supports final approval of the Settlement.

The third factor – "the terms of any proposed award of attorney's fees, including timing of payment" supports final approval.  For detailed information regarding attorney's fees, Plaintiffs respectfully refer this Court to their Fee Motion.  Substantive settlement negotiations and resolution of class claims proceeded without discussion of Class Counsel's fees and expenses.  It was only after a settlement in principle had been reached regarding relief to the Settlement Class did the parties commence negotiations with respect to Plaintiffs' Counsel's fees and expenses.  Jt. Decl. at ¶ 14.  Notably, Defendant has agreed to pay Class Counsel's attorneys' fees and expenses (up to a collective amount of $2.4 Million) in addition to and separate from any Settlement benefits or payments afforded to the Settlement Class Members.  Thus, no reduction of benefits results from such fee award sought herein in the Fee Motion.  In sum, this Settlement has no troubling issues related to fees, and any reimbursement of fees and expenses should be awarded by the Court.

Finally, the Settlement is the product not only of substantial analysis and arm's length negotiations, but also, a very careful and detailed review by the Court during the preliminary approval process.  In its present form as preliminarily approved, the Settlement Agreement and Class Notices reflect all of the issues raised, and adjustments requested, by the Court prior to the grant of preliminary approval, including the scope/language of the release, the length of deadlines for objecting or opting out, the substantive requirements for an objection, the ability to file claims and opt outs online through the settlement website, and other matters.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES         Case No. 17-cv-01825-JD

- 17 -

### 4.      The Settlement Treats Class Members Equitably

No class member will receive preferential treatment.  As described *supra,* and detailed in the Settlement Agreement, there is a clear plan of distribution to Settlement Class members subject to reasonable proof of adherence to vehicle maintenance and proper documentation thereof.  The Settlement's equitable treatment based on the type and extent of a Class member's injuries is generally considered reasonable. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)

### D.      Plaintiffs Provided Adequate Notice

Rule 23 and due process concerns require notice be provided to absent class members in order to inform them of the proposed Settlement and allow an opportunity to opt-out or object. *See* Fed. R. Civ. P. 23(c)(2).  The notice and means of disseminating it must be the "best notice practicable" under the circumstances. *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950).  Recent amendments emphasize that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  *See* Fed R. Civ. P. 23(c)(2)(B).  As detailed above and in the Azari Decl., the Parties, with the Court's guidance and approval, disseminated the Notice by U.S. mail, email, Social Media Notice, and Sponsored Search Listings. *See* Azari Decl. ¶¶ 19-32. As discussed *supra*, this very robust Notice Program is expected to reach 90-95% of the Settlement Class, an extraordinary percentage that more than satisfies any reasonableness and due process considerations. *Id*. ¶ 27.

The Notice and Notice Program were preliminarily approved by the Court and, as implemented, complies with due process requirements, Rule 23, and the Court's comments and concerns discussed at the preliminary approval hearings.  The Notices inform absent Class Members as to the lawsuit, the terms of the Settlement, including the various benefits and release of claims, their legal rights, including the right to avail themselves of the Settlement, opt-out, object and/or appear at the final fairness hearing, the procedures to follow and deadlines for submitting claims, opting out or objecting to the Settlement, and other applicable dates and deadlines, as well as the binding effect of the Settlement upon Members of the Settlement Class who do not opt-out. *See* Azari Decl. Attachment 2.  The Notices also identify the Settlement Website, where pertinent

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD

- 18 -

information is also available, and provide contact information for the Claim Administrator and Class Counsel in the event of any questions.  The Notice provides for 60 days from the date of this Motion for requests for exclusion and objections to be filed, as directed by the Court, and incorporates the suggested language from the Class Guidance for opt-outs, objections and other matters. *Id.*

**E.      Defendant Provided Notice Under the Class Action Fairness Act**

Under CAFA, a defendant participating in a proposed settlement must serve a notice of the proposed settlement on the appropriate official of each state in which a class member resides and the appropriate Federal official. 28 U.S.C. § 1715(b).   A final approval order of a proposed settlement may not be issued earlier than ninety (90) days after the appropriate officials were served. 28 U.S.C. § 1715(d).  On June 14, 2019, Epiq, on behalf of VWGoA, sent a CAFA notice packet to 53 federal and state officials, including the United States Attorney General, the Attorneys General of each of the 50 states, the District of Columbia and Puerto Rico. Azari Decl. at ¶ 12. This requirement has been satisfied.

**F.      The Settlement Meets the Northern District's Procedural Guidance**

Under the Class Guidance, at final approval Plaintiffs must provide information concerning three enumerated items: (1) Class members' response; (2) attorneys' fees; and (3) incentive awards, and also ensure they provide electronic versions of all proposed orders and judgments.  The issues of attorneys' fees and incentive awards are addressed in the concurrently filed Fee Motion. Additionally, Plaintiffs are cognizant of the need to provide electronic versions of all proposed orders and judgments and will do so after the moving documents are filed via the CM/ECF system.

The Class members' response, however, will be primarily addressed in Plaintiffs' Reply to be filed on or before March 16, 2020 (*see* PAO ¶ 16), because it is too early insofar as the Class Notice dissemination commenced only a short time ago on December 2, 2019 (Azari Decl., ¶¶ 18-27).  In addition to Social Media Banner Notices and Sponsored Search Listings, on December 2, 2019, Epiq sent 1,911,011 Notice Packets via U.S. mail and 451,412 via email. Azari Decl. ¶¶ 19, 25. As of December 10, 2019, only 19 packets sent via U.S. mail came back as undeliverable, while 1,343 emailed remain undeliverable. *Id*. ¶¶ 24, 27.  Class members have until February 14, 2019, to

opt-out or object to the Settlement, and until April 30, 2020 to submit a claim. *See, e.g.,* PAO ¶¶ 17(a), 20.[13]

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion for final approval of the Settlement, certify the Class for settlement purposes, determine the Settlement is fair, reasonable and adequate and find that the notice was disseminated as previously approved and constitutes the best practicable notice and for such other and further relief as to the Court appears just and proper.

STULL, STULL & BRODY

Dated:  December 16, 2019       By:  *s/ Patrice L. Bishop*
                                     Patrice L. Bishop
                                     STULL, STULL & BRODY
                                     8383 Wilshire Blvd., Suite 800
                                     Beverly Hills, CA  90211
                                     Tel:    (323) 456-8638
                                     Fax:    (323) 456-8601
                                     Email:  pbishop@ssbla.com

                                     *Local Counsel for Plaintiffs Gregory Coffeng, Mark Glaser and Jordan Wilson and the Putative Class*

                                     Gary S. Graifman (admitted *pro hac vice*)
                                     KANTROWITZ, GOLDHAMER
                                     & GRAIFMAN, P.C.
                                     747 Chestnut Ridge Road
                                     Chestnut Ridge, NY 10977
                                     Tel:    (845) 356-2570
                                     Fax:    (845) 356-4335
                                     Email: ggraifman@kgglaw.com
                                            jbrody@kgglaw.com

                                     Thomas P. Sobran (admitted *pro hac vice*)
                                     THOMAS P. SOBRAN, P.C.
                                     7 Evergreen Lane
                                     Hingham, MA 02043
                                     Tel:    (781) 741-6075
                                     Fax:    (781) 741-6074
                                     Email: tsobran@sobranlaw.com

                                     *Lead Counsel for Plaintiffs Gregory Coffeng, Mark Glaser and Jordan Wilson and the Putative Class*

---

[13] Within the first approximately nine days of the Settlement Website being operational, Epiq has received 2,073 claim forms. Azari Decl. ¶36.

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES          Case No. 17-cv-01825-JD